## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVI ALEXANDER RACHLIN,<br><br>    Plaintiff,<br><br> -against-<br><br><br>GEORGE K. BAUMANN,<br>Individually and as Chief of Police of<br>the FREEHOLD TOWNSHIP POLICE<br>DEPARTMENT and FREEHOLD<br>TOWNSHIP,<br><br>    Defendants. | Case No. 3:21-cv-15343<br><br><br>**<u>COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

Edward A. Paltzik
Joshpe Mooney Paltzik LLP
1407 Broadway, Suite 4002
New York, NY 10018
Tel: (212) 344-8211
epaltzik@jmpllp.com
*Attorneys for Plaintiff*

## <u>LOCAL CIVIL RULE 10.1 STATEMENT</u>

The street and/or post office addresses of the parties to this action are:

Avi Alexander Rachlin
32 Adams Place
Freehold, NJ 07728

George K. Baumann
Freehold Township Police Department
1 Municipal Plaza
Freehold, NJ 07728

Freehold Township
1 Municipal Plaza
Freehold, NJ 07728

Plaintiff, AVI ALEXANDER RACHLIN ("Rachlin" or "Plaintiff"), by and through counsel of record, brings this Complaint against Defendants George K. Baumann ("Baumann"), Individually and as Chief of Police of the Freehold Township Police Department (the "FTPD"), and Freehold Township (the "Township") (Baumann and the Township collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Second Amendment, as incorporated through the Fourteenth Amendment, prohibits a state or any political subdivision thereof from infringing on this right. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

2.      This guarantee includes the right to possess firearms for self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).  Necessary to the exercise of this fundamental right is the ability to acquire firearms in the first place. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (the "Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms.").

3.     In New Jersey, however, the Constitutional right to possess firearms for self-defense is far from guaranteed; law-abiding citizens like Rachlin who wish to acquire rifles or shotguns must first obtain a Firearms Purchase Identification ("FID") card. N.J.S.A. 2C:58-3(b). The FID card shall be issued by "[t]he chief of police of an organized full-time police department of the municipality where the applicant resides . . . ."  N.J.S.A. 2C:58-3(d). Persons not subject to any of eight "disabilities" set forth in N.J.S.A. 2C:58-3(c) are entitled to approval of their application and issuance of an FID card.  N.J.S.A. 2C:58-3(c); N.J.S.A. 2C:58-3(d).

4.     On October 24, 2020, Plaintiff Rachlin submitted his application for an FID card to his issuing authority, Defendant Baumann, Chief of Police of the FTPD. Defendant Baumann is the Defendant Township's highest official responsible for setting and enforcing policy with respect to FID cards.

5.     Rachlin fully and truthfully complied with all requirements of the application process. In March 2021, following a significant delay in processing Rachlin's application for an FID card, and even after initially approving Rachlin for an FID card, Defendants began enforcing a policy against Rachlin requiring that he also pay for and be evaluated by a clinical psychologist, and moreover, that Rachlin's application would be denied unless and until Rachlin provides Baumann with a letter from a licensed clinical psychologist stating—as Baumann wrote in a

4

letter dated March 4, 2021 to Rachlin—that issuance of an FID card to Rachlin "will not cause any safety issues to [himself] or the general public."

6.    Rachlin has never been convicted of a crime, has never been arrested, has never been involuntarily committed or confined to any mental or psychiatric institution, has never been adjudicated by a court or any other tribunal as a mental defective or as a danger to himself or others, and does not use illegal drugs or abuse alcohol. Indeed, Rachlin was and remains legally eligible to exercise his Second Amendment rights under state and federal law. Even so, Defendants unconstitutionally denied and continue to deny Rachlin his right to keep and bear arms.

7.    Rachlin is constitutionally entitled to acquire and possess firearms for self-defense in the home. But because of Defendants' unconstitutional acts, and prior and continuing enforcement of their policies, practices, and customs, Rachlin cannot exercise his rights without running afoul of New Jersey's various criminal laws regulating firearms and related conduct, violations of which carry severe penalties including imprisonment and the lifetime loss of his Second Amendment rights—regulations also enforced by Defendants.

8.    As the Supreme Court clearly established and commanded in *Heller*, if a person is not disqualified from exercising his right to keep and bear arms protected under the Second Amendment, the government must permit the person to

acquire and possess a firearm for self-defense in the home. *Heller*, 554 U.S. at 635. And because Rachlin is not disqualified from exercising his Second Amendment rights—a fact known to Defendants—and is constitutionally entitled to acquire and possess firearms for self-defense, Defendants' acts and enforcement of their policies and practices, including but not limited to their prior and continuing denial of Rachlin's FID card, are individually and collectively an unconstitutional ban infringing on Rachlin's right to keep and bear arms for self-defense in the home.

9.      Rachlin thus seeks relief for Defendants' past and continuing violations of his constitutional rights protected under the United States Constitution.

## JURISDICTION AND VENUE

10.      This action arises under the Constitution and laws of the United States.  This Court therefore has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, policies, regulations, customs, and/or usages of the State of New Jersey and/or its political subdivisions, of the rights, privileges, or immunities secured by the United States Constitution.

11.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) & (b)(2), as Defendants are resident of New Jersey, in which this District is located, and the events giving rise to Plaintiff's claims arose or exist in this District.

## PARTIES

12.    Plaintiff, Avi Alexander Rachlin, is a 20-year-old resident of the Defendant Township and a person subject to Defendant Baumann's enforcement of state and local laws, policies, practices, and customs with respect to the issuance of FID cards. Rachlin desires to exercise his fundamental, individual right to acquire and possess firearms for self-defense. At all times relevant, Rachlin has been and is today legally eligible to possess and acquire firearms, a fact known to Defendants. Rachlin has never been convicted of a crime, arrested, involuntarily committed or confined to any mental or psychiatric institution, adjudicated by a court or any other tribunal as a mental defective or as a danger to himself or others, or suffered from a legal disability to possess and acquire firearms. But for Defendants' acts, and prior and continuing enforcement of policies, practices, and customs, including but not limited to their denial of Rachlin's FID card and enforcement of the State of New Jersey's firearms regulations and criminal laws, as well as Rachlin's reasonable fear of Defendants' enforcement of State and local criminal laws, regulations, and policies against him, prosecution, and loss of liberty, among other

consequences, Rachlin would purchase and possess firearms for self-defense in the home.

