METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
1(732) 248-2355
mailbox@methwerb.com
Attorneys for George Baumann, Freehold Township Police Department, and Freehold Township
Our File No.  90990 ELH

| | |
|---|---|
| AVI ALEXANDER RACHLIN<br><br>Plaintiff,<br><br>v.<br><br>GEORGE K. BAUMANN,<br>INDIVIDUALL AND AS CHIEF OF<br>POLICE OF THE FREEHOLD<br>TOWNSHIP POLICE DEPARTMENT,<br>AND FREEHOLD TOWNSHIP<br><br>Defendants | **UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION NO.: 3:21-CV-15343 |

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)
AND 12(b)(7)**

---

Of Counsel and On the Brief
Eric L. Harrison, Esq.
Attorney ID: 033381993

On the Brief
Adam M. Carman, Esq.
Attorney ID: 021362011

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL HISTORY .............................................................................. 4

STATEMENT OF FACTS .............................................................................. 4

FACTS FROM THE COMPLAINT ................................................................. 4

FACTS FROM EXTRINSIC DOCUMENTS
    OVERVIEW OF FID APPLICATION ...................................................... 6

FACTS FROM EXTRINSIC DOCUMENTS
    FREEHOLD POLICE REPORT ................................................................ 7

FACTS FROM EXTRINSIC DOCUMENTS
                RECORDS .................................................. 8

LEGAL ARGUMENT ................................................................................ 10

POINT I:
    THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE
    A CLAIM ON WHICH RELIEF CAN BE GRANTED ............................... 10

POINT II:
    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF
    FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ...................................... 13

POINT III:
    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF'S
    CONSTITUTIONAL RIGHTS HAVE NOT BEEN VIOLATED ............................. 18

POINT IV:
    THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS
    AGAINST CHIEF BAUMANN ...................................................................... 22

POINT V:
    THE COMPLAINT FAILS TO STATE A CLAIM FOR THE SEPARATE AND
    INDEPENDENT REASON THAT IT FAILS TO PLEAD FACTS SUFFICIENT TO
    ESTABLISH MUNICIPAL LIABILITY ........................................................ 26

POINT VI:
    PLAINTIFF'S FALSIFICATION OF HIS FIREARMS IDENTIFICATION
    APPLICATION INDEPENDENTLY REQUIRES DISMISSAL OF HIS
    CONSTITUTIONAL CLAIMS ...................................................................... 29

CONCLUSION .......................................................................................... 31

## TABLE OF AUTHORITIES

### CASES

Adler v. Livak, 308 N.J. Super. 219 (App. Div. 1998).----------------------------------17, 19, 23

Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) --------------------------------25

Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004)---------------------------------10

Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397 (1997)---------------------25

Burton v. Sills, 53 N.J. 86 (1968) ----------------------------------------------------------------- passim

C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159 (3d Cir. 2005) ---------------------------------25

Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176 (3d Cir. 2009)-------------- 25, 26

Connick v. Thompson, 563 U.S. 51 (2011) ------------------------------------------------------------25

Crespo v. Crespo, 201 N.J. 207 (2010)----------------------------------------------------------------14

District of Columbia v. Heller, 554 U.S. 570 (2008)------------------------------------------------14

Durga v. Bryan, 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011) ----------------------16

Harlow v. Fitzgerald, 457 U.S. 800 (1982). ----------------------------------------------------------21

Hunter v. Bryant, 502 U.S. 224 (1991)-----------------------------------------------------------------21

In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.,

  ----------------------------------------- 2019 N.J. Super. Unpub. LEXIS 550, 2019 WL 1110767.

  ------------------------------------------------------------------------------------------------------- 23, 26

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997)--------------------9, 10

In re D.P.'s Application for a Firearms Purchaser Identification Card,

  -------------------------------------------2021 N.J. Super. Unpub. LEXIS 769, 2021 WL 1731790

  -------------------------------------------------------------------------------------------------------23, 26, 29

In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M.,

-------------------------------------------------------------------------------- 225 N.J. 487 (2016)

--------------------------------------------------------------------------------------------------------14

In re J.D., 407 N.J. Super. 317 (Law Div. 2009) ------------------------------------ 19, 20, 23, 26

In re Osworth, 365 N.J. Super. 72 (App.Div.2003) ------------------------------------------- 14, 28

In re Wheeler, 433 N.J. Super. 560 (App.Div.2013) -------------------------------------------------14

In re Winston, 438 N.J. Super. 1, 10 (App. Div. 2014)-------------------------------------------------14

Losch v. Borough of Parkesburg, 736 F.2d 903 (3d Cir. 1984) ----------------------------------25

Marks v. Stinson, 19 F.3d 873 (3d Cir. 1994). -------------------------------------------------------12

McDonald v. City of Chicago, 561 U.S. 742 (2010), -------------------------------------------------14

Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251 (3d Cir.2004)-------------------------------10

Mitchell v. Forsyth, 472 U.S. 511 (1985)-------------------------------------------------------------21

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) ------------------------------------- 25, 27

Nami v. Faulver, 82 F.3d 63 (3d Cir. 1996) ------------------------------------------------------ 9

O'Neill v. City of Philadelphia, 32 F.3d 785 (3d Cir. 1994) -------------------------------- passim

Pearson v. Callahan, 555 U.S. 223 (2009)----------------------------------------------------- 21, 22

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)-------------------------------------------------26

Plumhoff v. Rickard, 572 U.S. 765 (2014) --------------------------------------------------------22

Simmons v. City of Philadelphia, 947 F.2d 1042 (3d Cir. 1991)----------------------------------25

State v. Valentine, 124 N.J. Super. 425 (App. Div. 1973) --------------------------------13, 19, 23

Younger v. Harris, 401 U.S. 37 (1971)----------------------------------------------------- 12, 16

