## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVI ALEXANDER RACHLIN, | Civil Action No.: 3:21-cv-15343-FLW-TJB |
| Plaintiffs, | |
| v. | CIVIL ACTION |
| GEORGE K. BAUMANN, Individually and as Chief of Police of the Freehold Township Police Department and FREEHOLD TOWNSHIP | |
| Defendants. | |

---

### BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

---

**DAVISON, EASTMAN, MUÑOZ, PAONE, P.A.**
Monmouth Executive Center
100 Willow Brook Road, Suite 100
Freehold, NJ 07728
Tel: 732-462-7170
Fax: 732-462-8955
*Attorneys for Defendants, George K. Bauman and Freehold Township as to claims for injunctive relief and punitive damages*

Of Counsel and on the Brief:
Brian J. Chabarek, Esq. (020951995)

On the Brief:
Timothy C. Moriarty, Esq. (027822004)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

PRELIMINARY STATEMENT..........................................................................................1

PROCEDURAL HISTORY.................................................................................................3

STATEMENT OF FACTS...................................................................................................3

STANDARD OF REVIEW FOR INJUNCTIVE RELIEF..................................................5

    I.      RACHLIN CANNOT ESTABLISH ANY FACTOR NECESSARY
           FOR INJUNCTIVE RELIEF....................................................................7

           A.  RACHLIN LACKS ARTICLE III STANDING TO ASSERT THE
               CLAIMS IN HIS COMPLAINT.....................................................8

               i.   RACHLIN'S COMPLAINT DOES NOT CONTAIN ANY CLAIMS
                    FIT FOR JUDICIAL REVIEW.........................................9

               ii.  RACHLIN'S ACTIONS BROKE THE CASUAL CHAIN AND ARE
                    THE CAUSE OF ANY INJURY....................................15

           B.  EVEN IF RACHLIN HAD STANDING TO BRING THE CLAIMS
               ASSERTED IN HIS COMPLAINT, RACHLIN CANNOT ESTABLISH
               A LIKELIHOOD OF SUCCESS......................................................15

               i.   RACHLIN'S SECOND AMENDMENT BASED CLAIMS ARE
                    MERITLESS.....................................................................15

                   a.   INTERMEDIATE SCRUTINY IS THE PROPER STANDARD...........16

                   b.   THERE EXIST A SUBSTANTIAL INTEREST IN PUBLIC
                        SAFETY...............................................................18

                     c.   NEW JERSEY'S COMPREHENSIVE FIREARM LEGISLATION
                        AND RESTRICTIONS ARE LONGSTANDING AND THEREFORE
                        CONSITUTIONAL................................................19

               C.  RACHLIN CANNOT ESTABLISH A SUBSTANTIAL LIKELIHOOD
                 OF SUCCESS ON HIS FOURTEENTH AMENDMENT CLAIMS..................21

D.  PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD TO SUCCEED
    ON HIS SECOND AMENDMENT COMPLAINTS...........................................23

E.  RACHLIN WILL NOT SUFFER IRREPARABLE HARM SHOULD THE
    COURT DENY HIS REQUEST FOR A PRELIMINARY INJUNCTION;
    RATHER, THE RISK OF HARM TO THE PUBLIC (AND RACHLIN
    HIMSELF), AND THE PUBLIC INTEREST WEIGH HEAVILY AGAINST
    GRANTING AN INJUNCTION.........................................................................26

CONCLUSION.......................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver,*
  510 U.S. 266 (1994) .......................................................................................... 21
*Almeida v. Conforti,*
  Civ. No. 16-3411 (JBC) (D.N.J. Feb. 14, 2017) ............................................. 11, 13
*Alvin v. Suzuki,*
  227 F.3d 107 (3d Cir. 2000) .......................................................................... 21, 22
*Apoyo A Los Trabajadores Agricolas v. Perez,*
  46 F. Supp. 3d 550 (E.D. Pa. 2014) ................................................................... 12
*Artway v. Attorney Gen. of N.J.,*
  81 F.3d 1235 (3d Cir. 1996) ............................................................................... 12
*Beers v. Attorney General,*
  , 927 F.3d 150 (3d Cir. 2019) ............................................................................ 20
*Beers v. Attorney General,*
  , 927 F.3d 150 (3d Cir. 2019) ...................................................................... 17, 20
*Binderup v. Att'y Gen. ,* 836 F.3d 336 (3d Cir. 2016) ............................................. 16
*Burton v. Sills,*
  53 N.J. 86 (1968) ....................................................................................... 10, 28
*Caetano v. Massachusetts,*
  577 U.S. 411 (2016) ........................................................................................... 16
*Cohens v. Virginia,*
  6 Wheat. 264 (1821) .......................................................................................... 13
*County of Sacramento v. Lewis,*
  523 U.S. 833 (1998) ........................................................................................... 21
*Crespo v. Crespo,*
  201 N.J. 207 (2010) ........................................................................................... 23
*Davies Warehouse Co., v. Bowles,*
  321 U.S. 144 (1944) ............................................................................................. 7
*Diamond v. Charles,*
  476 U.S. 54 (1986) ............................................................................................... 9
*Doe No. 1 v. Putnam Cty.,*
  344 F. Supp. 3d 518 (S.D.N.Y. 2018) ................................................. 17, 19, 20, 23
*Doe v. Governor of Pa.,*
  977 F.3d 270 (3d Cir. 2020) ........................................................... 18, 19, 20, 23
*Durga v. Bryan,*
  2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011) ....................... 13, 14, 15, 17
*Dusanek v. Hannon,*
  677 F.2d 538 (7th Cir. 1982) .............................................................................. 22
*ECRI v. McGraw-Hill, Inc.,*
  809 F.2d 223 (3d Cir. 1987) ................................................................................. 6

*Felmeister v. Office of Attorney Ethics*,
856 F.2d 529 (3d Cir. 1988).................................................................................. 11

*Folajtar v. Att'y Gen.*,
980 F.3d 897 (3d Cir. 2020)...................................................................... 16, 17, 20

*Fourteenth Amendment." Shoats v. Horn*,
213 F.3d 140 (3d Cir. 2000).................................................................................. 21

*Fyock v. City of Sunnyvale*,
25 F. Supp. 3d 1267 (N.D. Cal. 2014), *aff'd*, 779 F.3d 991 (9th Cir. 2015) ........... 27

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) ............................................................................ 17

*Gould v. Morgan*,
907 F.3d 659 (1st Cir. 2018)................................................................................. 17

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989)...................................................................................... 6

*Holloway v. Att'y Gen.*,
948 F.3d 164 (3d Cir. 2020).................................................................................. 16

*II. In District of Columbia v. Heller*,
554 U.S. 570 (2008).................................................................... **15, 16, 19, 28**

*In re Application of Boyadjian*,
362 N.J. Super. 463 (App. Div. 2003) ..................................................................... 9

*In re Application of Boyadjian*,
362 N.J. Super. 463 (App. Div.), *certif. denied*, 178 N.J. 250 (2003) .................... 10

*In re D.P.'s Application for a Firearms Purchaser Identification Card*,
2021 N.J. Super. Unpub. LEXIS 769, 2021 WL 1731790 (App. Div. May. 3, 2021) ........... 24

*In re Dubinsky*,
No. A-4443-13T3, 2016 WL 805998 (N.J. Super. Ct. App. Div. Mar. 2, 2016)................ 11

*In re Dubov*,
410 N.J. Super. 190 (App. Div. 2009) ................................................................... 23

*In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M.*,
225 N.J. 487 (2016) ............................................................................................. 24

*In re Forfeiture of Personal Weapons & Firearms Identification Card Belonging to
F.M.*, 225 N.J. 487 ( 2016)............................................................................... 23, 26

*In re J.D.*,
407 N.J. Super. 317 (Law Div. 2009) ..................................................... 24, 25, 26

*In re J.D.*,
407 N.J. Super. 317 (Law Div.2009) ..................................................................... 26