13.    Defendant George K. Baumann is the Chief of Police of the FTPD, which is a municipal subdivision of the Defendant Township, and Baumann is the chief law-enforcement officer in the Township, the jurisdiction where Rachlin resides. Baumann is the issuing authority for FID cards in Freehold Township. N.J.S.A. 2C:58-3(d). Accordingly, Baumann was, and still is, the highest official in the Township responsible for setting and enforcing policy in the area of issuing FID cards, since, as the Chief of FTPD, Baumann had, and still has, final decision-making authority over FID card applications. Baumann is sued individually, for having violated and continuing to violate Rachlin's clearly established constitutional rights under the Second Amendment and the First Amendment, and is also sued in his official capacity as Chief of Police of the FTPD.

14.    Defendant Freehold Township is a municipality/township located in Monmouth County, State of New Jersey, and is a political subdivision of the State of New Jersey.

## FACTUAL & LEGAL ALLEGATIONS

15.    Rachlin truthfully disclosed in his application for an FID Card that when he was a minor under his parents' care, he received a voluntary mental health check at CentraState Medical Center ("CentraState") in Freehold Township at the

request of his parents, and was evaluated, cleared, and discharged after three hours. Rachlin's parents did not force him to undergo this evaluation; rather, they encouraged him to do so, and he was not confined or committed to CentraState, where he was voluntarily evaluated.

16.     Also truthfully disclosed in his application, Rachlin, like millions of Americans who voluntarily seek an expert opinion and support, saw a psychiatrist. This also occurred when he was a minor and under his parents' care. Rachlin received a prescription for Prozac, which he used for less than three months.

17.     These disclosures regarding Rachlin's juvenile medical history were not part of any publicly available record, and Defendants would never have discovered this information but for Rachlin's honesty. As Baumann well knew, outpatient mental health counseling, whether at a hospital or in an office setting, is *not* one of the disqualifying factors set forth in N.J.S.A. 2C:58-3(c) unless the counseling involves confinement.

18.     Accordingly, Defendants' policy and demand requiring that Rachlin pay for and be evaluated by a clinical psychologist, and moreover, that Rachlin provide a letter from a licensed clinical psychologist, in order to obtain an FID card, had, and still has, no basis under New Jersey law or the U.S. Constitution. Nonetheless, Rachlin made a good faith effort to satisfy Defendants.  To that end, Rachlin obtained a letter from Jordan Faiman ("Faiman"), a licensed professional

counselor who had counseled Rachlin during adolescence. Faiman's letter stated, in pertinent part: ". . . *I was able to conduct a formal safety assessment with Rachlin, to which I was able to determine that he is not currently a danger to himself and/or others*." (Emphasis added).  Faiman further opined that the "future is bright" for Rachlin.

19.    However, Baumann was not satisfied with this letter and continued to insist that Rachlin submit to the unconstitutional requirement of obtaining an evaluation by a clinical psychologist.  Rachlin, having already gone well above and beyond the legal requirements for obtaining an FID card at Baumann's behest, indicated that he would not accede to Defendants' policy and demand. Accordingly, despite the lack of any disqualifying disability in Rachlin's background, on March 26, 2021, Rachlin received an automated email from the State's Firearms Application & Registration Systems ("FARS"), indicating that his application was denied and a letter from Baumann indicating that the application was denied "on the basis of **Public Health Safety and Welfare**."   (Bold in original).  *See* N.J.S.A. 2C:58-3(c)(5).

20.    Given Faiman's letter, and the lack of any evidence that Rachlin had a mental condition that presented a danger to himself or others, Baumann's insistence that Rachlin be evaluated by a clinical psychologist and denial of

Rachlin's application for an FID card were not only arbitrary, baseless, and unreasonable, but unconstitutional.

21.     Moreover, the denial of Rachlin's application was a pretextual retaliation for Rachlin's exercise of his rights to freedom of speech and expression protected under the First Amendment to the United States Constitution, which provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." (the Free Speech Clause). U.S. Const. amend. I.

22.     In light of Defendants' acts and policies being enforced against Rachlin, including the fact that Baumann severely delayed the application process, Rachlin, understandably exasperated, publicly and sharply criticized Baumann in multiple forums, including two speeches before the Freehold Township Committee (the "FTC"), multiple posts on reddit.com, (*Reddit*) and an appearance on Blue Star Union's[1] youtube.com (*YouTube*) channel.  For example, in a speech to the FTC three days before Baumann denied Rachlin's FID card application, Rachlin asserted that "Chief Baumann is abusing his power."[2]

23.     Based on Rachlin's lawfully protected expressions of displeasure directed toward Baumann and his police department, and toward Defendants in

---

[1] *See* https://www.bluestarunion.com/#/.
[2] "Avi Rachlin returns to City Council to demand a decision on his FID application," *YouTube*, speech by Avi Alexander Rachlin, March 23, 2021, available at https://www.youtube.com/watch?v=Q1XxjL2vJnU.

general, and the embarrassment this caused to Baumann and his staff, and to the Township, Baumann further delayed Rachlin's application, insisted that Rachlin undergo an evaluation by a clinical psychologist, and then denied Rachlin's application.

24.    Baumann's denial of Rachlin's application for an FID card plainly violated Rachlin's constitutional rights in multiple respects and has resulted in an actual, concrete, and ongoing injury to Rachlin that requires vindication by this Court.

25.    In addition to the harm to Rachlin resulting from this deprivation of his constitutional rights, Baumann's denial of Rachlin's application for an FID card, if not redressed by this Court, will have broader and disturbing implications for the Second Amendment rights of all law-abiding citizens who voluntarily seek mental health counseling.

26.    Even before the highly stressful COVID-19 pandemic, mental health counseling was widely accepted and utilized throughout the United States. A 2004 poll conducted by the American Psychological Association (the "APA"), revealed that "[n]early half (48%) of American households have had someone see a mental health professional and nine out of 10 Americans say they are likely to consult or recommend a mental health professional if they or a family member are

experiencing a problem."[3]  More recently, according to the 2019 National Health Interview Survey conducted by the Centers for Disease Control and Prevention National Center for Health Statistics, in 2019, "19.2% of adults had received any mental health treatment in the past 12 months, including 15.8% who had taken prescription medication for their mental health and 9.5% who received counseling or therapy from a mental health professional."[4]

27.     There is no question that undergoing voluntary mental health counseling or evaluation is a common, lawful, and beneficial activity that should be encouraged, not punished and stigmatized through deprivation of constitutional rights by misguided governmental actors who erroneously conflate mental health counseling with dangerousness when, in reality, millions of Americans seek counseling regularly to address a wide variety of issues that have nothing to do with firearms safety.