## <u>STATUTES</u>

42 <u>U.S.C.A.</u> 1983 .......................................................................................... 12, 22, 25, 26

<u>N.J.S.A.</u> 2C:58-3 ........................................................................................................ 19

<u>N.J.S.A.</u> 2C:58-3(c)(5) ............................................................................................. 28

<u>N.J.S.A.</u> 2C:58-3(d) .............................................................................................. 2, 16

<u>N.J.S.A.</u> 2C:58-3(e) ................................................................................................. 19

<u>N.J.S.A.</u> 2C:58-3(f) ......................................................................................... 2, 14, 17

## <u>RULES</u>

<u>F.R.C.P.</u> 12(a)(1)(A)(ii) ............................................................................................. 3

<u>F.R.C.P.</u> 12(b)(6) ............................................................................................. 3, 9, 10

**PRELIMINARY STATEMENT**

Plaintiff Avi Rachlin (hereinafter "Rachlin" or "Plaintiff") filed an application for a Firearms Identification Card (hereinafter FID) with the Freehold Township Police Department on October 24, 2020.  The Freehold Township Police Department performed background checks and collected records, recommending issuance of the FID on March 2, 2021 subject to Freehold Township Chief of Police George Baumann's (hereinafter Baumann) final approval.

Baumann's review found serious concerns regarding the public health, safety, and welfare if Plaintiff were to own a firearm. These concerns arose from an incident with the police ██████████████████████████████████ ████████████████ ██████████████████ Baumann required Plaintiff to submit to examination by a clinical psychologist and obtain a statement that he was not a danger to himself or others if he owned a firearm in order to address the concerns.  Plaintiff did not comply with this request to submit to examination by a clinical psychologist. Thereafter, Baumann rejected Plaintiff's FID application on March 25, 2021.

Specifically, on May 20, 2017 Plaintiff's parents called the police to their residence to address a domestic incident involving Plaintiff. The officer on scene changed the status of the incident from "domestic" to "suicidal/mental" and the Plaintiff was escorted by police cruiser to ██████████████ Plaintiff was admitted to ██████████████ for a mental health evaluation. Plaintiff's admitted to a previous issues with ████████████ and "████████████" of ██████████ when describing his history during this evaluation.

During the same ██████████ evaluation, Plaintiff's parents stated they felt Plaintiff was a threat to their family and had "no moral compass," and they were worried that Plaintiff

1

may become a "psychopath." ███████████████ discharged Rachlin with a diagnosis of ████████████████ notation of a history of ███████ and recommendation for outpatient therapy. This history and these documents gave Chief Baumann concern for the public health, welfare, and safety regarding Plaintiff's FID application.

After review of these records in 2021, Chief Baumann required Plaintiff to submit to an evaluation by a clinical psychologist and obtain a letter stating that he would not pose a danger to himself or others if he were to own a firearm. Plaintiff did not comply with this request. As a result, Bauman denied the FID application on March 25, 2021.

After Plaintiff's FID application was denied he requested a hearing in New Jersey Superior Court to review the decision pursuant to N.J.S.A. 2C:58-3(d). Before a hearing was held, Plaintiff withdrew his hearing request. Thereafter, Plaintiff filed this Complaint on August 16, 2021.

Plaintiff's Complaint alleges that the Defendants violated his First and Second Amendment rights by delaying the processing of his application beyond the 30 day statutory deadline, requiring him to submit to a psychological evaluation, and denying his FID application for failure to submit to the evaluation.

Defendants hereby move to dismiss because Plaintiff failed to exhaust administrative remedies as required by N.J.S.A. 2C:58-3(d). As to the delay beyond the 30 day deadline set forth at N.J.S.A. 2C:58-3(f), it did not rise to the level of a constitutional deprivation because it was caused by reasonable actions to ensure public safety. As to the requirement that Plaintiff submit to a psychological screening, this was an eminently reasonable condition supported by ample federal precedent.  Finally, even if the Complaint could state a plausible claim against

Freehold Township, the doctrine of qualified immunity and municipal immunity would require dismissal of all claims against Chief Bauman.

## PROCEDURAL HISTORY

On August 16, 2021 Plaintiff filed a Complaint in the United States District Court. The Defendants waived formal service on August 18, 2021, rendering a responsive pleading due on or before October 17, 2021.

Plaintiff thereafter filed a motion for injunctive relief on or about September 21, 2021. Co-Counsel for Defendants will be opposing the motion for injunctive relief.

Defendants now move pursuant to <u>F.R.C.P.</u> 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS
## FACTS FROM THE COMPLAINT

1. Rachlin alleges he previously went to seek support from a psychiatrist. Exhibit A ¶16.

2. Rachlin alleges there was no basis to demand a clinical psychologist letter in order to be approved for a FID. Exhibit A ¶18, ¶19, and ¶20.

3. Rachlin alleges there is no evidence that he had a mental condition that presented a danger to himself or others. Exhibit A ¶20.

4. On October 24, 2020 Rachlin submitted his FID application to the Freehold Township Police Department using the Firearms Application and Registration System (hereinafter FARS). Exhibit A ¶39.

5. Rachlin supplements his FID application by clarifying he was treated at ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ prior for a period of 3 hours. He advises it was at the request of his parents, that it was voluntary, and that he was discharged. Exhibit A ¶40 and ¶41.

6. On March 3, 2021 Bauman called Rachlin to advise that Rachlin would need to obtain written clearance from a clinical psychologist that he was not a danger to himself or others if he were to own a firearm. Exhibit A ¶56.

4

7. On March 4, 2021 Baumann wrote a letter memorializing the conversation and advising Rachlin that he needed to get clearance from a clinical psychologist in writing that specifically states owning a firearm would not cause safety issues to himself or to the public. Exhibit A ¶57.