*In re Osworth*,
365 N.J. Super. 72 (App. Div. 2003) ..................................................................... 26

*In re Osworth*,
365 N.J. Super. 72 (App. Div. 2003), *certif. denied*, 179 N.J. 310 (2004) .............. 9

*In re Pantano*,
429 N.J. Super. 478 (App. Div. 2013) ................................................................... 11

*In re Winston*,
    438 N.J. Super. 1 (2014) ............................................................................ 23

*Indeed, the Court in Adler v. Livak*,
    308 N.J. Super. 219 (App. Div. 1998) ...................................................... 11

Kanter v. Barr , 919 F.3d 437, 454 (7th Cir. 2019) ....................................... 20

*Kolbe v. Hogan*,
    849 F.3d 114 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 469 (2017)................ 16, 19

*Kos Pharms Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ....................................................................... 6

*Kushi v. Romberger*,
    543 F. App'x 197 (3d Cir. 2013) ............................................................... 12

*Kwong v. Bloomberg*,
    723 F.3d 160 (2d Cir. 2013) ...................................................................... 18

*Lanin v. Borough of Tenafly*,
    515 Fed. Appx. 114 (3d Cir. 2013) ............................................................ 7

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ................................................................................... 8

*Mai v. United States*,
    952 F.3d 1106 (9th Cir. 2020) ................................................................. 16

*Marrero-Rodriguez v. Municipality of San Juan*,
    677 F.3d 497 (1st Cir. 2012) .................................................................... 22

*Maryland v. King*,
    567 U.S. 1301 (2012) ............................................................................... 27

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) ............................................................ 16, 19, 20, 24

*Medina v. Whitaker*,
    913 F.3d 152 (D.C. Cir. 2019) ................................................................ 17

*N.J. Hosp. Ass'n v. Waldman*,
    73 F.3d 509 (3d Cir. 1995) ......................................................................... 6

*Nat'l Treasury Emp. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) .......................................................... 12, 13

*Nextel Commc'ns of Mid-Atl., Inc. v. City of Margate*,
    305 F.3d 188 (3d Cir. 2002) ..................................................................... 11

*NutraSweet Co. v. Vit-Mar Enterprise, Inc.*,
    176 F.3d 151 (3d Cir. 1999) ....................................................................... 6

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983) ................................................................................... 7

*Parvati Corp. v. City of Oak Forest, Ill.*,
    630 F.3d 512 (7th Cir. 2010) .................................................................... 15

*Petro-Chem Processing, Inc. v. EPA*,
    866 F.2d 433 (9th Cir. 1989) ..................................................................... 9

*Punnett v. Carter*,
    621 F.2d 578 (3d Cir. 1980) ....................................................................... 7

*Reilly v. City of Harrisburg*,
    858 F.3d 173, 179 (3d Cir. 2017)..................................................................... 6
*Rochin v. California*,
    342 U.S. 165 (1952).................................................................................... 22
*Sameric Corp. of Delaware v. City of Phila.*,
    142 F.3d 582 (3d Cir. 1998)........................................................................ 21
*Sibley v. Watches*,
    460 F. Supp. 3d 302 (W.D.N.Y. May 18, 2020)............................................ 17
*Spencer v. Kemna*,
    523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)........................................ 8
*State v. Cordoma*,
    372 N.J. Super. 524 (App. Div. 2004) .......................................................... 26
*Steele v. Cicchi*,
    855 F.3d 494 (3d Cir. 2017)........................................................................ 21
*Truck Ctr., Inc. v. Gen'l Motors Corp.*,
    847 F.2d 100 (3d Cir. 1998)......................................................................... 5
*Turner Broad. Sys., Inc. v. FCC*,
    520 U.S. 180 (1997).................................................................................... 18
*U.S. v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2010) ................................................................ 17, 29
*United States v. Boyd*,
    999 F.3d 171 (3d Cir. 2021)................................................................... 16, 20
*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010) ...................................................................... 16
*United States v. Chester*,
    847 F. Supp. 2d 902 (S.D.W. Va. 2012)....................................................... 17
*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010)..................................................................... 16, 18
*United States v. Miller*,
    307 U.S. 174 (1939).................................................................................... 16
*United States v. Salerno*,
    481 U.S. 739 (1987).................................................................................... 18
*Univ. of Med. and Dentistry of N.J. v. Corrigan*,
    347 F.3d 57 (3d Cir. 2003).......................................................................... 12
*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)..................................................................................... 6
*Weston v. State*,
    60 N.J. 36 (1972) .................................................................................... 9, 10
*Zinermon v. Burch*,
    494 U.S. 113 (1990).................................................................................... 22

**Statutory Authorities**

18 U.S.C. § 922(g)(9) .................................................................................... 17
N.J.A.C. 13:54-1.4 ........................................................................................ 10
N.J.A.C. 13:54-1.5(a)(5) ............................................................................... 10
N.J.A.C. 13:54-1.12(a) ................................................................................. 10
N.J.S.A. 2C:58-3 ..................................................................................... 9, 13
N.J.S.A. 2C:58-3(c)(2) .................................................................................. 26
N.J.S.A. 2C:58-3(c)(3) .................................................................................... 4
N.J.S.A. 2C:58-3(c)(5) ............................................................... **10, 23, 24, 28**
N.J.S.A. 2C:58-3(d) ............................................................................ 1, 10, 14
N.J.S.A. 2C:58-3(f) ................................................................................. 10, 11
N.J.S.A. 2C:58–3(c)(5) ................................................................................. 24

**Rules and Regulations**

F.R.C.P. 12(b) ............................................................................................... 3
Rule 12(b) ...................................................................................................... 3

**Constitutional Provisions**

U.S. Const.amend. ......................................................................................... 15
U.S. Const.art. III, §2 ..................................................................................... 8

<u>**Additional Authorities**</u>

Christopher M. Johnson, *Second-Class: Heller, Age, and the Prodigal Amendment*, 117
    Colum. L. Rev. 1585 (2017) ....................................................................... 19

## Preliminary Statement

Plaintiff Avi Rachlin (hereinafter "Rachlin" or "Plaintiff") filed an application for a Firearms Identification Card (hereinafter FID) with the Freehold Township Police Department (the "Department") on October 24, 2020. The Department performed background checks and collected records, recommending issuance of the FID on March 2, 2021 subject to Freehold Township Chief of Police George Baumann's ("Baumann") final approval. Baumann's review found serious concerns regarding the public health, safety, and welfare if Rachlin's FID application was approved without assurances from a clinical psychologist. Baumann's concerns arose from an incident with the police leading to Plaintiff ███████████████████████████ ████ ███████████████████████ ████████████████████████████ ████████████████████████████████████ Therefore, Baumann requested Rachlin get evaluated and screened by a clinical psychologist, and get "clearance from that doctor stating that you owning or possessing a firearm will not cause any safety issues to yourself or the general public." Indeed, Baumann informed Rachlin his FID would be approved once Baumann received these assurances from the clinical psychologist. Rachlin failed to comply; therefore, Baumann rejected Rachlin's FID application on March 25, 2021.

Rachlin requested a hearing in New Jersey Superior Court ("Superior Court") to review the Police Chief's denial pursuant to N.J.S.A. 2C:58-3(d). Significantly, Rachlin withdrew his request for a hearing in the Superior Court before Baumann's denial was reviewed. Rather than pursuing his application in State court and exhausting his available State appellate options, Rachlin impermissibly attempted to circumvent the mandatory procedural process by initiating the present action in Federal Court. Apparently, Rachlin believes he is exempt from the carefully crafted procedural process the legislature enacted providing judicial review of a Police Chief's FID denial in the Superior Court based upon an unsupported specious claim of futility. That is, Rachlin claims

Baumann would "undoubtedly continue to insist to screening by a clinical psychologist even if Rachlin were to reapply for an FID card" and/or the Superior Court hearing did not occur within 30 days, which obviates the need to follow the statutorily prescribed appeal process. These arguments are fatally flawed.