28.     Moreover, if applicants, who, like Rachlin, have sought or received consensual mental health counseling in non-confined settings, can face arbitrary denial of FID cards based on fabricated mental health requirements imposed by local law enforcement officials acting as *de facto* mental health professionals, the

---

[3] "APA Poll: Most Americans Have Sought Mental Health Treatment But Cost, Insurance Still Barriers," AMERICAN PSYCHOLOGICAL ASSOCIATION (2004), available at https://www.apa.org/news/press/releases/2004/05/apa-poll.
[4] Emily P. Terlizzi, M.P.H., and Benjamin Zablotsky, Ph. D., *Mental Health Treatment Among Adults: United States, 2019*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Centers for Disease Control and Prevention, National Center for Health Statistics, NCHS Data Brief No. 380 (Sep. 2020), available at https://www.cdc.gov/nchs/data/databriefs/db380-H.pdf.

result will be the creation of an entirely new class of individuals disqualified from firearms possession, contrary to the laws of New Jersey and federal law.[5]

29.     Law-abiding citizens must possess an FID card in order to purchase a rifle or shotgun in New Jersey.  N.J.S.A. 2C:58-3(b) ("No person shall . . . receive, purchase or otherwise acquire . . . a rifle or shotgun . . . unless the purchaser, assignee, donee, receiver or holder . . . possesses a valid firearms purchaser identification card . . . .").

30.     "Any person who knowingly has in his possession any rifle or shotgun without having first obtained a firearms purchaser identification card in accordance with [N.J.S.A. 2C:58-3] is guilty of a crime of the third degree," (N.J.S.A. 2C:39-5(c)(1)), which carries a prison sentence of three to five years (N.J.S.A. 2C:43-6(a)(3)), and a fine of up to $15,000 (N.J.S.A. 2C:43-3(b)(1)).

31.     The FID application process is complex and time-consuming.

32.     An applicant must complete the S.T.S. 033 form ("Form 033"), obtainable only "from municipal police departments, State Police stations, and licensed retail firearms dealers."  N.J.A.C. 13:54-1.4(a).

33.     If the applicant "gives . . . any false information" on Form 033, he "is guilty of a crime of the third degree."  N.J.S.A. 2C:39-10(c).

---

[5] *See* 18 U.S.C. § 922(g). Categories of persons disqualified from exercising Second Amendment rights under federal law include those who are felons, fugitives from justice, "unlawful user[s] of or addicted to any controlled substance", have "been adjudicated as a mental defective or who has been committed to any mental institution", have been dishonorably discharged from the United States Armed Forces, are "subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner . . . .", or have "been convicted in any court of a misdemeanor crime of domestic violence.

34.    Form 033 also requires the applicant to disclose sensitive information regarding mental health treatment. Indeed, Item (24) on the Form poses the following question: "Have you ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim, or permanent basis? If yes, give the name and location of the institution or hospital and the date(s) of such confinement or commitment." ("Item 24"). Item #24 contains the choice of a "Yes" box or a "No" box in which to place a check mark. Item (26) on the Form poses the following question: "Have you ever been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition? If yes, give the name and location of the doctor, psychiatrist, hospital or institution and the date(s) of such occurrence." ("Item #26"). Item #26 also contains the choice of a "Yes" box or a "No" box in which to place a check mark.

35.    The applicant must also complete the S.P. 66 form ("Form 66"), thereby waiving the privacy of his mental health records, "including disclosure of the fact that said records may have been expunged," by consenting to their disclosure as part of the application. Form 66; *see also* N.J.A.C. 13:54-1.4(d).

36.    "No person of good character and good repute in the community in which he lives, and *who is not subject to any of the disabilities* set forth in this

section . . . shall be denied a . . . firearms purchase identification card . . . ." N.J.S.A. 2C:58-3(c).  (Emphasis added).

37.    The "disabilities" provision of N.J.S.A. 2C:58-3(c) provides, in pertinent part:

> No . . . firearms purchaser identification card shall be issued: (1) " To any person who has been convicted of a crime, or a disorderly persons offense involving an act of domestic violence . . . .", (2) "To any drug dependent person . . . any person who is *confined* for a mental disorder to a hospital, mental institution, or sanitarium, or to any person who is presently an habitual drunkard;", (3) "To any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms, to any person who has ever been *confined* for a mental disorder, or to any alcoholic . . . to any person who knowingly falsifies any information on the application form for a . . . firearms purchaser identification card ", (4) "To any person under the age of 18 years . . . .", (5) *"[t]o any person where the issuance would not be in the interest of the public health, safety, or welfare*[],"(6) To any person who is subject to a restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," . . . prohibiting the person from possessing any firearm;", (7) "To any person who was adjudicated delinquent for an offense which, if committed by an adult, would constitute a crime and the offense involved the unlawful use or possession of a weapon, explosive or destructive device . . . . ", or (8) "To any person whose firearm is seized pursuant to the "Prevention of Domestic Violence Act of 1991," . . . and whose weapon has not been returned.   N.J.S.A. 2C:58-3(c).  (Emphasis added).

38.     Otherwise, the issuing authority "*shall* upon application, issue to any person qualified under the provisions of subsection c. of this section . . . a firearms purchaser identification card." N.J.S.A. 2C:58-3(d) (emphasis added).

39.     On October 24, 2020, Rachlin submitted his completed Form 033 and Form 66 to the FTPD using the FARS system.

40.     Rachlin has never "been confined or committed a mental institution or hospital for treatment or observation of a mental or psychiatric condition . . . ." However, Rachlin, intent on providing full and honest disclosure, checked the "Yes" box for Item #24.  He provided the following supplemental response:

> "To the best of my memory, it was 1 time, 4 years ago for a period that lasted 3 hours.  This was at the request of my parents.  I was evaluated at Centra State [sic] where a medical professional cleared me and I was discharged.  The FTPD transported me in the back of the cruiser. I was not handcuffed or restrained. I do not remember the exact date this occurred."

41.     Although Rachlin was voluntarily evaluated at CentraState at the request of his parents as disclosed in his supplemental response to Item #24, this evaluation was not for any specific "mental or psychiatric condition" and he was not confined. With the intention of providing full and honest disclosure, Rachlin also checked the "Yes" box for Item #26 and provided the following supplemental response:

> "To the best of my memory, it was 1 time, 4 years ago, where I went to a psychiatrist for depression-related

issues and prescribed Prozac.  I took the drug for less than 3 months.  Looking back now I don't think I was actually ever depressed.  I have not dealt with any medical professional related to my mental health in over 4 years.  I do not remember the exact date this occurred or who the Dr was."

42.    On November 7, 2020, Rachlin attended a required fingerprinting appointment.  The FTPD received Rachlin's fingerprints that same day.