8. Plaintiff asserts that Baumann is the policymaker for FID applications in Freehold Township and that the policy requiring screening by a clinical psychologist is unconstitutional. Exhibit A ¶58-59.

9. Plaintiff reveals that he was treated by licensed professional counselor, Jordan Faiman, from 2013 through 2017, for ' ██████████████ Exhibit A ¶62.

10. On March 19, 2021, Plaintiff submitted a letter from Jordan Faiman stating that Plaintiff was not a threat to himself or others. Exhibit A ¶63.

11. On March 19, 2021, Baumann wrote another letter to Rachlin advising that Faiman is not a clinical psychologist and the letter did not specifically indicate that owning a firearm would not cause any harm to himself or the public. The letter ends by inviting Rachlin to remedy this. Exhibit A ¶67-¶68.

12. On March 26, 2021 Rachlin is sent an automatic email from FARS that his application has been denied as of March 25, 2021 and a letter would follow from the issuing local authority for a specific reason why. Exhibit A ¶74.

13. Also on March 26, 2021, after the automated email from FARS, Baumann sent a letter to Rachlin explaining he his FID was not denied yet and was invited to a pre-decision conference to remedy the concerns. Exhibit A ¶75.

14. Rachlin alleges that a letter dated March 29, 2021 requesting a hearing in Monmouth County Superior Court of New Jersey to review his FID denial was served on all required parties and Monmouth County Superior Court of New Jersey. Exhibit A ¶80.

15. On June 2, 2021 Rachlin withdrew his application for a hearing with Monmouth County Superior Court of New Jersey. Exhibit A ¶82.

16. Count 1 of the Plaintiff's Complaint claims violation of his Second Amendment rights because of 1. denial of the FID without being disqualified under New Jersey or Federal Law, 2. imposing the policy and demand that Rachlin submit to screening by a clinical psychologist, and 3. by subjecting Rachlin to unconstitutional delay of his FID application. Exhibit A ¶89.

17. Count 2 of the Plaintiff's Complaint claims violation of his First Amendment rights because 1. there was an unconstitutional denial of Plaintiff's FID card, 2. there was an unconstitutional policy and demand that Rachlin submit to screening by a clinical psychologist, and 3. there was an unconstitutional delay of Rachlin's FID application. Exhibit A ¶108.

## FACTS FROM EXTRINSIC DOCUMENTS
## OVERVIEW OF FID APPLICATION

1. As the Complaint refers to the process and timeline for which his application was processed numerous times in his complaint, the actual processing overview sheet is attached as Exhibit B.

2. Rachlin's submission for an FID began on October 24, 2020. See Exhibit B Page 1.

3. Rachlin's fingerprint results were completed on November 10, 2020. Exhibit B Page 1.

4. Rachlin's New Jersey Department of Motor Vehicle check, New Jersey Municipal Court System check, New Jersey Juvenile Central Registry check, New Jersey Domestic

Violence Central Registry check, Department of Homeland Security and United States
Citizen and Immigration Services Immigration Alien check, and New Jersey Data
Exchange check were all completed on January 14, 2021. Exhibit B Page 1.

5. Rachlin's Criminal Master Name Index check, Mental Health Check, reference feedback,
New Jersey Prosecutor and Criminal Court check, and Local Police Database check were
completed on February 26, 2021. Exhibit B Page 1.

6. Freehold Township Detective Sergeant Joe Winowski recommended approval of
Plaintiff's FID on March 2, 2021. Exhibit B Page 1.

7. Chief Baumann denied Plaintiff's FID on March 25, 2021. Exhibit B Page 1.

8. In the denial notes, Baumann requested Plaintiff obtain a clinical psychologist evaluation
to declare he was no longer a danger to himself or others prior to approving the FID. This
was required based on past police contacts and professional treatment at ███████████
███████████████ notes state "Applicant failed to provide documentation [from a
clinical psychologist]." Defendant Baumann lists a reason for denial as "issuance would
not be in the interest of public health, safety, or welfare." Exhibit B Page 2.

## FACTS FROM EXTRINSIC DOCUMENTS
## FREEHOLD POLICE REPORT

1. Rachlin's complaint referenced an incident where the police were called and he was taken
to a hospital for observation by a psychologist. The police report for this incident is attached
as Exhibit C.

2. Rachlin's father called the police on May 20, 2017 regarding an incident with Rachlin.
Exhibit C Page 1.

3. The narrative indicates          Rachlin [Plaintiff's father] called concerned for his son's,
Avi, mental health. Avi made racial videos and posted them to YouTube. Electronics and

7

power w[ere] taken out from his room, but Avi tried to rewire the outlets in his room. [The rewiring] almost caus[ed] an electrical fire….” Exhibit C Page 3.

4. The officer on scene indicated the nature of the incident changed from “domestic” to a ██████████████████ Exhibit C Page 4.

5. The officer on scene transported Rachlin to ████████████████████ for a “mental health eval[uation].” Exhibit C Page 4.

## FACTS FROM EXTRINSIC DOCUMENTS
## ██████████████████████████████ RECORDS

1. Plaintiff’s Complaint makes multiple references to a visit to ██████████████ The records from this hospital visit are attached as Exhibit D.

2. ██████████████████ ██████████████ ████████████████ ██████████████████ Exhibit D Page 2.

3. The history indicates Rachlin’s mother advised he was posting “racially charged videos” and “fiddling with the power outlets” and that both parents “are concerned that [Plaintiff Avi Rachlin] is putting himself and his family at risk.” Exhibit D Page 2.

4. The triage staff confiscated his clothing and possessions as contraband, the contraband was locked in “locker 9,” Plaintiff put on a hospital gown, and was given an admission and egress bracelet. Exhibit D Page 4.

5. Rachlin’s parents again advised that he was becoming a threat to himself and others, posted racial videos, and was suspended from school. This led to a domestic dispute, calling the police, and the escort to the hospital for a mental health evaluation. Exhibit D Page 5.