First, Baumann's request was entirely appropriate and lawful based upon the investigation into Rachlin's fitness for FID. Second, any decision by Baumann on Rachlin's FID application was subject to review by the Superior Court. Third, Rachlin prevented the Superior Court from reviewing Baumann's denial of Rachlin's application because he withdrew his request for a hearing before the Superior Court ruled on his application. Thus, Rachlin's own actions prevented the existence of any judicially cognizable "injury in fact" – a mandatory prerequisite for Article III standing to assert the claims in Rachlin's Complaint. Indeed, because the Superior Court never denied his application, Rachlin sustained no injury; therefore, no case or controversy exists over which this Court may exercise jurisdiction. Even if this, alone, did not preclude Rachlin claims, his asserted as-applied challenge to the State statute, his Second Amendment claims, procedural due process, and *ultra vires* claims, are meritless and fail to state a claim for which relief may be granted. [1] *See* Document 19-3.

Finally, Rachlin's Motion for Preliminary Injunctive Relief must be denied because Rachlin cannot establish the necessary factors for such relief. That is, Rachlin cannot establish a reasonable probability of success on the merits and cannot demonstrate any irreparable harm. Furthermore, Rachlin's motion for injunctive relief misconstrues the primary purpose of a preliminary injunction, which is to maintain the status quo until the merits of the case can be decided – the exact opposite of the relief sought by Rachlin. Lastly, the public interest weighs

---

[1] For ease of reference, Defendants cite to the Civil Docket Report Numbers for documents filed on the CM/ECF LIVE - U.S. District Court for the District of New Jersey for Case No. 3:21-cv-15343-FLW-TJB.

heavily against granting injunctive relief bypassing the statutorily prescribed Superior Court hearing to review Baumann's denial of Rachlin's FID application; placing a gun in the hands of an individual who has undergone years of mental health treatment; has an admitted history of ▮▮▮▮▮ and ▮▮▮▮▮▮▮▮; was admitted to a hospital for a mental health evaluation; was diagnosed with ▮▮▮▮▮▮ ▮▮▮▮ and whose parents informed ▮▮▮▮▮▮ that he was a threat to their home and family; had "no moral compass"; and, whose mother expressed concern he would turn into a "▮▮▮▮▮

### Procedural History

On August 16, 2021 Plaintiff filed a Complaint in the United States District Court. *See* Document 1. On September 21, 2021, Plaintiff thereafter filed a motion for injunctive relief. *See* Documents 7-12. On October 12, 2021, Co-Counsel for Defendants filed a motion to dismiss in lieu of an answer pursuant to Rule 12(b)6. *See* Document 19-1 to 19-6.[2] Defendants file this opposition to Rachlin's motion for preliminary and permanent injunctive relief.

### Statement of Facts

Defendants incorporate by reference the Statement of Facts; Facts from the Complaint; *see* Document 19-3, at pp. 4-6; Facts from Extrinsic Documents Overview of FID Application; *id.*, at pp. 6-7; and Facts from Extrinsic Documents Freehold Police Report; *id.*, at pp. 7-8; and Facts from Extrinsic Documents ▮▮▮▮▮▮▮▮▮▮▮. *Id.*, at pp. 8-9.

Rachlin contends the medical disclosures he identified "were not part of any publicly available record, and Baumann would have never discovered this information but for Rachlin's honesty". *See* Document 7-1, at *11. Significantly, if Rachlin failed to disclose this information,

---

[2] Defendants incorporate the arguments set forth in the October 12, 2021 Motion to Dismiss. Indeed, Defendants submit that the Court need not address this Motion for a Preliminary Injunction because Rachlin's Complaint fails to state a claim for relief and must be dismissed pursuant to Rule 12(b)6.

it would provide an independent basis to deny his FID application.[3] Second, the information related

to his ███████ visit for a mental health evaluation was discoverable through independently sourced

investigative records, which revealed:

███████████████████████████████████████████

See Moriarty Cert., Exhibit A, at p. 009. The investigation by the Department states:

> During the second ████████████████████████ Rachlin was engaged
> in a dispute with his parents. Electronics were reportedly taken from his room and
> electricity was shut off to the room as well. Rachlin's parents claimed he tried to rewire
> the outlets and nearly caused a fire. He was transported to ████████ by patrol for a mental
> health evaluation at the recommendation of his therapist.
>
> After reviewing his discharge paperwork and charts from ████ Rachlin initially refused
> to answer questions during triage. He later admitted to having a history of ██████████
> ███████████████████████████████████████████
> ███████████████████████████████████████████
> ███████████████████████████████████████████
>
> The diagnosis was further confirmed after reviewing body-worn camera footage of
> Englishtown's traffic stop with Rachlin. He was asked for identification four times,
> requested a supervisor, then was asked two more times before complying. ***It appears
> Rachlin unilaterally opposes authority and only follows rules when it benefits him.***

See Moriarty Cert., Exhibit A, at p. 010 (emphasis supplied). With respect to the

"undiscoverable" information, the Department responded to the ████ incident involving Rachlin

and described as ████████████████

█████████████████████████████████

---

[3] N.J.S.A. 2C:58-3(c)(3) provides that no FID shall be issued "to any person who knowingly falsifies any
information on the application form for a handgun purchase permit or firearms purchaser identification card[.]"

*Id.* at p. 017. Moreover, the Officer Report notes that Rachlin was transported "to ███ w/o incident for ███ health eval." *Id.* at pp. 019-020. Thus, Baumann had independent access to the information Rachlin claims would never have been discovered as the Department was directly involved in responding to the incident and had records indicating his admission to ███ *Id.*



*Id.* at p.032

<u>**Standard of Review for Injunctive Relief**</u>

The grant of preliminary injunctive relief "is an extraordinary remedy which should be granted only in limited circumstances." *Truck Ctr., Inc. v. Gen'l Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1998). To obtain a preliminary injunction, the movant must show: (1) a likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is denied; (3) granting

preliminary relief will not result in even greater harm to the non-moving party; and (4) the public interest favors such relief. *Kos Pharms Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The court should grant preliminary injunctive relief only if the movant produces sufficient evidence to establish all four factors. *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995)(citations omitted). *See also ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir. 1987). Failure to meet any one of the four factors renders a preliminary injunction inappropriate. *NutraSweet Co. v. Vit-Mar Enterprise, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

The Third Circuit clarified the threshold inquiry a court must conduct in evaluating requests for injunctive relief stating:

> a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017). Only if the moving party satisfies the first two factors, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* Here, Rachlin cannot establish any of the factors necessary for the grant of injunctive relief.

Rachlin bears the burden of a "clear showing of immediate irreparable injury[,]" establishing the mere "risk of irreparable harm is not enough." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989)(internal quotations omitted). Significantly, the purpose of a "preliminary injunction ***is merely to preserve the relative positions of the parties until a trial on the merits can be held***." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)(emphasis added). Here, the relief that Rachlin seeks serves precisely the opposite purpose that preliminary injunctions are intended.

Rather than preserving the status quo, or enjoining an action that would somehow adversely affect Rachlin, he seeks an injunction requiring Defendants to take affirmative acts that would alter the relative positions of the parties. *Lanin v. Borough of Tenafly*, 515 Fed. Appx. 114, 118 (3d Cir. 2013). Rachlin's Complaint asserts an as-applied Constitutional challenge to a duly-enacted law of the State of New Jersey. Statutes "are entitled to the presumption of constitutionality." *Davies Warehouse Co., v. Bowles*, 321 U.S. 144, 153 (1944). Accordingly, Rachlin's burden is "particularly heavy," and his right to relief must be "indisputably clear." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). In this case, Rachlin cannot meet his burden.