43.    On November 11, 2020, the New Jersey State Police completed its required background check of Rachlin.

44.    Yet, throughout November and December 2020, Baumann took no action with respect to Rachlin's application and, upon information and belief, took no steps in furtherance of processing the application.

45.    By the beginning of January, it was abundantly clear to Rachlin that Baumann was not timely processing Rachlin's application for an FID card. Rachlin began seeking answers.

46.    On January 4, 2021, Rachlin sent a New Jersey Open Public Records Act (OPRA)[6] request to FTPD seeking the following information: "Every person who has applied for a FID . . . within the past 6 months.  I want to know the date of the application submission, status (decided, open), and resolution (approved,

---

[6] N.J.S.A. 47:1A-1 *et seq.*

denied).” On January 11, 2021, the FTPD denied Rachlin's request on the grounds of statutory exemptions relating to personal firearms records.[7]

47.    Still seeking clarity as to his application status, on January 15, 2021, Rachlin emailed Mayor Thomas L. Cook ("Cook") in order to express his dismay with the delays in the FID card application process. Rachlin wrote, *inter alia*: "This is America, and I have a 2nd Amendment right as an adult to own and possess firearms. I am asking you to inform me why my FID application is taking unreasonably long to process and an ETA on when it will be handled. For example, if it is due to a recent surge in applications I completely understand and will wait my turn.  I'm just looking for communication here. Thank you for taking the time to read and hopefully respond to my email. Hope you and your family are safe & well."

48.    On January 19, 2021, Township Administrator Peter R. Valesi ("Valesi"), at Cook's request, responded to Rachlin's email and blamed the delay on "unprecedented" volume, writing, *inter alia*, that "the State has been overrun with firearms applications, which has in turn, clogged what was an efficient and simple system of approval." Contrary to Valesi's claims, New Jersey's FID card regulatory scheme has never been efficient or simple. The New Jersey Firearm Purchase and Permitting Study Commission, established by the Governor in 2015,

---

[7] N.J.S.A. 47:1A-1.1 and N.J.A.C. 13:54-1.15.

record permitting delays "in approximately 100 different jurisdictions," some of more than a year. Wait times have recently been reported to exceed 50 days even for New Jersey residents,[8] and have previously been reported to "routinely take over 90 days."[9] At the time of his correspondence with Valesi, Rachlin had already waited nearly 90 days—but what he had no way of knowing was that his wait was not even at the halfway mark.

49.     Later that day, Rachlin responded to Valesi's email and requested an "average timeframe" for FID card applications processed during the pandemic. Valesi responded shortly thereafter and, tellingly, wrote, inter alia: "As far as an average timeframe, there is no good answer, except to say that we are currently processing permits submitted in November . . . ."  To this, Valesi added the vague assessment that "your permit is currently being 'worked on', which is better than 'received,' but not quite 'approved' after 'approved' would be 'processing' and then 'awaiting signature.' "  In the weeks that followed Rachlin's email correspondence with Valesi, Baumann and his staff at the FTPD continued to take no action on Rachlin's application. Concerned about Baumann's continued dereliction of his legal duties, Rachlin visited the FTPD headquarters and requested an update on his application. FTPD Officer Sean Foley ("Officer Foley")

---

[8] Nick Wong, *NJ Gun Permitting a Horror Story W/O a Movie! NICS NJ Portal a Garden Hose on a House Fire*! SHORE NEWS NETWORK (July 24, 2020), available at https://www.shorenewsnetwork.com/2020/07/24/nj-gun-permitting-a-horror-story-w-o-a-movie-nics-nj-portal-a-garden-hose-on-a-house-fire/.
[9] Petition for a Writ of Certiorari 23, *Aitken v. New Jersey*, No. 13-1136, 2013 WL 8114523 (Dec. 6, 2013).

spoke with Rachlin.  Rather than update Rachlin on the progress of his application,

Officer Foley inexplicably demanded that Rachlin fill out Form 66 again. When

Rachlin explained to Officer Foley that he had submitted Form 66 at the time the

application was filed (October 24, 2020), Officer Foley continued to insist that

Rachlin fill out Form 66 again in Officer Foley's presence. Rachlin complied with

Officer Foley's unauthorized demand. Officer Foley then assured Rachlin that the

application would be processed within two weeks. Predictably, Rachlin's

application was not processed within two weeks, nor did any member of the FTPD

update Rachlin within two weeks.

50.     The next day, February 9, 2021, Rachlin made three identical posts on

*Reddit* expressing his displeasure with Baumann's delays in processing his FID

card application. The posts were entitled "New Jersey", "My Delay Story", and

"Delay Delay DELAYYYY." Rachlin wrote, *inter alia*: "I completed everything

on November 7th.  60 days later I hear absolutely nothing from my local PD . . . .

Fast forward another 30 days I go into my local PD department and detective asks

me to fill out a form allowing them to get ALL my mental health records (basically

voiding HIPAA).  I sign this form and he said another 3 weeks."

51.     Two weeks later, on February 22, 2021, Rachlin added two identical

*Reddit* posts. The posts were entitled "Join me 2/23 @ 8 PM Est at Freehold's City

Council Meeting where I will address the town's total mismanagement of FID Cards."

52.      The next evening, February 23, 2021, Rachlin spoke at the FTC meeting.[10] Discussing the Second Amendment, Rachlin observed: "Our state is full of suffocating, draconian, unconstitutional laws that turn this right into a privilege." He continued: "I've sent emails, filed an OPRA, and taken trips down to Freehold Township Police headquarters, all in an effort to resolve this privately. That hasn't worked." Rachlin then described, in critical fashion, his February 8, 2021 encounter with Officer Foley:

> Finally, February 8, 2021 rolls around and the 90-day mark is right around the corner.  I go down to FTPD headquarters and essentially demand an update.  I sit in an empty lobby for roughly 10 minutes and am then serviced by Officer Sean Foley . . . he hands me a "Consent for Mental Health Records Search Warrant," formerly known as an S.P. 66 and demands I fill it out. Let's pause for a second. I come down on my own accord and am now suddenly informed that I have to fill out an extra form.  Do you see a problem with that?  This form could have been sitting in my file for 90 days and no one bothered to reach out. If you need something from me it is your job to ask for it, not for me to find out as a surprise. I push back against Officer Foley stating that I had already submitted this when I filled out the FARS app nearly three months ago. Apparently, that didn't matter and he asked me to fill it out again. I ask how long I will hear back and he gives me a hard cap at two weeks.