6. The attending doctor, ██████████████, approved Rachlin for a mental health evaluation. Exhibit D Page 6.

8

7.  The attending mental health therapist, , wrote that Rachlin self-reported █████ problems, a history of █████ treatment for █████ and a history of █████ including █████ himself. Exhibit D Page 7.

8.  █████ █████ history showed Rachlin saw a therapist regularly. Exhibit D Page 7.

9.  Rachlin's mother asked █████ about placing Rachlin in a residential placement for inpatient mental health. Exhibit D Page 7.

10. Rachlin's mother told █████ that she sees Rachlin as a threat to her family and her home. Exhibit D Page 7.

11. Rachlin's mother told the mental health therapist that Rachlin ██ █████ █████" and that she believes he is going to turn into a "█████ Exhibit D Page 7.

█████ encouraged Rachlin's mother to get him more serious outpatient mental health regime.  Exhibit D Page 8.

13. The mental health therapist, █████, diagnosed Rachlin with █████ █████ with a history of █████ Exhibit D Page 12.

14. The attending doctor, █████, and registered nurse, █████, both signed off on the diagnosis of █████. Exhibit D Pages 13 and 14.

## **LEGAL ARGUMENT**

### **POINT I**

### **THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

In ruling on a F.R.C.P. 12(b)(6) motion, the Court must accept as true all well-pleaded allegations of fact in the Plaintiff's Complaint and any reasonable inferences that may be drawn therefrom, and must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Nami v. Faulver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). Nevertheless, in evaluating a Plaintiff's pleadings, the court need not credit a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). According to the Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face". . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)

A pleading that offers only "labels and conclusions," contains "a formulaic recitation of the elements of a cause of action," or "tenders naked assertions devoid of further enhancement" is insufficient to overcome a Rule 12(b)(6) motion since it does not allow the court to reasonably infer the Defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. at 678. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the "facial plausibility" requirement and are not entitled to the assumption of truth. Id. at 678-79.

Ordinarily, in a motion to dismiss pursuant to <u>F.R.C.P.</u> 12(b)(6) a Court may not "consider matters extraneous to the pleadings." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir.1997). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint. <u>Angstadt v. Mid-West Sch. Dist.</u>, 377 F.3d 338, 342 (3d Cir. 2004); <u>Mele v. Fed. Reserve Bank of N.Y.</u>, 359 F.3d 251, 256 (3d Cir.2004).

"A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion into one for summary judgment.'" <u>In re Burlington Coat</u> at 1426. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." <u>Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.</u>, 998 F.2d 1192, 1196 (3d Cir.1993). Consideration of extrinsic documents would only require the conversion of a motion to dismiss if the plaintiff was previously unaware of them. <u>Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.</u>, 998 F.2d 1192, 1196 (3d Cir.1993)

Even if a "complaint does not explicitly refer to or cite [to an extrinsic document] … the critical [issue] is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited." <u>Burlington Coat</u>, 114 F.3d at 1426.

In this matter the Plaintiffs' Complaint refers to an FID application, a prior encounter with the police, and a hospitalization related to that encounter. Plaintiffs cannot reasonably

state they were unaware of the documents, which are referred to directly and indirectly in the complaint. Therefore, the Court should consider the extrinsic documents without the need to convert this motion to dismiss into a summary judgment motion.

## POINT II

### PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

The U.S. Supreme Court has held that district courts must abstain from granting injunctive or declaratory relief in the course of state criminal prosecutions. Younger v. Harris, 401 U.S. 37 (1971). The Younger abstention doctrine has since been expanded to civil judicial proceedings. O'Neill v. City of Philadelphia, 32 F.3d 785, (3d Cir. 1994). Abstention by a federal court is "the exception and not the rule," and federal courts have an "obligation to adjudicate claims within their jurisdiction [that is] virtually unflagging." Marks v. Stinson, 19 F.3d 873 (3d Cir. 1994). However, when all O'Neill and Younger prongs are met, abstention is required.

The decision in O'Neill sets forth requirements to extend Younger doctrine to civil cases as follows: (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues. O'Neill at 789. Even if these elements are satisfied, if there is a showing of bad faith, harassment, or other extraordinary circumstances, a claimant may evade the Younger doctrine. Id. However, if all criteria are met, a motion to dismiss a 42 U.S.C.A. 1983 claim should be successful if Plaintiff fails to exhaust all underlying remedies for relief.

All three prongs of the O'Neill test are met in this case. The first prong, whether there are pending or ongoing state proceedings which are judicial in nature, is automatically met when there is a voluntary withdraw of the state-court remedy. A matter is considered "pending" within the meaning of Younger when:

13

> [A] coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action.

O'Neill at 791

In this case the Plaintiff was denied an FID card in an administrative proceeding. The Plaintiff had an adequate state-court remedy of judicial review at the Superior Court level, and thereafter the Appellate Division level. The Plaintiff choose to withdraw from the state-court remedy before a hearing could be held. Now the Plaintiff is attempting to invalidate the FID denial by filing a federal action. The first prong of the O'Neill test is met because there is an available state-court remedy that was voluntarily withdrawn.

The second prong of the O'Neill test, whether the state proceedings implicate important state interests, is also met. The discussion of the legislative intent and important government interests related to N.J.S.A. 2C:58-3 has been discussed in numerous prior settings. Burton v. Sills, 53 N.J. 86, 93 (1968) (The public purpose of the statute is entirely evident; it is designed to prevent criminals and other unfit elements from acquiring firearms); State v. Valentine, 124 N.J. Super. 425, 427 (App. Div. 1973)("[T]he overriding philosophy of our Legislature is to limit the use of guns as much as possible.").