## I. **Rachlin Cannot Establish Any Factor Necessary for Injunctive Relief.**

First, Rachlin failed to exhaust his administrative remedies; therefore, Rachlin has no standing to assert the claims in his Complaint and/or seek injunctive relief from this Court pending resolution of those claims. Second, Plaintiff's constitutional claims are entirely without merit; therefore, Rachlin cannot establish a likelihood of success on the merits. Third, Rachlin cannot establish irreparable harm - this case is not one where there would be "hardship to the [plaintiff by] withholding court considerations" such that Rachlin would suffer prejudice by "await[ing] the consummation of threatened injury,[.]" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200-01 (1983) (quoting *Rail Reorganization Act Cases*, 419 U.S. 102, 144 (1974)). Rather, the alleged "threatened injury" would only leave Rachlin in precisely the same position that he currently finds himself: without the FID. By contrast, the harm and public interest both weigh heavily against granting the requested injunctive relief, and placing a gun into the hands of a person whose mother expressed concerns would "turn into a psychopath". *See* Moriarty Cert., Exhibit A, at p. 032.

**A. Rachlin Lacks Article III Standing to Assert the Claims in his Complaint.**

Rachlin lacks the pre-requisite standing to sue in federal court because, by his own action of withdrawing his application to the Superior Court before it could review Baumann's denial of Rachlin's FID, he lacks an actual or imminent "injury in fact" sufficient to create a case or controversy for this Court to decide. Defendants respectfully assert that a judicially cognizable injury ripe for judicial review exists only after the Superior Court judge has denied an application. And, by withdrawing his application before the Superior Court ruled on Baumann's denial, Rachlin affirmatively prevented the existence of any potential, judicially cognizable "injury in fact" that may have provided him standing to pursue a claim in federal court.

The exercise of judicial power depends upon the existence of a case or controversy. Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties. U.S. Const. art. III, §2. This "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have 'a personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998)(quoting *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477-78 (1990)). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer,* 523 U.S. at 7 (citation and internal quotation marks omitted). Rachlin lacks any such "injury in fact" and, thus, does not possess standing to sue in federal court.

Rachlin failed to avail himself of the legislatively created procedural process afforded under New Jersey's well-settled gun laws. Rachlin provides no justification for withdrawing his application to the Superior Court for a review of Baumann's denial of his FID. Any alleged bias, improper motives, retaliation, or otherwise could have been addressed at a hearing before the

Superior Court. *See* Document 1, at ¶¶96-118. This is because the Superior Court judge is in no way bound by the earlier findings of a police chief. *In re Application of Boyadjian*, 362 N.J. Super. 463, 476 (App. Div. 2003) (quoting *Weston v. State*, 60 N.J. 36, 42 (1972)). Indeed, the hearing in the Superior Court is "de novo" and the judge must independently determine whether the applicant is entitled to a handgun permit. *In re Osworth*, 365 N.J. Super. 72, 77-78 (App. Div. 2003), *certif. denied*, 179 N.J. 310 (2004)(citing *Weston*, 60 N.J. at 45-46). At the hearing, Rachlin could present his evidence and then Baumann and the officers who conducted the investigation, would be required to explain why the application was denied, and Rachlin could then attempt to rebut that explanation. Significantly, the police chief has the burden of proving an applicant is not qualified to receive a handgun permit. *In re Osworth*, 365 N.J. Super. at 77 (citing *Weston* 60 N.J. at 46).

Here, Rachlin's own conduct – withdrawing his application to the Superior Court-prevented a final appealable determination of the denial of his application. Thus, even if Rachlin could be said to suffer any current injury, it is "so completely due to [his] own fault as to break the causal chain" and negates Article III standing. *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (9th Cir. 1989); *see also Diamond v. Charles*, 476 U.S. 54, 69-70 (1986). That is, to the extent that Rachlin does not currently possess a FID, that fact is *principally the consequence of his own actions in withdrawing his application* before the Superior Court which had an opportunity to review Baumann's denial of Rachlin's application. Therefore, Rachlin lacks standing to pursue the claims articulated in the Complaint as required under Article III of the United States Constitution, and cannot establish a likelihood of success on the merits.

  **i.**     **Rachlin's Complaint Does Not Contain Any Claims Fit for Judicial Review.**

To purchase a handgun in New Jersey, a person must apply for a permit and FID. N.J.S.A. 2C:58-3. A "person of good character and good repute in the community in which he lives . . ."

9

must be issued an FID and permit unless, among other reasons, "issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5); N.J.A.C. 13:54-1.5(a)(5). This disqualifier "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" *In re Osworth*, 365 N.J. Super. at 79 (quoting *Burton v. Sills*, 53 N.J. 86, 91 (1968)).

The chief of police of the municipality where the applicant resides makes the initial decision of whether to grant a FID application. N.J.S.A. 2C:58-3(d). In making the initial decision, it is the police chief's duty to "investigate" an application for FID and grant it "unless good cause for the denial thereof appears." N.J.S.A. 2C:58-3(f). "In performing his administrative function the chief of police proceeds informally, gathering the information upon which his decision is then based." *Weston*, 60 N.J. at 43. The police chief must evaluate an applicant "based upon the information disclosed by 'a good faith investigation.'" *In re Application of Boyadjian*, 362 N.J. Super. 463, 475 (App. Div.) (quoting *Weston*, 60 N.J. at 43), *certif. denied*, 178 N.J. 250 (2003). Next, "[t]he chief of police ... shall either approve or disapprove the applications. Permits and cards shall be issued by the chief of police ... to persons who are found to be qualified and who are not subject to any of the disabilities set forth by this subchapter." N.J.A.C. 13:54-1.4.

Thereafter, a "person aggrieved by the denial of a permit or identification card may request a hearing" in the Superior Court. N.J.S.A. 2C:58-3(d); N.J.A.C. 13:54-1.12(a). As such, the legislature expressly provided the Superior Court with authority to review and overrule the police chief's approval or disapproval. N.J.S.A. 2C:58-3(d). If the police chief disapproves the application, the applicant "may request a hearing in the Superior Court . . . by filing a written request for such a hearing within 30 days of the denial." N.J.S.A. 2C:58-3(d).

Rachlin complains that the Superior Court did not conduct a hearing within 30 days; however, this is a red-herring and inconsequential. Indeed, the Court in *Adler v. Livak*, 308 N.J. Super. 219, 222-25 (App. Div. 1998), rejected a similar argument — namely, that an applicant for a gun purchaser permit was automatically entitled to approval because the chief of police did not act upon the application within thirty days, as required by N.J.S.A. 2C:58-3(f), due to his inability to obtain a fingerprint check on the applicant within that period. As the Honorable Kevin McNulty, U.S.D.J. noted in *Almeida v. Conforti*, Civ. No. 16-3411 (KM) (JBC), at *4 (D.N.J. Feb. 14, 2017):

> The Superior Court is an independent decision maker. Irrespective of the police chief's approval or disapproval, the Court has complete discretion to deny or grant the application and issue the permit (with or without restrictions). *See id*. S*ee also In re Dubinsky*, No. A-4443-13T3, 2016 WL 805998, at *2 (N.J. Super. Ct. App. Div. Mar. 2, 2016) (rejecting argument that Superior Court erred by failing to afford deference to police chief's approval of carry permit application) (citing *In re Pantano*, 429 N.J. Super. 478, 485 (App. Div. 2013)).

The New Jersey legislature assigned the administration of firearm regulations, including the issuance of FIDs, to police officials, who sit in an administrative - not judicial capacity, and empowered Superior Court judges to review the administrative determination of the police officials. As to this process, then, the prudential ripeness inquiry is the same as it would be in relation to an ordinary agency decision, which Third Circuit precedent states:

> whether a question is fit for judicial review depends upon factors such as whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it.

*Nextel Commc'ns of Mid-Atl*., *Inc*. *v*. *City of Margate*, 305 F.3d 188, 193 (3d Cir. 2002) (quoting *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535-36 (3d Cir. 1988)).