---

[10] "Avi Rachlin rips into Freehold Township City Council on 2nd Amendment," *YouTube*, speech by Avi Alexander Rachlin, February 23, 2021, available at https://www.youtube.com/watch?v=L2sTQLjaVtY.

Two weeks expired yesterday, and guess what, he didn't get back to me.

53.     Rachlin further criticized Baumann's police department:

If the combined brainpower of this police department can't process a FARS app, well I am so sorry for my fellow Freeholders who rely on you to deal with actual crime and solving cases. Mr. Valesi, you told me the Township takes my Second Amendment rights seriously, but the actions of the Freehold Township Police Department speak otherwise. Without question, the Freehold Township Police Department has violated two state laws. Number one, taking longer than 30 days to rule on an application, and number two, having me fill out an S.P. 66 when my situation didn't warrant it.

54.     Following the FTC meeting, two committee members told Rachlin that they would discuss his application with Baumann. As well, Rachlin posted a video of his speech on *YouTube* that evening.

55.     Not coincidentally, following Rachlin's attention-grabbing speech, Baumann called Rachlin before the close of business that very same week, on Friday, February 26, 2021. During this call, Baumann told Rachlin that the FID card application was "approved" and "good to go." Baumann told Rachlin to wait a few days for the FTPD to finish up the paperwork and then Rachlin could pick up his FID card.  Baumann, perhaps in a moment of candor, also revealed that, in sum and substance, "we were thinking about requesting that you be screened but ultimately determined your issues were very minor and so long ago."

56.     One week later, on March 3, 2021, Baumann called Rachlin and reversed course. Without providing any basis for such, Baumann informed Rachlin that he was now concerned that Rachlin was a danger to himself, and that his prior approval of Rachlin's FID card application was rescinded. Baumann abruptly imposed a policy and demand upon Rachlin requiring him to obtain "clearance" from a "mental health professional" that Rachlin is not a danger to himself or others. When Rachlin asked Baumann why he had changed his mind, Baumann responded: "I'm not arguing with you."

57.     The next day, March 4, 2021, Baumann delivered a letter to Rachlin, writing:

> As per our conversation on March 3, 2021, in order for me to approve you obtaining a NJ Firearms ID card, I am requesting that you get evaluated and screened by a clinical psychologist. I am requiring that you get clearance from that doctor stating that you owning or possessing a firearm will not cause any safety issues to yourself or the general public.
>
> As soon as I receive these assurances, I will be able to approve your application for a NJ Firearms ID Card.

58.     Baumann's policy and demand requiring that Rachlin be screened by a clinical psychologist was, and still is, an official policy of the Township, since Baumann was, and still is, the highest official in the Township responsible for setting policy in the area of issuing FID cards.

59.     Baumann's policy and demand that Rachlin be screened by a clinical psychologist was unconstitutional, burdensome, arbitrary, and unreasonable. Indeed, Rachlin's application had been verbally approved prior because Rachlin was then and at all relevant times legally eligible to possess and acquire firearms and Rachlin was clearly not a danger to himself or others.

60.     In addition, obtaining a screening appointment and evaluation from a clinical psychologist can be costly. For example, on March 3, 2021, the same day Baumann called Rachlin to demand that he submit to screening by a "mental health professional," Rachlin obtained a quote of $2,500.00 from one clinical psychologist for screening services, a substantial sum of money that Rachlin should not have been required to spend to acquire his FID and exercise his constitutional rights, and could not afford to spend without imposing burdens in other areas of financial need or financial planning.

61.     In spite of the unconstitutional and burdensome nature of Baumann's policy and demand, Rachlin nonetheless made a good faith effort to comply and provide Baumann with further evidence that he was not a danger to himself or others. Accordingly, on March 12, 2021, Rachlin met with Faiman for an evaluation via videoconferencing.

62.     Faiman, a licensed professional counselor, had counseled Rachlin from 2013 to July 2017 with respect to adolescent frustrations at the request of

Rachlin's mother and was thus uniquely well-positioned to accurately evaluate Rachlin. As well, Faiman's professional services were covered by Rachlin's health insurance carrier (Horizon Blue Cross Blue Shield New Jersey) ("Horizon"), which, given the potentially substantial cost of an evaluation by a clinical psychologist, was understandably a significant consideration for Rachlin, a college student.

63.     Having completed his evaluation of Rachlin, Faiman drafted a letter dated March 19, 2021 summarizing his evaluation findings. As Faiman recalled, "safety concerns weren't indicated in the original referral." *Id*. Regarding the March 12, 2021 evaluation, Faiman wrote:

> . . . I was contacted again by Mr. Rachlin himself, in early March 2021 to discuss and process the matter at hand, including an exploration of the past 4 years since his final therapy session. I am unable to comment on safety concerns over the course of 4 years since this last session, however, based on Mr. Rachlin's description of his success in the later years of high school and ultimate acceptance into secondary schooling, I am able to surmise he has left any prior mental health and/or safety issues in his adolescent/early teenage years. Further, during the 03/12/2021 tele-counseling session, I was able to conduct a formal safety assessment with Mr. Rachlin, to which *I was able to determine he is not currently a danger to himself and/or others*. In fact, given his current achievements at his secondary school, it seems likely his future is bright.  (Emphasis added).

64.     Rachlin also obtained a certified letter dated March 16, 2021 from Monmouth County Adjuster William R. Bucco, CPM confirming that there are no records of Rachlin having been confined or committed.

65.     While Rachlin was working to satisfy Defendants' unconstitutional policy and demand, Baumann's investigation of Rachlin took another irregular turn when Baumann called Rachlin's mother and claimed he was looking to speak to Rachlin. This phone call made little sense given that Baumann had Rachlin's phone number, that he had spoken with Rachlin by phone multiple times, and that Rachlin's mother was not a reference on Rachlin's application.

66.     Upon information and belief, this call by Baumann had no purpose other than to intimidate Rachlin and his family.

67.     On March 19, 2021, Rachlin submitted Faiman's letter to Baumann.

68.     That same day, Baumann delivered a letter to Rachlin rejecting Faiman's letter, stating:

> On March 4, 2021, I had sent you a letter requesting that you get evaluated and screened by a clinical psychologist in order for me to approve your firearms application. Today, March 19, 2021, I received a letter from Jordan Faiman Licensed Professional Counselor and Approved Clinical Supervisor. Unfortunately, this did not fulfil [sic] my request of being evaluated and screened by a clinical psychologist.
>
> In addition to getting evaluated and screened, I requested a letter from the clinical psychologist to clearly indicate

that you owning or possessing a firearms [sic] will not
cause any harm to yourself or the general public.