> [W]hatever one's views on the worth of firearms, their capacity to wreak havoc when in the hands of the unfit is a matter of public record. The Legislature has wisely provided for suitable inquiry into qualifications and fitness. We do no more than carry out that legislative mandate.

Adler v. Livak, 308 N.J. Super. 219, 225 (App. Div. 1998).

To provide a comparison of what has been considered an important state interest we can look again to the O'Neill court. In O'Neill the court found important state interests were at stake in the regulation of on street parking. O'Neill at 792. In doing so the financial well-

14

being of a city as it related to parking violations income is sufficient to satisfy the second prong

of O'Neill.  Surely, the state interest in protecting individuals and the public health, welfare,

and safety concerning gun ownership will also satisfy the same.

The Courts have also analyzed and ruled that the important government interests

behind N.J.S.A. 2C:58-3 render it immune to constitutional challenges to the law itself.

> N.J.S.A. 2C:58-3(c)(5), the "public health, safety or welfare" disqualifier, "is
> 'intended to relate to cases of individual unfitness, where, though not dealt with in
> the specific statutory enumerations, the issuance of the permit or identification card
> would nonetheless be contrary to the public interest.'" In re Osworth, 365 N.J.
> Super. 72, at 79 (App. Div. 2003)(quoting Burton v. Sills, 53 N.J. 86, at 91
> (1968), appeal dismissed, 394 U.S. 812 (1969)), certif. denied, 179 N.J. 310
> (2004). That subsection and N.J.S.A. 2C:58-3(c)(8), regarding seizure of firearms
> and identification cards under the Domestic Violence Act, have been upheld
> against Second Amendment challenges. See Crespo v. Crespo, 201 N.J. 207, 209-
> 210 210 (2010)(holding Domestic Violence Act constitutional because "the right to
> possess firearms clearly may be subject to reasonable limitations"); Burton, supra,
> 53 N.J. at 91, (rejecting constitutional challenge to predecessor statute
> to N.J.S.A. 2C:58-3(c)(5)); see also In re Winston, 438 N.J. Super. 1, 10 (App. Div.
> 2014) (holding that District of Columbia v. Heller, 554 U.S. 570 (2008)
> and McDonald v. City of Chicago, 561 U.S. 742 (2010), do not
> render N.J.S.A. 2C:58-3(c)(5) unconstitutional), certif. denied, 220 N.J. 573
> (2015); In re Wheeler, 433 N.J. Super. 560 (App.Div.2013) (addressing
> constitutionality of carry permit law).
>
> The initial determination of whether to grant a permit or an identification card is
> made by the chief of police of the municipality where the applicant
> resides. N.J.S.A. 2C:58-3(d). The police chief must grant a permit and
> identification card "unless good cause for the denial thereof
> appears." N.J.S.A. 2C:58-3(f). Thereafter, a denied applicant may request a hearing
> in the Law Division. N.J.S.A. 2C:58-3(d).
>
> In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to
> F.M., 225 N.J. 487, 507-08, (2016)

There can no longer be a question as to the constitutionality of N.J.S.A. 2C:58-3 and the

important governmental interests behind it. Therefore, the second prong of the O'Neill test is

met.

The third prong of the O'Neill test, that the state proceedings must afford an adequate opportunity to raise any constitutional issues, is also met. If a plaintiff fails to bring a constitutional claim during state-court proceedings, it can be assumed that the state procedures would have afforded the remedy:

> The Supreme Court has held that this third element is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination. Moreover, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."

O'Neill v. City of Philadelphia, 32 F.3d 785, 792 (3d Cir. 1994)(citations omitted)

Here, Plaintiff withdrew his application for the state-court judicial hearing. Pursuant to O'Neill, it should be assumed that the state procedure would have afforded adequate remedy. Therefore, the third prong of O'Neill is met.

Plaintiff has not presented evidence of bad faith, harassment, or other extraordinary circumstances that would invalidate the O'Neill test. To the contrary, the reason for delay in approval was that after a full investigation Baumann required a clinical psychologist to evaluate Plaintiff and state that he was not a danger to himself or others if he owned a firearm. This was a reasonable action because Plaintiff had undergone years of mental health treatment, had admitted to a history of d█████████████████████████████████████ ████████████████████████████████████████████████████████ Plaintiff's parents have stated Plaintiff is a threat to their home and family, ████████ ██ ████ ██████ ███████████████████████████ ████████ Chief Baumann could have simply issued a denial given these facts. Allowing any applicant additional leeway

to overcome these issues when they are not entitled to a FID approval is the opposite of bad faith, harassment, or extraordinary circumstances taken against a FID applicant.

Plaintiff's Complaint advises that the remedy of a judicial hearing to review a denial of an FID card under N.J.S.A. 2C:58-3(d) is "optional" and therefore not required before bringing a Federal complaint for violation of constitutional rights. Exhibit A, ¶83. The Complaint cites to unpublished case law, Durga v. Bryan, 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011), as authority for this position. Durga discusses the O'Neill and Younger doctrine as applied to denial of an FID card in a New Jersey. The Court in Durga denied the dismissal motion made by defendants in a similar FID application denial related to public health, safety, and welfare. The denial was issued while there was a pending action in New Jersey Appellate Division after a decision by New Jersey Superior Court hearing requested pursuant N.J.S.A. 2C:58-3(d). The Court in Durga advised that while the request for a state-court hearing was a necessary remedial measure to appeal an administrative decision, the appeal of the state-court hearing to higher courts was not required.

This case is distinguishable from Durga because Plaintiff withdrew his request for an initial hearing pursuant to N.J.S.A. 2C:58-3(d). Durga does not support the premise that the underlying state-court remedy can be voluntarily withdrawn and still allow a Federal District Court to hear the claim. To the contrary, Durga provides support that the initial hearing in New Jersey State Court pursuant to N.J.S.A. 2C:58-3(d) must be completed before a complaint can be brought in United States District Court. Therefore, the Court should abstain from hearing this case and dismiss the Complaint.