Rachlin's Complaint asserts numerous claims, allegations, motives and actions that allegedly entitle him to injunctive relief. Even if true, Rachlin cannot establish standing in this

11

Court. As a matter of law, Chief Baumann's denial was not a final determination - Rachlin had the right to request a hearing in the Superior Court. Indeed, Rachlin initially filed with the Superior Court, but then withdrew his application before a hearing and/or a final determination could be made. This "absence of administrative finality" alone is enough to establish that a "dispute is not yet sufficiently fit for judicial review." *See Kushi v. Romberger*, 543 F. App'x 197, 201 (3d Cir. 2013) (case for declaratory and injunctive relief was unripe where plaintiff's initial application for an amended birth certificate was denied without prejudice and plaintiff reapplied but then withdrew application when additional information was requested) (citing *Univ. of Med. and Dentistry of N.J.* v. *Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003)). Rachlin's Complaint purports to present this Court with many legal issues; however, Rachlin lacks Article III standing to assert any of these claims in this Court.

Intertwined with Article III's requirement that a party suffer injury or be in danger of imminent injury, is the ripeness doctrine which seeks to "prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1246-47 (3d Cir. 1996) (citations and quotations omitted). As another district court in this Circuit has observed, the ripeness requirement contains "the 'usually unspoken element' of the preservation of judicial resources." *Comite de Apoyo A Los Trabajadores Agricolas v. Perez*, 46 F. Supp. 3d 550, 563 (E.D. Pa. 2014). To put it another way, "Article III courts should not make decisions unless they have to." *Id.* (citing *Nat'l Treasury Emp. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)). By withdrawing his application, Rachlin destroyed the possibility that the Superior Court might grant his application and resolve the issue without expenditure of federal judicial resources. It would run contrary to good judicial administration to permit Rachlin to force the issue by simply refusing to pursue the usual

procedures for obtaining a permit. Indeed, as Judge McNulty aptly stated "[Rachlin] is not only crying before he is hurt; he has needlessly summoned a federal ambulance." *Almeida*, Civ. No. 16-3411, at \*19.

Here, Rachlin is not asking this Court to review a state administrative decision; rather, Rachlin is asking the Court to usurp the Superior Court's role. *Id.* Indeed, Rachlin:

> is in effect rewriting the procedure to say that an applicant, after receiving the police chief's decision, may then go to either federal or state court, at his option. He is inviting a system whereby either participant in an ongoing state administrative process may quit when it senses that its opponent is ahead on points, and go to federal court. That is not this Court's proper role in our federal system. Federal declaratory judgments and injunctions have their place, but they are not intended to supplant State administrative schemes in routine cases, particularly where the challenged rulings are preliminary or tentative.

*Id.* (citations omitted). In *Cohens v. Virginia*, 6 Wheat. 264 (1821), Chief Justice Marshall's opinion for the Court famously proclaimed: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Id.* at 404. Rachlin is asking this Court to presume, without evidence, that the State courts are not proceeding in good faith to process applications and appeals such as the one Rachlin withdrew. This futility argument is unfounded, speculative, and deserves short-thrift.

Rachlin's contention that the appeal of Baumann's denial of his FID application in the Superior Court is "optional" is completely without merit and conflates Article III standing with abstention. Poignantly, a review of *Durga v. Bryan*, 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011) - the case Rachlin cites as authority for his "optional" argument – reveals the Court reinforced the necessity of adhering to the carefully crafted legislative scheme providing a procedural appellate process for a denial of a FID application under N.J.S.A. 2C:58-3. *Id.* at \*11. The Court in *Durga* summarized the claims presented:

13

> the Plaintiff is essentially asking this Court to weigh the evidence regarding his personal and criminal background in favor of reversing the denial of his application, which is not for the court to decide in a motion for summary judgment. Additionally, the Court is without the benefit of a detailed factual record regarding Plaintiff's background, nor does the Court have any guidance as to what evidence a Police Chief may consider when evaluating an application for a Firearms License. Thus, there may be genuine issues of material fact in dispute regarding plaintiff's background and the Edison Police Chief's reasons for denying the application.

*Id.* at *10.

After expressing concern that the "Superior Court, Somerset County conducted a hearing in [the] Plaintiff's absence while he was on active duty in Iraq and the Edison Police Chief used this decision as part of his basis for the denial, the Court ordered the Police Chief to reconsider the Plaintiff's application." *Id.* at *10-11. In so holding, the Court reiterated the required procedural process Rachlin seeks to circumvent: "[i]f the decision again results in a denial, the Plaintiff may file an appeal with the local Superior Court, consistent with N.J.S.A. 2C:58-3(d), and the court may conduct a hearing and decide de novo as to whether the Plaintiff's application for a Firearms License should be granted or denied." *Id.* at *11.

This case is distinguishable from *Durga*. The Court in *Durga* never addressed Article III standing; and does not support the premise that the underlying state-court remedy can be voluntarily withdrawn; rather, *Durga* provides support that the initial hearing pursuant to N.J.S.A. 2C:58-3(d) must be completed.

Notably, the Court in *Durga* rejected the same Constitutional challenges Rachlin raises in his Complaint stating: "the Plaintiff has not demonstrated that the public welfare provision infringes a substantial number of persons' Second Amendment Rights to support his overbreadth challenge"; *see id*. at *6; "New Jersey's firearm purchasing regulations … including the public welfare provision ... is "presumptively lawful" and because these statutes regulate conduct that is not protected by the Second Amendment, the Plaintiff's overbreadth challenge fails"; *id*.; "the

14

public welfare provision provides sufficient notice to a reasonable person in Plaintiff's circumstances that it would not be in the public interest welfare or safety of the state to issue a Firearms License"; *id.*; and determined the "public welfare provision applied to the conduct at issue holding the plaintiff's challenge that the provision is vague" failed. *Id.* In so holding, the Court expressly referenced the procedural due process afforded under the statute "[t]o guard against arbitrary official action the Legislature directed early determination and provided for easy appeal to the county court." *Id.* (quotations and citations omitted).

### ii.    Rachlin's Actions Broke the Causal Chain and are the Cause of any Injury.

Rachlin has not merely "contributed to his own injury"; rather, "the injury is so completely due to [his] own fault as to break the causal chain." *See C. Wright, & A. Miller*, Federal Practice and Procedure: Jurisdiction § 3531.5 (3d ed.); *see also Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512 (7th Cir. 2010) (injury did not suffice to supply standing where it was not fairly traceable to defendants' conduct because the injury was "brought on by" plaintiff's prior "litigation decisions"). For this independent reason—Rachlin's withdrawal of his application —he lacks standing to complain. Thus, Rachlin cannot establish a likelihood of success on the merits because his complaint must be dismissed on jurisdictional grounds.

### B.  Even if Rachlin had Standing to Bring the Claims Asserted in his Complaint, Rachlin Cannot Establish a Likelihood of Success.

### i.    Rachlin's Second Amendment Based Claims Are Meritless.

The Second Amendment of the United States Constitution provides, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008), the Supreme Court recognized that the Second Amendment's "core protection" is the "right of law-abiding, responsible citizens to use arms in defense of hearth and

home." By virtue of the Fourteenth Amendment, this fundamental right is incorporated against the states. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The *Heller* Court also noted that Second Amendment protections are not absolute; *Heller*, 554 U.S. at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)); and these rights are to be tempered with the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* (quoting 4 Blackstone 148-49 (1769)). Indeed, the Supreme Court has made clear that the Second Amendment permits "reasonable firearms regulations." *McDonald*, 561 U.S. at 784; *see Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam). *See also Kolbe v. Hogan*, 849 F.3d 114, 132 (4th Cir. 2017) (en banc), *cert. denied*, __ U.S. __, 138 S. Ct. 469 (2017); *United States v. Chester*, 628 F.3d 673, 675 (4th Cir. 2010).