Until I receive these assurances, I will be unable to
approve your application for a NJ Firearms ID card.

69.     Baumann also left a voice message for Rachlin on March 19, 2021

stating the following:

Good morning Avi, this is Chief Baumann, Freehold
Township Police Department.  Um…the letter I sent you,
you have to be evaluated and screened by a clinical
psychologist. This guy here is nothing but a professional
counseling services, and he don't have the uh…he is not
a clinical psychologist. Now, I don't want to just deny
your application I want to be fair here and give you an
opportunity, but what I sent you is not what you gave
back here. I asked you to go get evaluated and screened
by a clinical psychologist and I need it specifically to say
that you owning a weapon, a firearms [sic], will not
cause any safety issues to yourself or the general public.
Alright, if you want to give me a call back, 732-294-
5137.  I'm also going to back this up with a letter sent to
your house. Take care.

70.     Even after Baumann's rejection of Faiman's letter, Rachlin made

additional good faith efforts to determine if he could feasibly satisfy Defendants'

policy and demand. To that end, on March 19, after Baumann rejected Faiman's

letter, Rachlin contacted Horizon and requested a list of in-network clinical

psychologists within reasonable proximity to his home. That afternoon, a Horizon

representative emailed Rachlin a list of the eight in-network clinical psychologists

within 15 miles of Rachlin's home.  Rachlin called seven of the eight psychologists

that same day (the Horizon list indicated that one of the eight psychologists was not accepting new patients) and either spoke directly to staff members or left voice messages. Ultimately, none of the seven psychologists agreed to screen Rachlin: some simply did not return Rachlin's call, while others were unable to schedule a timely appointment for Rachlin in the midst of the COVID-19 pandemic.

71.     After receiving Baumann's call and letter, Rachlin made four identical *Reddit* posts. Three of the posts were entitled "The Battle Continues! Join me at Freehold Township's City Council Meeting 3/23/21 @ 8 PM" and the fourth entitled "More Delays!" Rachlin wrote, *inter alia*: "I really believe my only avenue at this point is to sue.  Clearly, nothing will satisfy him (Police Chief)."

72.     On March 23, 2021, Rachlin continued to exercise his free speech rights and speak out against Defendants' policies and practices. First, he appeared for an interview on Blue Star Union's *YouTube* channel to talk about his FID card application.[11] During a fifty-one minute appearance, Rachlin stated, *inter alia*: "I believe that the police chief is abusing his discretionary authority in this case." Rachlin also recounted the February 8, 2021 interaction with Officer Foley. Later that evening, Rachlin appeared for a second time before the FTC. Rachlin delivered a speech in which he sharply criticized Baumann, asserting, *inter alia*, that "rather than taking accountability for the obvious failures of internal

---

[11] "Avi Rachlin – 2nd Amendment Abuse in NJ," *YouTube*, March 23, 2021, available at https://www.youtube.com/watch?v=ffIuTfw0Bwo.

management, Chief Baumann instead decides to deflect blame and not take responsibility" and "Chief Baumann is abusing his power."[12]

73.    Once again, as with Rachlin's first speech before the FTC, Baumann promptly learned of Rachlin's criticisms and speech from one or more FTC members.

74.    On the morning of March 26, 2021—over *150 days* since Rachlin submitted his FID card application—Rachlin received an automated email from the FARS system entitled "Firearms Purchaser Identification Card and/or Handgun Purchase Permit Application – Status Update."  The email stated as follows:

> AVI RACHLIN,
> Confirmation Number: 20298272970
> Application Status: Denied
> Date of Denial: 3/25/2021
> Issuing Police Department: FREEHOLD TWP PD [NJ0131600]
> Contact Phone for Issuing Police Department: (732) 294-5139
> Your application for a New Jersey Firearm Purchaser Identification Card and/or Permit to Purchase a Handgun(s) has been denied by the issuing authority. The actual reason for this denial will be made available to you from the issuing police department in the form of a letter mailed to your residence.

---

[12] "Avi Rachlin returns to City Council to demand a decision on his FID application," *YouTube*, speech by Avi Alexander Rachlin, March 23, 2021, available at https://www.youtube.com/watch?v=Q1XxjL2vJnU

75.     Later that day, Baumann, who, upon information and belief, was by this point fully aware of the content of Rachlin's second speech to the FTC, delivered a letter to Rachlin denying his FID card application, stating as follows:

> Your Firearms application background investigation has revealed potential grounds to deny your application on the basis of **Public Health Safety and Welfare**.
>
> In accordance with NJSA 2C:58-3C, you have the option of requesting a Pre-Decision Conference with the Chief of Police, prior to a final denial of your application. The purpose of this Pre-Decision Conference is to allow you the opportunity to bring forth any additional information that may change the status of your application from potentially being denied.
>
> You are not obligated to have a Pre-Decision Conference, and may choose not to meet with the Chief of Police. If you choose not to have a conference, your application denial will be finalized. You will then receive a letter acknowledging the denial.

76.     Rachlin did not receive and has not received any further correspondence from Defendants.

77.     Baumann's unconstitutional decision to deny Rachlin's FID card application was, and still is, an official policy of the Township, since Baumann was, and still is, the highest official in the Township responsible for setting policy in the area of issuing FID cards.

78.     Upon information and belief, Baumann's aforementioned official acts involved reckless or callous indifference to Rachlin's federally protected rights.

79.    Baumann had, and still has, no reasonable factual basis and no statutory basis to find that Rachlin had a mental condition that presents a danger to himself or others. Baumann's insistence that Rachlin be evaluated by a clinical psychologist, and Baumann's denial of Rachlin's application for an FID card, were, and still are, unconstitutional impediments to Rachlin's exercise of his Second Amendment right to keep and bear arms.

80.    Between March 30, 2021 and April 5, 2021, Rachlin served a "Request for Mandatory Hearing" dated March 29, 2021 on all required parties, including the Superintendent of the New Jersey State Police, Baumann, and the Monmouth County Superior Court, seeking a hearing in Superior Court pursuant to N.J.S.A. 2C:58-3(d) regarding the denial of Rachlin's FID card application.

81.    Pursuant to N.J.S.A. 2C:58-3(d), an applicant "aggrieved by the denial of a permit or identification card *may* request a hearing in the Superior Court of the county in which he resides . . . . in writing within 30 days of the denial of the application for a permit or identification card." (Emphasis added). "The hearing shall be held and a record thereof made within 30 days of the receipt of the application for a hearing by the judge of the Superior Court."  N.J.S.A. 2C:58-3(d).