## POINT III
### THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF'S CONSTITUTIONAL RIGHTS HAVE NOT BEEN VIOLATED

The basis of Plaintiff's Complaint is that his constitutional rights were violated by means of delay in processing, being required to submit to a medical examination, and eventual denial of his FID. None of these allegations establish a claim for a violation of Plaintiff's Second Amendment rights. Plaintiff's allegations that his First Amendment rights have been violated are predicated upon his Second Amendment rights being violated as a form of retaliation to his speech. However, since his Second Amendment rights were not violated, his claims regarding his First Amendment rights must also fail.

Plaintiff's alleges a violation of his Second Amendment rights due to delay in his FID application because it took longer than the 30 days set forth in N.J.S.A. 2C:58-3(f). New Jersey Court of Appeals has already spoken directly on this issue.

> Undoubtedly, the statutory deadline was prompted by a desire to avoid dilatory consideration of the application. But the consequences of automatic approval of a permit at the expiration of the thirty day period would be visited on the public for whose protection the statute was enacted. And the consequences of automatic denial of a permit at the expiration of the thirty day period would be visited on the deserving applicant for whose benefit the statutory scheme was enacted.

Adler v. Livak, 308 N.J. Super. 219, 224 (App. Div. 1998)

The Court in Adler found that a delay beyond the 30 (thirty) day statutory time period for FID applications is not grounds for a denial of rights claim. Id. Adler remains the law in New Jersey when interpreting the statutory time period as set forth for FID applications. Delay in this case occurred due to the processing speed of the FID investigation. This investigation worked as the legislature intended as described in Adler. Namely, it revealed a disturbing incident of a police encounter, negative comments from Plaintiff's own family, and a history

18

of mental illness that could pose a danger to the public health, safety, and welfare if Plaintiff

obtained a firearm.

Plaintiff's allegation of violation of his Second Amendment rights by being denied his FID

unless he submitted to an evaluation by a clinical psychologist is similarly flawed. The

legislative intent behind N.J.S.A. 2C:58-3 and its predecessors has been clearly established by

New Jersey State Courts to require the authority responsible for reviewing and issuing FID

cards to look into mental health concerns. In discussing the predecessor law the New Jersey

Supreme Court laid out the purpose behind firearm registration regulations and statutes:

> The public purpose of the statute is entirely evident; it is designed to prevent
> criminals and other unfit elements from acquiring firearms. Towards that end the
> Legislature has set up permit and identification requirements and has provided for
> disqualifications along with suitable inquiry into qualifications and fitness. In
> setting its course, the Legislature was undoubtedly aware of the strongly expressed
> views of the many enforcement officials who have long favored state and federal
> regulation of the sale and possession of firearms, and of the many disastrous
> consequences which have resulted from the widespread absence heretofore of such
> regulation.
> …
> Wholly apart from the dangers which arise when firearms are in the hands of
> criminals, there is the undoubted danger when they are in the hands of the immature
> or the unfit such as the mentally deranged, the addicted and the alcoholic. Chapter
> 60 is explicitly designed to keep firearms from all such persons whose possession
> would pose a threat to the public health, safety or welfare.

Burton v. Sills, 53 N.J. 86, 93 (1968)

In order to for the best decisions to be made, the Burton Court acknowledged that the

local authority was in the best position to make this decision, and that arbitrary application

was protected against by statutory right to appeal.

> The Legislature's goal was to keep guns out of the hands of unfit persons. To that
> end it disqualified certain classes which quickly come to mind. To guard against
> inadvertent omissions, it delegated authority to appropriately designated officials
> to disqualify any unfit individuals who, though not strictly within the enumerated
> classes, should not in the public interest be entrusted with firearms. To guard
> against arbitrary official action the Legislature directed early determination and

19

provided for easy appeal to the county court (<u>N.J.S.A.</u> 2*A*:151-34). Review from the county court is readily available in the Appellate Division and, when necessary, in this Court.

<u>Burton v. Sills</u>, 53 N.J. 86, 91 (1968)

Since the enactment of <u>N.J.S.A.</u> 2C:58-3 et. seq. the New Jersey State Courts have continued with the same reasoning on legislative intent and added to it. "[T]he overriding philosophy of our Legislature is to limit the use of guns as much as possible." <u>State v. Valentine</u>, 124 N.J. Super. 425, 427 (App. Div. 1973). Continuing to reaffirm these principles, New Jersey State Courts have ruled that they will not change the legislative mandates no matter what views someone has on firearms rights.

[W]hatever one's views on the worth of firearms, their capacity to wreak havoc when in the hands of the unfit is a matter of public record. The Legislature has wisely provided for suitable inquiry into qualifications and fitness. We do no more than carry out that legislative mandate.

<u>Adler v. Livak</u>, 308 N.J. Super. 219, 225 (App. Div. 1998).

The duty to investigate and protect the safety and welfare of individuals and the public is so great that New Jersey State Courts have ruled there must even be an investigation into expunged records. The statute requires disclosure of mental health treatment both inpatient, outpatient, voluntary confinement, involuntary confinement, and includes disclosure of expunged records. <u>N.J.S.A. 2C:58-3</u>(e) (which has a statutory right to demand a medical doctor or psychiatrist evaluate an FID applicant). <u>See</u> <u>also</u> <u>In re J.D.</u>, 407 N.J. Super. 317 (Law Div. 2009) (an issuing authority has a duty to investigate even into expunged mental health records). The reasoning by the Court in <u>J.D.</u> is instructive here. The Court in <u>J.D.</u> reiterates that even with expunged records, where another court has already ruled that the individual is no longer a threat to themselves or others and the underlying condition is no longer present,

the local issuing authority had a duty to uphold public safety by confirming the FID applicant is still not a danger to himself or others. In re J.D. at 328.