The Third Circuit has consistently analyzed as applied constitutional challenges of restrictions on Second Amendment under the two-part test set out in *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). *See, e.g., Folajtar v. Att'y Gen.*, 980 F.3d 897, 901 (3d Cir. 2020); *Holloway v. Att'y Gen.*, 948 F.3d 164, 171 (3d Cir. 2020); *Binderup v. Att'y Gen.*, 836 F.3d 336, 346 (3d Cir. 2016) (en banc). That framework applies with equal force here. *See United States v. Boyd*, 999 F.3d 171, 185 (3d Cir. 2021). Under *Marzzarella*, the Court first must consider whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* Second, if the law falls within the scope of the Second Amendment, the Court must "evaluate the law under some form of means-end scrutiny." *Id.*

### a.  Intermediate Scrutiny Is The Proper Standard

A review of recent decisions from numerous circuits reveals that "there has been near unanimity in the post-*Heller* case law that, when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Mai v. United States*, 952 F.3d

1106, 1115 (9th Cir. 2020); *Medina v. Whitaker, 913 F.3d 152, 156 (D.C. Cir. 2019); Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012); *U.S. v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2010) (applying intermediate scrutiny to a regulation barring the carrying of loaded weapons in a motor vehicle in a national park); *United States v. Chester*, 847 F. Supp. 2d 902 (S.D.W. Va. 2012)(applying intermediate scrutiny when reviewing a Second Amendment challenge to 18 U.S.C. § 922(g)(9), which prohibits the possession of firearms by a person convicted of a misdemeanor crime of domestic violence); *see also Sibley v. Watches*, 460 F. Supp. 3d 302, 313-14 (W.D.N.Y. May 18, 2020) ("The Second Circuit and district courts in this Circuit have continually chosen to apply intermediate scrutiny to general challenges under the Second Amendment.") (internal quotation marks omitted); *Doe No. 1 v. Putnam Cty.*, 344 F. Supp. 3d 518, 538 n.12 (S.D.N.Y. 2018) ("[T]he Second Circuit has not yet applied [strict] scrutiny to any statute in the Second Amendment context....").

Defendants respectfully submit that Rachlin's challenge falls outside the scope of the Second Amendment because the statute at issue impacts "the narrow class of persons who are adjudged to lack the characteristics necessary for the safe possession of a handgun". *Durga*, 2011 U.S. Dist. LEXIS 112638, at * 6-7; *see also infra*, at pp. 9-14. In addition, "law-abiding, responsible citizens face nothing more than time" and a reasonable "expense" in order to possess a handgun. *Libertarian Party of Erie Cty.*, 300 F. Supp. 3d at 443. The Third Circuit has held that the Second Amendment does not protect those who have committed serious crimes, *Folajtar* , 980 F.3d at 902; *Binderup*, 836 F.3d at 349; and persons who are mentally ill, as they potentially pose a "danger to themselves or to others." *Beers v. Attorney General*, 927 F.3d 150, 158 (3d Cir. 2019), *judgment vacated on other grounds*, *Beers v. Barr* , —— U.S. ——, 140 S. Ct. 2758, 206 L.Ed.2d

933 (mem.) (2020); *see also Doe v. Governor of Pa.*, 977 F.3d 270, 274 (3d Cir. 2020) (reasoning that once a person has been involuntarily committed, "that person has joined the class of those historically without Second Amendment rights"). In addition, New Jersey's firearm purchasing regulations, including the public welfare provision, has been held to be "presumptively lawful" and because these statutes regulate conduct that is not protected by the Second Amendment, the statute need not be analyzed under a level of scrutiny. *See infra*, at pp. 11-14; *see also Drake*, 724 F.3d at 436. As such, the Court need not proceed to Step Two of the *Marzzarella* analysis.

Even if this Court finds that New Jersey's statutory restrictions on FID falls within the scope of the Second Amendment, Rachlin still would not succeed on the merits of his claim because the statutes at issue withstand intermediate scrutiny. To survive intermediate scrutiny, the government must demonstrate: (1) "a significant, substantial, or important interest;" and (2) "a reasonable fit between that asserted interest and the challenged law, such that the law does not burden more conduct than is reasonably necessary." *Drake*, 724 F.3d at 436 (citing *Marzzarella*, 614 F.3d at 98). Put differently, "a regulation that burdens a plaintiff's Second Amendment rights passes constitutional muster if it is substantially related to the achievement of an important governmental interest." *Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013)(internal quotations omitted). "When reviewing the constitutionality of statutes, courts 'accord substantial deference to the [legislature's] predictive judgments.'" *Drake*, 724 F.3d at 436-37 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997)).

**b. There Exist A Substantial Interest In Public Safety**

It is well-established that "[t]he State of New Jersey has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety." *Drake*, 724 F.3d at 437 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). *See also Hirschfeld*, 5 F.4th at 441

("To begin, the government's interests in preventing crime, enhancing public safety, and reducing

gun violence are 'not only substantial, but compelling.'") (quoting *Kolbe*, 849 F.3d at 139). *See*

*also NYSRPA*, 804 F.3d at 261 ("It is beyond cavil that both states ... have substantial, indeed

compelling, governmental interests in public safety and crime prevention.")(Citation omitted).

### c. New Jersey's Comprehensive Firearm Legislation and Restrictions are Longstanding and Therefore Constitutional.

The challenged statute is presumptively valid based on *Heller's* list of "presumptively

lawful regulatory measure[s]" that list includes "longstanding prohibitions on the possession of

firearms by felons and the mentally ill, [ ] laws forbidding the carrying of firearms in sensitive

places such as schools and government buildings, [and] laws imposing conditions and

qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626–27, 627 n.26, 128 S.Ct.

2783; *see* Christopher M. Johnson, *Second-Class: Heller, Age, and the Prodigal Amendment*, 117

Colum. L. Rev. 1585, 1600–03 (2017) (describing measures that seemingly fall within *Heller*'s

list). If a law falls within this list, the Court conducts a more streamlined analysis. *See, .e.g., Doe*

*v. Governor of Pennsylvania*, 977 F.3d. at 274 ("We have consistently hewed to the exceptions

that *Heller* preserved."). As the Supreme Court stated in *McDonald*, "We made it clear in *Heller*

that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on

the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms

in sensitive places such as schools and government buildings, or laws imposing conditions and

qualifications on the commercial sale of arms." 561 U.S. at 786 (quotations omitted).

Recently, in *Maryland Shall Issue, Inc., et al. v. Lawrence Hogan, Jr.*, No. CV ELH-16-

3311, 2021 WL 4750371 (D. Md. Oct. 12, 2021) the District Court in Maryland dismissed the

plaintiff's complaint and denied the plaintiff's motion for injunctive relief challenging the

Maryland statutory Handgun Qualification License ("HQL"). The District Court concluded that

the record demonstrated a reasonable fit between Maryland's HQL law and the State's important interest in promoting public safety. *Id*. at *27. The District Court quoted a decision written by Judge Wilkinson that applies to this application: "No one really knows what the right answer is with respect to the regulation of firearms," but "the profound ambiguities of the Second Amendment" are not "an invitation to courts to preempt this most volatile of political subjects and arrogate to themselves decisions that have been historically assigned to other, more democratic actors."