82.    But as of June 2, 2021, the Monmouth County Superior Court had failed to fulfill its statutory obligation to hold a hearing within 30 days of the denial of Rachlin's FID card application. Thus, on June 2, 2021, Rachlin delivered

a letter to the Monmouth County Superior Court withdrawing his request for a hearing pursuant to N.J.S.A. 2C:58-3(d), without prejudice to his pursuit of other legal rights and remedies, including this action.

83.   A FID applicant is not required to request a Superior Court hearing following a denial of an FID card application and there is no requirement that the applicant exhaust this optional remedy prior to commencing an action for deprivation of his constitutional rights. *See, e.g., Durga v. Bryan*, 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011).

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT ONE**</u>

**Violation of the United States Constitution
Second and Fourteenth Amendments
(42 U.S.C. § 1983)
(All Defendants)**

84.   Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully stated herein.

85.   The Second Amendment of the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

86.    The Second Amendment applies to the State of New Jersey and its political subdivisions, including officials of the State and its political subdivisions, under the Fourteenth Amendment.  *McDonald*, 561 U.S. at 750; *id*. at 805.

87.    The Second Amendment guarantees the individual right to possess and carry weapons in case of confrontation," *see Heller*, 554 U.S. at 592, which includes the individual right to acquire firearms.  *Teixeira*, 873 F.3d at 677; *United States v. Marzzarella*, 614 F.3d 85, n.8 (3d Cir. 2010).

88.    The Supreme Court has held that the Second Amendment right to keep and bear arms is a "natural right" that must be given the same scope today as it was understood to have at the founding.  *Heller*, 554 U.S. at 594.

89.    Baumann deprived Rachlin of his Second Amendment right to keep and bear arms, in multiple respects: (a) by denying Rachlin's application for an FID card despite the fact that Rachlin is not disqualified from possessing a firearm under any provision of New Jersey or federal law, (b) by imposing the policy and demand that Rachlin submit to screening by a clinical psychologist in order to obtain an FID card, thereby conditioning Rachlin's exercise of his constitutional right to keep and bear arms on Rachlin's compliance with policies of and burdens imposed by Baumann, and (c) by subjecting Rachlin to unconstitutional delay of his application for an FID card.

90.    Rachlin was not an individual disqualified from firearms possession within the meaning of New Jersey or federal law, presented no discernible threat to public health, safety, and welfare, and was even evaluated by Faiman, a licensed professional counselor, who found that Rachlin was not a danger to himself or others.  Rachlin has a fundamental right to keep and bear arms under the Second Amendment.

91.    At all relevant times, Baumann's actions have been under color of state law and, by virtue of his actions, he has deprived Rachlin of his fundamental right to keep and bear arms guaranteed by the Second Amendment.

92.    Baumann's aforementioned acts were done with the express purpose and intent of depriving Rachlin of his fundamental right to keep and bear arms guaranteed by the Second Amendment.

93.    Moreover, Baumann, by his actions set forth herein, violated Rachlin's clearly established constitutional rights under the Second Amendment, and is therefore liable in his official and individual capacities.

94.    Baumann's ongoing deprivation of Rachlin's fundamental right to keep and bear arms has caused concrete injury to Rachlin that is actionable under 42 U.S.C. § 1983.

95.    Baumann was, and still is, the highest official in the Township responsible for setting policy in the area of issuing FID cards, since, as the Chief of

FTPD, Baumann has final decision-making authority over FID card applications. Therefore, Baumann's unconstitutional delay of Rachlin's application for an FID card, unconstitutional policy and demand that Rachlin submit to screening by a clinical psychologist in order to obtain an FID card, and Baumann's unconstitutional denial of Rachlin's application for an FID card, were, and still are, official policies of the Township that caused concrete injury to Rachlin. Accordingly, the Township is also liable under 42 U.S.C. § 1983 for Rachlin's injuries.

96.    Additionally, Rachlin is entitled to preliminary and permanent injunctive relief against Defendants in order to redress Defendants' ongoing deprivation of Rachlin's Second Amendment right to keep and bear arms.

97.    Even if Rachlin were to reapply for an FID card, Baumann would continue to enforce Defendants' policy and demand that Rachlin undergo expensive screening by a clinical psychologist. Regardless of whether Rachlin seeks an FID card under his present application, or reapplies, Defendants' infringement on Rachlin's Second Amendment right to keep and bear arms is ongoing and will continue in the future, absent injunctive relief.

98.    Since Baumann had, and still has, no reasonable factual basis and no statutory basis to find that Rachlin had a mental condition that presented a danger to himself or others, Rachlin was never confined for a mental disorder or

36

adjudicated as mentally defective, and Rachlin is not otherwise disqualified from owning and possessing a firearm, Baumann's insistence that Rachlin be evaluated by a clinical psychologist, and Baumann's past and continuing denial of Rachlin's application for an FID card, imposes an ongoing burden on, and unconstitutional infringement of, Rachlin's exercise of his Second Amendment right to keep and bear arms.

99.    Rachlin has a reasonable likelihood of success on the merits with regard to his Second Amendment claim against Defendants.

100.    As a result of Defendants' ongoing deprivation of Rachlin's fundamental right to keep and bear arms, Rachlin will continue to suffer irreparable harm in the absence of injunctive relief, including the loss of his constitutional rights and the ability to lawfully possess firearms for the purposes of self-defense.

101.    Additionally, the granting of injunctive relief will not result in greater harm to Defendants than to Rachlin, and the public interest weights in favor of injunctive relief, given the constitutional rights at stake.

102.    Defendants' acts and past and continuing current enforcement of the laws, regulations, customs, practices, and policies related thereto forces Plaintiff to refrain from exercising his constitutional rights—thereby preventing him from

defending himself with a firearm in the home—or be subjected to criminal prosecution.

103.   Therefore, as a direct and proximate result of the above infringements and impermissible burdens on Rachlin's Second and Fourteenth Amendment rights, Rachlin has suffered—and continues to suffer—from a deprivation of his fundamental constitutional right to keep and bear arms.

## COUNT TWO

**Violation of the United States Constitution**
**First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**
**(All Defendants)**

104.   Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully stated herein.

105.   The Free Speech Clause of the First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The First Amendment, as incorporated through the Fourteenth Amendment, prohibits a State or any political subdivision thereof, or any official of a State or any political subdivision thereof, from prohibiting the free exercise of speech and expression. U.S. Const. amend. XIV, § 1.

106.   " '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in

protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

107.  "If an official takes adverse action against someone based on that forbidden motive, 'and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id*.