Given the extensive discussion on legislative intent and long history requiring authorities to investigate all aspects of potential mental health concerns for FID applications, and the extensive history of mental health treatment of Rachlin himself - the request for Rachlin to submit to a clinical psychologist evaluation is not an unconstitutional deprivation of rights. The issuing authority in this case could have simply issued a denial given these facts. Allowing any applicant additional leeway to overcome these issues when they are not entitled to a FID approval is the opposite of being denied any constitutional rights.

Plaintiff alleges that his Second Amendment rights were violated as a form of retaliation for his free speech thereby violating his First Amendment rights. The Complaint is bereft of any facts supporting this allegation beyond conclusory statements. Thererfore, the pleadings do not meet the standards set forth in Iqbal and Twombly, and the Complaint should be dismissed. Aside from Plaintiff's claims of retaliation being nothing but bare conclusions without any support, there has been no violation of Second Amendment rights. Since Plaintiff's claim for violation of First Amendment rights is predicated on showing his Second Amendment rights were violated, it must also fail.

## POINT IV
## THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS
### AGAINST CHIEF BAUMANN

Qualified immunity is a doctrine that prevents suit from being brought against a public official who is or believes they are performing their duties in accordance with the law. "Qualified immunity is an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 231-232 (2009) citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 555 U.S. at 231. An official is entitled to summary judgment on the ground of qualified immunity where his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982).

Saucier v. Katz, 533 U.S. 194 (2001) established the test for determining if qualified immunity applies. First, the Court would decide whether the police officers' actions violated a constitutional right, viewed in the light most favorable to the plaintiff. Id. Second, the Court would then decide whether reasonable police officers would find the conduct unlawful in the same situation. Id. Pearson modified Saucier in part by allowing the court to decide what order best to proceed on the Saucier analysis. Pearson at 231. This was because the first prong in Saucier may require a lot of factual discovery and litigation, where the second prong may be more easily decided earlier in a case. Id. The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991). Therefore, Defendants will address the 2nd prong of the Saucier test first.

The second prong of <u>Saucier</u> has described qualified immunity as protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743, (2011). As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" <u>Pearson</u> at 231. "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Ashcroft v. al-Kidd</u> at 741. Essentially, only when there is direct or similarly existing precedent placing the conduct beyond the debate of what is and is not constitutional can establish grounds for denying qualified immunity.

> An official sued under §1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "'clearly established'" at the time of the challenged conduct. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011). And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. <u>Id</u>. at 741. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "**beyond debate**." <u>Id</u>.

> <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 778-779 (2014)(emphasis added)

In this situation, there is no existing precedent to place the conduct "beyond debate." Contrary to Plaintiff's position, case law exists where the FID issuing authority can deny an FID applicant on the ground of prior actions and conditions alone, irrespective of a current psychological report that there is no public health, safety and welfare concerns. <u>See</u> <u>In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.</u>, 2019 N.J. Super. Unpub. LEXIS 550 (FID denied despite current mental health expert stating that applicant posed no danger to himself or other, and only childhood bad acts were on record); <u>see also</u> <u>In re D.P.'s Application for a Firearms Purchaser Identification Card</u>, 2021 N.J. Super. Unpub. LEXIS

769, 2021 WL 1731790 (applicant complied with obtaining clinical psychologist clearance but was denied anyway on the ground of public health safety and welfare); see also In re J.D., 407 N.J. Super. 317 (Law Div. 2009) (even if the mental health records are expunged pursuant to a court hearing where an applicant is deemed not to be a danger to himself or others, the issuing authority must still evaluate and determine the current status themselves). There is no law or legal precedent that places the requirement of obtaining clearance from a clinical psychologist "beyond debate" of being a violation of rights. The above case law goes even further, indicating that even when a clinical psychologist provides documentation that an applicant is not a threat to himself or others a denial can still be issued.

Defendant also contests that Plaintiff cannot satisfy the first prong of Saucier test, since there was never a violation of Plaintiff's constitutional rights. Plaintiff claims that a delay in process is a violation of Second Amendment rights. However, this is not consistent with case law discussed above detailing that a delay in process even beyond the statutorily required deadlines is not a violation of constitutional rights. Adler at 224. Plaintiff's claim that a violation of Second Amendment rights occurred because he was required to submit to a clinical psychologist evaluation of his own choosing is similarly without merit. As noted above, there is wide discretion provided to the authority reviewing and approval of FID applications. There is a plethora of case law advising that it is well within the strongest of government concerns to have a well-regulated FID application process that favors keeping guns out of the hands of individuals deemed unfit or unsafe. See Burton; State v. Valentine; and Adler. There is no case law cited to by Plaintiff that submission to a psychological examination could constitute a violation of Second Amendment rights.

24

Therefore, Rachlin's denial of an FID card, delay in processing his FID application, and the requirement for a clinical psychologist to evaluate him before approving an FID application, are all within the territory of qualified immunity.

## POINT V

## THE COMPLAINT FAILS TO STATE A CLAIM FOR THE SEPARATE AND INDEPENDENT REASON THAT IT FAILS TO PLEAD FACTS SUFFICIENT TO ESTABLISH MUNICIPAL LIABILITY

Municipal liability and immunity related to a section 1983 claim is governed by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In examining Monell, the Court held that a municipal entity may be held liable for a constitutional injury only if (1) particular policymaking officials within the municipal entity promulgated or acquiesced in a municipal policy or custom that violated a constitution right; (2) the policymaking official was deliberately indifferent to the constitutional rights of citizens; and (3) the policy or custom proximately caused a constitutional injury. Simmons v. City of Philadelphia, 947 F.2d 1042, 1060-62 (3d Cir. 1991). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997)).