This line of reasoning has been cited by Circuit Courts across the nation upholding Constitutional challenges to legitimate restrictions imposed by state legislatures with respect to guns. In that regard, the primal fear of dangerous persons with guns is backed by longstanding historical support "demonstrat[ing] that legislatures have the power to prohibit dangerous people from possessing guns," including "dangerous people who have not been convicted of felonies[.]" *Kanter v. Barr*, 919 F.3d 437, 451, 454 (7th Cir. 2019) (Barrett, J., dissenting); *see also Folajtar*, 980 F.3d at 911 (Bibas, J., dissenting); *Binderup*, 836 F.3d at 368 (Hardiman, J., concurring). These include persons who are mentally ill, as they potentially pose a "danger to themselves or to others." *Beers v. Attorney General*, 927 F.3d 150, 158 (3d Cir. 2019), *judgment vacated on other grounds*, *Beers v. Barr*, ––– U.S. ––––, 140 S. Ct. 2758, 206 L.Ed.2d 933 (mem.) (2020); *see also Doe v. Governor of Pa*, 977 F.3d at 274 (reasoning that once a person has been involuntarily committed, "that person has joined the class of those historically without Second Amendment rights"); *United States v. Boyd*, 999 F.3d 171 (3d Cir. 2021)("Congress has chosen to address the searing issue of domestic violence by disarming persons when a court has found it necessary to issue a protective order that requires them not to harm their intimate partners or their children. And Congress has chosen to do so only after a person has had notice and a hearing before a court. That

limitation on gun rights is clearly within the bounds of restrictions that the Second Amendment contemplates.").

### C. Rachlin Cannot Establish a Substantial Likelihood of Success on his Fourteenth Amendment Claims

Rachlin also fails to establish an underlying cause of action for a violation of procedural due process rights under the Due Process Clause of the Fourteenth Amendment because there is an adequate state created process that Rachlin failed to pursue. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." The Due Process Clause confers both substantive and procedural rights. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). "To establish a substantive due process claim, a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action." *Sameric Corp. of Delaware v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998). The substantive component "limits what [the] government may do regardless of the fairness of [the] procedures that it employs," *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (citation omitted), "in order to 'guarantee protect[ion] against government power arbitrarily and oppressively exercised.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

In analyzing a procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If the asserted interest falls within the protections of the Due Process Clause, the second step is to determine whether the plaintiff was afforded all of the process he was due. *See id*. But where, as here, a plaintiff's claim is against a state actor, "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Where

pursuing a procedural due process claim against the State "a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Id.* Indeed, "a state cannot be held to have violated due process requirements when it has made procedural protection available, and the plaintiff has simply refused to avail himself of them." *Id.* (cleaned up) (quoting *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982)). As a result, "[a] due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). Here, Rachlin cannot establish a likelihood of success on his procedural due process claim because he has failed to avail himself of the very State created process that is available to those who disagree with a final determination of a State agency.

When the challenged conduct is executive action, "the threshold question is whether the [governmental] behavior . . . is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Governmental "conduct intended to injure" is the "most likely to rise to the conscience-shocking level" while injuries caused by deliberate indifference are a "closer call." *Id.* at 849. In *Rochin v. California,* 342 U.S. 165 (1952), the Supreme Court found that police officers' conduct of entering a suspect's home without a warrant, tackling him to the ground, struggling to open his mouth, and forcibly pumping his stomach after they believed the suspect swallowed narcotics, was conduct that "shocked the conscience" in violation of the Due Process clause. *See also Marrero-Rodriguez v. Municipality of San Juan*, 677 F.3d 497 (1st Cir. 2012)(allegations that plaintiff was fatally shot during training when officer placed a firearm to plaintiff's unprotected back and fired when the plaintiff was face down, motionless, under control, and unarmed sufficiently shocked the conscience).

By contrast, here, Rachlin cannot and does not allege any facts that rise to the level of conduct that courts have found to be egregious, outrageous, or shocking to the conscience resulting in a violation of due process. Thus, Rachlin cannot establish a likelihood of success on his 14th Amendment due process claims. *Doe v. Governor of Pa.*, 977 F.3d at 275 ("Because Pennsylvania's post-deprivation procedures provide Section 302 committees with adequate due process, regardless of whether the Does have a protected liberty interest, we need not decide in this case whether they retain a Second Amendment right to possess firearms.")

### D. Plaintiff Cannot Establish a Likelihood to Succeed on His Second Amendment Complaints.

Rachlin's Complaint alleges that his constitutional rights were violated by means of delay in processing, being required to submit to a medical examination, and eventual denial of his FID by Baumann. None of these allegations establish a claim for a violation of his Second Amendment rights.[4] As set forth above, New Jersey's statutory scheme is constitutional.

The New Jersey Supreme Court recently addressed Rachlin's arguments in his Complaint and summarily rejected them. *In re Forfeiture of Personal Weapons & Firearms Identification Card Belonging to F.M.*, 225 N.J. 487 ( 2016) (noting that N.J.S.A. 2C:58-3(c)(5) and (c)(8) have been upheld against Second Amendment challenges). Similarly, the Court in *In re Dubov*, 410 N.J. Super. 190, 197 (App. Div. 2009) expressly determined that N.J.S.A. 2C:58-3(c)(5) is not unconstitutionally vague. *See also Crespo v. Crespo*, 201 N.J. 207, 210 (2010) (holding PDVA constitutional because "the right to possess firearms clearly may be subject to reasonable limitations"); *In re Winston*, 438 N.J. Super. 1, 10 (2014) (holding that *District of Columbia v.*

---

[4] Rachlin's allegations that his First Amendment rights have been violated are predicated upon his Second Amendment rights being violated as a form of retaliation to his speech. However, since his Second Amendment rights were not violated, his claims regarding his First Amendment rights must also fail.

23

*Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), do not render N.J.S.A. 2C:58-3(c)(5) unconstitutional).

The denial of Rachlin's application did not violate his constitutional rights because New Jersey's firearm regulations are constitutionally sound. Rachlin conflates the issue of whether he is fit to possess a firearm with a separate and distinct statutory disqualifier - whether he suffers from a mental illness rendering him dangerous to carry a firearm. Indeed, N.J.S.A. 2C:58–3(c)(5), the "public health, safety or welfare" disqualifier, "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" *In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M.*, 225 N.J. 487, 513 (2016) (citations omitted). Accordingly, "even though [Rachlin] might not be disqualified from possessing a firearm under [another section], he may nonetheless be disqualified under [section 58-3(c)(5)]."

Contrary to Plaintiff's position, case law exists where the FID issuing authority can deny an FID applicant on the ground of prior actions and conditions alone, irrespective of a current psychological report that there is no public health, safety and welfare concerns. *See In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.*, 2019 N.J. Super. Unpub. LEXIS 550 (FID denied despite current mental health expert stating that applicant posed no danger to himself or other, and only childhood bad acts were on record); *see also In re D.P.'s Application for a Firearms Purchaser Identification Card*, 2021 N.J. Super. Unpub. LEXIS 769, 2021 WL 1731790 (App. Div. May. 3, 2021) (applicant complied with obtaining clinical psychologist clearance but was denied anyway on the ground of public health safety and welfare); *see also In re J.D.*, 407 N.J. Super. 317 (Law Div. 2009) (even if the mental health records are expunged pursuant to a

court hearing where an applicant is deemed not to be a danger to himself or others, the issuing

authority must still evaluate and determine the current status themselves). Here, Rachlin provided

Baumann with a letter from Jordan Faiman, a Licensed Professional Counselor and Approved

Clinical Supervisor, stating that he is "able to determine [Rachlin] is not currently a danger to

himself of and/or others". *See* Document 7-1, at p. 14; *see also* Moriarty Cert., Exhibit A, at 040.

Baumann responded to the Faiman letter on March 19, 2021, which referenced an earlier

letter that was sent on March 4, 2021, which requested that Rachlin "get evaluated and screened

by a clinical psychologist in order for me to approve your firearms application...I received a letter

from Jordan Fairman, a Licensed Professional Counselor and Approved Clinical Supervisor.

Unfortunately, this did not fulfil [sic] my request of being evaluated and screened by a clinical

psychologist." *See* Moriarty Cert., Exhibit A, at p. 007. Baumann's letter continued by advising

that, "[i]n addition to getting evaluated and screened, I requested a letter from the clinical

psychologist to clearly indicate that you owning or possessing a firearms will not cause any harm

to yourself or the general public. Until I receive these assurances, I will be unable to approve your

application for a NJ Firearms ID card." *Id.* Thus, Rachlin's submission of the Faiman letter from

an individual who was not a clinical psychologist did not comply with the Police Chief's request.