108.  Baumann took adverse action against Rachlin in multiple respects: (a) by unconstitutionally denying Rachlin's application for an FID card despite the fact that Rachlin is not disqualified from possessing a firearm under any provision of New Jersey or federal law, (b) by imposing the unconstitutional policy and demand that Rachlin submit to screening by a clinical psychologist in order to obtain an FID card, and (c) by subjecting Rachlin to significant delay of his application for an FID card far beyond New Jersey's 30-day statutory limit.

109.  Baumann's adverse actions against Rachlin were based on, and motivated by Rachlin's repeated criticisms of Baumann and his police department, the FTPD, and criticisms of the Township, which caused public embarrassment to Baumann, the FTPD, and the Township, and exposure of Baumann's gross dereliction of legal duties and violations of law as an issuing authority.

110.  Baumann's stated non-retaliatory grounds for the adverse actions against Rachlin —public health, safety, and welfare—were insufficient to provoke

the adverse actions against Rachlin, since Rachlin was not an individual disqualified from firearms possession within the meaning of New Jersey or federal law, presented no discernible threat to public health, safety, and welfare, and was even evaluated by Faiman, a licensed professional counselor, who found that Rachlin was not a danger to himself or others.

111.   Baumann's improper motive—retaliation against Rachlin for his criticisms of Baumann and his police department, which caused public embarrassment of Baumann and exposure of Baumann's gross dereliction of his legal duties as an issuing authority—were the proximate cause of Rachlin's underlying injury, to wit: the deprivation of Rachlin's fundamental right to keep and bear arms. Indeed, but for Rachlin's criticism of Baumann, the FTPD, and the Township, Baumann would have granted Rachlin's application for an FID card.

112.   At all relevant times, Baumann's actions have been under color of state law and, by virtue of his actions, he has deprived Rachlin of his fundamental right to freedom of speech and expression under the First Amendment.

113.   Baumann's aforementioned acts were done with the express purpose and intent of depriving Rachlin of his fundamental right to freedom of speech and expression and retaliating against Rachlin for his exercise of this fundamental right under the First Amendment.

114. Moreover, Baumann, by his actions set forth herein, violated Rachlin's clearly established constitutional rights under the First Amendment, and is therefore liable in his official and individual capacities.

115. Baumann's retaliatory deprivation of Rachlin's fundamental right to protest and freedom of speech and expression has caused concrete injury to Rachlin that is actionable under 42 U.S.C. § 1983.

116. Baumann was, and still is, the highest official in the Township responsible for setting policy in the area of issuing FID cards, since, as the Chief of FTPD, Baumann has final decision-making authority over FID card applications. Therefore, Baumann's unconstitutional delay of Rachlin's application for an FID card, unconstitutional policy and demand that Rachlin submit to screening by a clinical psychologist in order to obtain an FID card, and Baumann's unconstitutional denial of Rachlin's application for an FID card, all undertaken in retaliation for Rachlin's exercise of his fundamental right to free speech and expression, were, and still are, official policies of the Township that caused concrete injury to Rachlin. Accordingly, the Township is also liable under 42 U.S.C. § 1983 for Rachlin's injuries.

117. Defendants' acts and past and continuing current enforcement of the laws, regulations, customs, practices, and policies related thereto forced, and continues to force, Plaintiff to refrain from exercising his constitutional rights—

thereby being preventing him from defending himself with a firearm in the home—
or be subjected to criminal prosecution.

118.   Therefore, as a direct and proximate result of the above infringements
and impermissible burdens on Rachlin's First and Fourteenth Amendment rights,
Rachlin has suffered—and continues to suffer—from a deprivation of his
fundamental constitutional right to protest and freedom of speech.

**WHEREFORE**, Plaintiff, Avi Alexander Rachlin, respectfully prays that
this Honorable Court enter judgment in his favor against Defendants George K.
Baumann and Freehold Township, as follows:

(a)    A declaration adjudging that Plaintiff is entitled to exercise his Second
Amendment right to keep and bear arms for self-defense in the home, and that
Defendants must issue an FID card to Plaintiff;

(b)    A declaration adjudging that, to the extent that provisions of State law
formed the basis of Defendants' past and continuing denial of Plaintiff's FID card
and right to keep and bear arms, such provisions are unconstitutional as-applied to
Plaintiff;

(c)    A declaration adjudging that Defendants' act, policy, demand,
practice, and/or custom that requires Plaintiff to pay for and be evaluated by a
clinical psychologist as a condition of obtaining an FID card is unconstitutional
and violates the Second Amendment to the United States Constitution;

(d)     A declaration adjudging that Defendants' delays to and past and continuing denial of Plaintiff's application for an FID card are unconstitutional and violate the Second Amendment to the United States Constitution;

(e)     A declaration adjudging that Defendants' refusal to grant and issue to Plaintiff an FID card are unconstitutional and violates the Second Amendment to the United States Constitution;

(f)     A declaration adjudging that Defendants' acts and policies, demands, practices, and/or customs were in whole or part retaliatory in nature and violate the First Amendment to the United States Constitution;

(g)     A preliminary and permanent injunction (1) restraining Defendants from denying and continuing to deny Plaintiff's FID card application, (2) restraining Defendants from engaging in acts and enforcing their policies, demands, practices, and customs that individually and collectively result in the denial of Plaintiff's FID card and/or violation of Plaintiff's right to keep and bear arms under the Second Amendment, (3) requiring that Defendants issue Plaintiff an FID card and allow Plaintiff to acquire and possess firearms in accordance with New Jersey law, and (4) to the extent State law formed the basis of Defendants' past and continuing denial of Plaintiff's FID card and right to keep and bear arms, restraining Defendants from continuing to enforce such provisions against Plaintiff;

(h)     Award compensatory damages for the past and continued deprivation of Plaintiff's rights as set forth in this Complaint, in an amount to be determined at trial;

(i)     Award punitive damages for Defendants' reckless or callous indifference to Plaintiff's rights as set forth in this Complaint, in an amount to be determined at trial;

(j)     If the Court does not award compensatory and/or punitive damages, award nominal damages for Defendants' past and continued deprivation of Plaintiff's rights as set forth in this Complaint;

(k)     Attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 1988; and,

(l)     Any other relief to which Plaintiff is entitled that the Court deems just and proper.

Dated:     August 16, 2021

Respectfully submitted,

By:     s/   Edward A. Paltzik
        Edward A. Paltzik, Esq.
        Joshpe Mooney Paltzik LLP
        1407 Broadway, Suite 4002
        New York, NY 10018
        Tel: (212) 344-8211
        epaltzik@jmpllp.com
        *Attorneys for Plaintiff*