In other words, the Plaintiff must identify an unconstitutional policy, attribute it to Freehold Township, and show execution of that policy caused the plaintiff's injury. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); Losch v. Borough of Parkesburg, 736 F.2d 903, 911 (3d Cir. 1984). "Policy is made when a decision-maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 193 (3d Cir. 2009)(citation omitted). Customs are well-settled and permanent practices by a state official amounting to law. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Monell at 690). The Plaintiff must show that a policymaker is responsible for the policy or for the custom

26

through acquiescence and "that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Chambers at 193 (citations omitted). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

Plaintiff's assertions in this Complaint fall short of establishing "a claim to relief that is plausible on its face" required by Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Plaintiff's Complaint only asserts threadbare conclusions that do not rise to the level required by Iqbal and Twombly pleading standards.

58. Baumann's policy and demand requiring that Rachlin be screened by a clinical psychologist was, and still is, and official policy of the Township, since Baumann was, and still is, the highest official in then Township responsible for setting policy in the area of issuing FID cards.

59. Baumann's policy and demand that Rachlin be screened by a clinical psychologist was unconstitutional, burdensome, arbitrary, and unreasonable…

See Exhibit A, ¶58-59

These allegations are repeated in Plaintiff's Complaint at ¶95, but remain nothing but threadbare assertions designed to repeat the elements of the claim for municipal liability. Nothing in the Complaint explains why an FID applicant being required to submit to clinical psychologist is unconstitutional or indifferent to the Plaintiff's constitutional rights. To the contrary, as noted in the case law above regarding qualified immunity, requiring a clinical psychologist for screening purposes is routine and constitutional. See In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A., 2019 N.J. Super. Unpub. LEXIS 550; In re D.P.'s Application for a Firearms Purchaser Identification Card, 2021 N.J. Super. Unpub.

LEXIS 769, 2021 WL 1731790; <u>see</u> <u>also</u> <u>In re J.D.</u>, 407 N.J. Super. 317 (Law Div. 2009).

Since Plaintiff's Complaint is bereft of facts supporting their conclusory statements, it falls

short of the <u>Iqbal</u> and <u>Twombly</u> pleading standards. Therefore, Freehold Township should be

protected by the doctrine of municipal immunity as described in <u>Monell</u> and Plaintiff's

Complaint should be dismissed.

## POINT VI

## PLAINTIFF'S FALSIFICATION OF HIS FIREARMS IDENTIFICATION APPLICATION INDEPENDENTLY REQUIRES DISMISSAL OF HIS CONSTITUTIONAL CLAIMS

N.J.S.A. 2C:58-3(c)(3) prohibits an FID approval to anyone who "knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card." In this case, Defendants learned Plaintiff underwent mental health treatment and/or therapy with ████████████████ by way of Plaintiff's Complaint. **Exhibit A ¶62.** This was not revealed in the application. If this is the same doctor ███████████████████████ ████████

████████████████████████ ████ ██ ███ ████

██ ████ Exhibit D Page 7. If it is not the same doctor referenced in the ████████ ████ then there is yet another doctor not named on the application. The New Jersey Court of Appeals has held that failure to disclose mental health treatment, even from early adolescence, is grounds for denials of the FID pursuant to N.J.S.A. 2C:58-3(c)(3) and (c)(5).

> [T]he fact remains that [D.P.] failed to disclose an extended period of mental health treatment that spanned a number of years from the time" he was age nine through age thirteen or fourteen. It was D.P.'s failure to disclose the required mental health information on his application that led to the judge's decision to uphold denial of the application based on public health, safety, and welfare concerns.

> Based on our review of the record, Judge Kazlau followed the procedures for reviewing the police chief's denial of D.P.'s FPIC and HPP application, and his determination comported with statutory and decisional law. There is ample credible evidence in the record supporting the judge's decision based on D.P.'s knowing lack of candor in completing his application requiring denial of the application under N.J.S.A. 2C:58-3(c)(3). In addition, D.P.'s failure to reveal the truth regarding his mental health treatment supported the judge's conclusion that "issuance [of the FPIC and HPP] would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5); see also Osworth, 365 N.J. Super. at 79 (holding in cases of individual unfitness, not specifically enumerated in the

statute, the issuance of a permit or identification card should be denied as contrary to the public interest).

In re D.P.'s Application for a Firearms Purchaser Identification Card, 2021 N.J. Super. Unpub. LEXIS 769, 2021 WL 1731790

The facts in D.P. mimic those in this case. D.P. was a "bright young man" who is "attending college." Id. D.P. had done many "positive things" since his trouble youth therapy ended, and he has demonstrated he understood the questions on the application. Id. The treatment as a youth was explained by D.P.'s expert that it was not directed at treating a mental disorder. Id. Rather, the treatment addressed D.P.'s anger and anxiety at that time. Id. Similarly, the underlying issuing authority in D.P. also demanded an evaluation by a clinical psychiatrist. Id. Unlike this case however, D.P. obtained an appropriate expert. D.P.'s psychiatric expert testified D.P. displayed no evidence of an active mental disorder and his risk for violence was very low. Id. The issuing authority rejected D.P.'s expert opinion and denied the FID on public health, welfare, and safety concerns. Id. Rather than focus on the current status of D.P. and his risk to himself or others, the Court focused solely on plaintiff's non-disclosure of his childhood therapy and affirmed the denial of the FID. Id.

The facts in this case are remarkably similar. The Court should dismiss the complaint because Plaintiff never revealed his ████████ mental health treatment, which is appropriate grounds for denial of an FID. Had Plaintiff availed himself of the available state-court remedy, this would have been raised and ruled upon at that time.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiff's Complaint for failure to state a claim.

Respectfully submitted,
**METHFESSEL & WERBEL, ESQS.**

Eric L. Harrison
Counsel for Defendants
harrison@methwerb.com
(732) 248-4200 Ext. 138

DATED: October 12, 2021

EXHIBIT  A