Significantly, Faiman also never addresses Rachlin's fitness to possess a firearm or whether

the grant of the application was in the interest of the public safety, health, and welfare. Moreover,

Faiman admits that he was "unable to comment on safety concerns over the course of 4 years since

this last session". *See* Moriarty Cert., Exhibit A, at p. 040. There is no indication regarding the

length of the session, what tests were performed, what information was conveyed, or whether

Rachlin was even being truthful. Thus, Faiman's letter failed to comply with Baumann's request,

and the substance of the letter fails to assuage any of the apparent public safety issues identified in

25

the investigative report. In fact, Rachlin's past medical record demonstrates sufficient cause to deny his application for a FID, even if he produced letter Baumann had requested he provide.

In deciding whether a threat to public health, safety and welfare exists, the court must focus on the "individual unfitness" of the firearms owner. *See In re F.M.,* 225 N.J. at 507 (quoting *In re Osworth*, 365 N.J. Super. at 79). Significantly, other risk factors that may be insufficient in isolation may disqualify an applicant "in conjunction with" the public safety factor. *See Freysinger*, 311 N.J. Super. at 516 (upholding disqualification where defendant both drank habitually and posed a threat to public safety); *State v. Cordoma*, 372 N.J. Super. 524, 536 (App. Div. 2004)(holding defendant's mental condition, while insufficiently disabling to meet N.J.S.A. 2C:58-3(c)(2)-(3), nonetheless contributed to a public threat); *In re Osworth*, 365 N.J. Super. 72, 80-81 (App. Div. 2003)(holding prior conduct, while not a disqualifying conviction under N.J.S.A. 2C:58-3(c)(1), supported finding a threat under subsection (c)(5)). *See also In re J.D.*, 407 N.J. Super. 317 (Law Div.2009) (an issuing authority has a duty to investigate even into expunged mental health records). The reasoning in *J.D.* is instructive in which the Court explained that even with expunged records, where another court has already ruled that the individual is no longer a threat to themselves or others and the underlying condition is no longer present, the local issuing authority had a duty to uphold public safety by confirming the FID applicant is still not a danger to himself or others. *In re J.D.*, 407 N.J. at 328.

### E. Rachlin Will Not Suffer Irreparable Harm Should the Court Deny his Request for a Preliminary Injunction; rather, the Risk of Harm to the Public (and Rachlin himself), and the Public Interest Weigh Heavily Against Granting an Injunction.

In what can only be considered the height of irony, Rachlin alleges that granting injunctive relief will not result in greater harm to Defendants than Rachlin, and the public interest weighs in favor of injunctive relief. *See* Complaint, at ¶101. Rachlin's arguments are illogical and counter-intuitive. Rachlin has not identified any "immediate and irreparable harm" that requires this Court

to disturb the status quo; preliminarily and permanently enjoin Defendants from enforcing New Jersey's firearms regulations and criminal laws; and permitting Rachlin to purchase and own a firearm.

Plaintiff has no likelihood of success on the merits of his claims; therefore, he will suffer no irreparable harm if this Court denies his request. *See Fyock v. City of Sunnyvale,* 25 F. Supp. 3d 1267, 1277 (N.D. Cal. 2014) (citing *Heller*, 554 U.S. at 581), *aff'd*, 779 F.3d 991 (9th Cir. 2015) (holding that Plaintiffs who premise their irreparable harm argument on the expectation they will succeed on the merits cannot show irreparable harm where the court finds they have no likelihood of success on the merits). The grant of an injunction would impose a significant burden on the Defendants and undermine public interest by frustrating the intent of the people as expressed through the actions of their elected officials. *Maryland v. King*, 567 U.S. 1301 (2012)(Roberts, C.J., in chambers)("[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.")(citation omitted). This is even more pertinent whenever "there is, in addition, an ongoing and concrete harm to [the state's] law enforcement and public safety interests." *Ibid.* On the record before the Court, it should find that granting a preliminary injunction would result in greater harm to Defendants than denying one would to Rachlin.

Indeed, the immediate and irreparable harm in granting the requested relief is axiomatic. Such relief would endanger the public by placing a firearm in the hands of Rachlin whose ███

███████████████████████████  ███████████████████  ██  ████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████  █  ████████████

███████████████████████████                   *See* Document 19-3 at ¶11. That is, the costs

of being mistaken, on the issue of granting the injunction and placing a handgun in an individual with mental health issues would be grave. These costs are essentially "a bell that can never be un-rung", and impact not just the public at large, but Rachlin (whose records have references to suicide) to himself. The consequences of granting the injunction are grave and irreversible, and no money can restore or make up for the threats to public safety and law enforcement safety that could follow. The dangerous propensity of handguns is self -evident, and the consequence of their misuse is well-documented. *See Heller*, 554 U.S., at 636 (recognizing "the problem of handgun violence in this country" and agreeing "the Constitution leaves" States "a variety of tools for combating" it).

Indeed, the state interest in protecting individuals and the public health, welfare, and safety concerning gun ownership weighs heavily in favor of denying Rachlin's request for injunctive relief. *In re Osworth*, 365 N.J. Super. 72, at 79 (stating that N.J.S.A. 2C:58-3(c)(5) "public health, safety or welfare" disqualifier, "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'")(quoting *Burton*, 53 N.J. at 91). That is, the New Jersey Legislature has passed these laws prohibiting groups of individuals from obtaining permits to purchase handguns and firearms purchaser identification cards because the legislative judgment is that if such persons had access to guns, there would be a direct threat to public safety.

Here, Baumann properly requested that a clinical psychologist to evaluate Rachlin and state that allowing him to possess a firearm would not be contrary to the public health, safety or welfare. This was a reasonable action because Rachlin had undergone years of mental health treatment, had admitted to a history ███████████████, was admitted to a hospital for a mental

health evaluation, had been ███████████████████████████████████████

███████████████████████████████████████. *See, e.g., Masciandaro*, 638 F.3d at

475–76 ("We do not wish to be even minutely responsible for some unspeakably tragic act of

mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment

rights.... If ever there was an occasion for restraint, this would seem to be it.").

     Given the extensive discussion on legislative intent and long history requiring authorities

to investigate all aspects of potential mental health concerns for FID applications, and the extensive

history of mental health treatment of Rachlin himself - the request for Rachlin to submit to a

clinical psychologist evaluation is not an unconstitutional deprivation of rights. The issuing

authority in this case could have simply issued a denial given these facts. Allowing any applicant

additional leeway to overcome these issues when they are not entitled to FID approval is the

opposite of being denied any constitutional rights.

     The benefit to Rachlin in granting the injunctive relief is clearly outweighed by the

resultant harm to New Jersey residents' safety. Should the injunction be denied, the parties will

stand in the same place tomorrow that they stand now. Granting the relief sought by Rachlin would

undermine all the systems, laws, and regulations currently in place to ensure that certain

individuals do not possess firearms. The balance of hardships and the fact that denying the

injunctive relief just maintains the status quo both weigh heavily in favor of denying the injunctive

relief sought by Rachlin. Threats to public safety and law enforcement safety are the quintessential

harm to the public interest. Clearly, there exists a strong public interest in protecting the public

from the violence and social cost associated with the misuse of firearms.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss should be granted, and Plaintiffs' Motion for Preliminary Injunctive Relief should be denied.


Dated: October 18, 2021                    By: /s/ Timothy C. Moriarty
                                               Timothy C. Moriarty, Esq.

**DAVISON, EASTMAN, MUÑOZ, PAONE, P.A.**
Monmouth Executive Center
100 Willow Brook Road, Suite 100
Freehold, NJ 07728
Tel: 732-462-7170
Fax: 732-462-8955
tmoriarty@respondlaw.com
*Attorneys for Defendants, George K. Bauman and*
*Freehold Township as to claims for injunctive relief*
*and punitive damages*