# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVI ALEXANDER RACHLIN,<br><br>    Plaintiff,<br><br>-against-<br><br>GEORGE K. BAUMANN, in his official capacity and as Chief of Police of the FREEHOLD TOWNSHIP POLICE DEPARTMENT and FREEHOLD TOWNSHIP,<br><br>    Defendants. | HON. FREDA L. WOLFSON U.S.D.J.<br><br>HON. TONIANNE J. BONGIOVANNI, U.S.M.J.<br><br>CIVIL ACTION NO. 3:21-cv 15343<br><br>**<u>CIVIL ACTION</u>**<br><br>**<u>(ELECTRONICALLY FILED)</u>**<br><br>Motion Date: November 1, 2021 |

## <u>PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION</u>

Edward Paltzik
JOSHPE MOONEY PALTZIK LLP
1407 Broadway, Suite 4002
New York, NY 10018
Tel: (212) 344-8211
Fax: (212) 313-9478
epaltzik@jmpllp.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ………………………………….………… 1

ARGUMENT ………..….…….…….………..……….…….….…..….…..…… 1

I.    Rachlin Has Article III Standing To Assert His Claims
in Federal Court, Because, as a Matter of Law, an Applicant
Denied a Firearms Purchase Identification ("FID") Card is
Not Required to Pursue a Hearing in New Jersey Superior Court ………… 1

    A.    A Hearing in New Jersey Superior Court Reviewing
a Denial of a FID Card Application Is Remedial,
Not Coercive, and Therefore, as a Matter of Law,
Is Not a Prerequisite to Judicial Review
in Federal Court ……………………………………………….. 3

    B.    Defendants' Erroneous Interpretation of New Jersey Law:
The Requirement that an Applicant For a Permit
to Carry a Handgun Submit to a Hearing in
New Jersey Superior Court, Cited by Defendants,
Is Irrelevant to The Issue of Standing in This Case
Since Rachlin Is an Applicant for a FID Card ………………….... 8

II.    Rachlin is Likely to Prevail on His Meritorious
Second Amendment Claims ……………………………………….. 9

    A.    Defendants' Arguments About the Constitutionality of
New Jersey's Comprehensive Firearms Regulations
and Restrictions are Irrelevant Because This is Not a
Facial Challenge to Those Laws ……………………...………... 9

    B.    Rachlin's As-Applied Second Amendment Claims
are Meritorious …………………………………………… 9

        *i.*    *Rachlin is Likely to Prevail on the Merits of His
Second Amendment Claims Because Defendants'
Conduct is Categorically Unconstitutional* …………….…..... 9

     *ii.*      *To the Extent the Court Applies Tiered Scrutiny Analysis,*
                *The Proper Standard for Review is Strict Scrutiny, Under*
                *Which Rachlin is Likely to Prevail on the Merits of His Second*
                *Amendment Claims* ……………………………………… 10

     *iii.*     *Even Under Intermediate Scrutiny, Rachlin is*
                *Likely to Prevail on the Merits of His Second*
                *Amendment Claims* …………………………………… 11

B. Defendants' Fourteenth Amendment Arguments Are Irrelevant ………… 15

C. Conclusion ……………………………………………………………... 15

# TABLE OF AUTHORITIES

**Cases**            **Pages**

*Almeida v. Conforti,*
    2017 U.S. Dist. LEXIS 21817 (D.N.J. Feb 14, 2017) ………………….. 8, 9

*Antonelli v. New Jersey,*
    310 F. Supp. 2d 700 (D.N.J. 2004) …………………………………... 5

*Bd. of Trs. v. Fox,*
    492 U.S. 469 (1989) …………………………………………………… 11

*Binderup v. AG of the United States,*
    836 F.3d 336 (3d Cir. 2016) …………………………………………… 10

*DePiano v. Atlantic County,*
    No. 02-5441, 2005 WL 2143972 (D.N.J. Sept. 2, 2005) ………………….. 3

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) …………………………………………………… 9, 10

*Dultz v. Velez,*
    726 F. Supp. 2d 480 (D.N.J. 2010) …………………………………... 5

*Durga v. Bryan,*
    2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011) ……………….. 6, 7

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) …………………………………………10

*Getson v. New Jersey,*
    352 Fed. App'x. 749 (3d Cir. 2009) ………………………………..…… 5

*In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.,*
    2019 N.J. Super. Unpub. LEXIS 550 (App. Div. 2019) ....………………14

*In re D.P.'s Application for a Firearms Purchaser Identification Card,*
    2021 N.J. Super. Unpub. LEXIS 769 (App. Div. May 3, 2021) …………. 14

*In re J.D.*,
    407 N.J. Super. 317 (Law Div. 2009) …………..………………………... 14

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) …………………………………………………………… 15

*Monroe v. Pape*,
    365 U.S. 167 (1961) …………………………………………………………….. 3

*O'Neill v. City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994) ……………………………………………… 4, 5, 6, 7

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
    477 U.S. 619 (1986) ………………………………………………………….. 3, 4

*Patsy v. Bd. of Regents of State of Fla.*,
    457 U.S. 496 (1982) ………………………………………………………….. 3, 4

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1 (1973) ……………………………………………………………… 10

*State v. Cordoma*,
    72 N.J. Super. 524 (App. Div. 2004) …………………………………………14

*State v. Freysinger*,
    311 N.J. Super. 509 (App. Div. 1998) ………………………………………..14

*Teixeira v. Cnty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) …………………………………………………10

*United States ex rel. Ricketts v. Lightcap*,
    567 F.2d 1226 (3d Cir. 1977) ………………………………………………… 3

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ………………………………………………….. 10

*Wyatt v. Keating*,
    130 F. App'x. 51 (3d Cir. 2005); ……………………………….……….…... 5, 7

*Younger v. Harris*,

401 U.S. 37 (1971) …………………………………………………… 2, 4, 5, 7

*Zahl v. Harper*,
  282 F.3d 204 (3d Cir. 2002) ………………………………………………….. 5

## **Statutes**

New Jersey Statutes Annotated ("N.J.S.A.")

§ 2C:58-3(c)(2). . . ……………………………………………………......... 14

§ 2C:58-3(c)(5). . . ……………………………………………………........... 9

§ 2C:58-3(c)(6). . . ……………………………………………………......... 14

§ 2C:58-3(c)(8). . . ……………………………………………………......... 14

§ 2C:58-3(d) . . . ……………………………………………………........... 2, 6, 7

## **PRELIMINARY STATEMENT**

Plaintiff Avi Alexander Rachlin ("Rachlin") respectfully submits this Reply Brief in Further Support of his Motion for a Preliminary and Permanent Injunction, together with his accompanying Reply Declaration. Defendants submitted a "Brief in Opposition to Plaintiff's Motion for a Preliminary and Permanent Injunction" dated October 18, 2021 ("Def. Br." - ECF #21), which contains glaring omissions of material facts, misleading use of irrelevant or out-of-context facts, and patently erroneous statements of law. The Court should see Defendants' presentation for what it is: smoke and mirrors designed to misdirect the Court's attention from the three simple realities that define this case: (i) Rachlin, by all objective indicia, including the contents of the Freehold Township Police Department ("FTPD") Investigative Record (Def. Ex. A – ECF #21-2), presents no danger to himself or others, (ii) Rachlin therefore has an *unconditional* right to exercise his Second Amendment right to keep and bear arms, and (iii) Defendants have insisted and continue to insist that Rachlin's ability to acquire firearms is *conditional* (Defendants demand that Rachlin submit to a clinical psychological screening), thereby effectuating a complete deprivation of Rachlin's right to keep and bear arms, since Rachlin refuses to and should not be required to submit to this baseless and punitive condition.

## **ARGUMENT**

## I.    **Rachlin Has Article III Standing to Assert His Claims in Federal Court, Because, as a Matter of Law, an Applicant Denied a Firearms**

**Purchase Identification ("FID") Card is Not Required to Pursue a Hearing in New Jersey Superior Court**

Defendants argue that Rachlin lacks Article III standing to sue in federal court because he withdrew his request for an optional hearing in New Jersey Superior Court pursuant to N.J.S.A. 2C:58-3(d) before that Court could review Defendant George K. Baumann's ("Baumann") denial of Rachlin's FID card, and therefore failed to exhaust his administrative remedies. (Def. Br. at 1, 7-15). However, Defendants' legal analysis is erroneous in multiple respects: (i) they fail to mention the crucial distinction between coercive and remedial proceedings; (ii) they conveniently ignore that exhaustion is not a prerequisite to an action under 42 U.S.C. § 1983; and (iii) they confuse the related but distinct issues of standing and abstention under Third Circuit precedent—standing is not properly at issue in this context; rather, the issue Defendants could have raised is whether Rachlin's claims are properly adjudicated in federal court under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). However, even if Defendants had framed their argument around abstention rather than standing, the result would be identical, as dictated by Supreme Court and Third Circuit precedent: Rachlin's case is properly brought in federal court because (i) a Superior Court hearing on an FID card denial is a remedial—not coercive—proceeding; (ii) since this type of hearing is remedial, Rachlin was not required seek a Superior Court hearing prior to requesting relief in

2

federal court; and (iii) since Rachlin was not required to avail himself of the optional Superior Court hearing, he has Article III standing *and* abstention does not apply.

### A. A Hearing in New Jersey Superior Court Reviewing a Denial of a FID Card Application Is Remedial, Not Coercive, and Therefore, as a Matter of Law, Is Not a Prerequisite to Judicial Review in Federal Court

As recognized in the Third Circuit, the Supreme Court "has stated categorically that exhaustion is not a prerequisite to an action under 42 U.S.C. § 1983 . . . ." *Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982); *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 n.2 (1986); *see also United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1229 (3d Cir. 1977) ("The general rule in actions under section 1983 is that state remedies need not be exhausted as a prerequisite to federal jurisdiction."); *DePiano v. Atlantic County*, 2005 U.S. Dist. LEXIS 20250, at *45 (D.N.J. Sept. 2, 2005) (citing *Patsy*, 457 U.S. 596). This rule has been clear since 1961, when the Supreme Court found that Congress, in enacting the Civil Rights Act, intended that the federal remedy in section 1983 be "supplementary" to State remedies. *Lightcap*, 567 F.2d at 1229 (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

The general rule, followed since *Monroe*, holds particularly true when the State remedy in question is remedial and not coercive in nature. *Patsy* and *Dayton Christian* illustrate the importance of this dichotomy. In *Patsy*, the Court held that an employee terminated by a Florida university had standing to pursue her gender

discrimination claims despite having bypassed available State remedies. 457 U.S. 501; *see also Patsy v. Florida International University*, 634 F.2d 900, 913 (5th Cir. 1981) (*en banc*) ("Ms. Patsy had access to several administrative grievance procedures in the State University System."). The Florida State University System grievance procedures were remedial. *Dayton Christian*, 477 U.S. at 627 n.2. In *Dayton Christian*, however, the Ohio Civil Rights Commission brought an administrative proceeding against a Christian school for alleged gender discrimination under an Ohio statute. The Supreme Court found that the District Court should have abstained from adjudicating the dispute, in part because "[u]nlike Patsy, the administrative proceedings here are coercive rather than remedial . . . ." 477 U.S. at 627 n.2.

The Third Circuit has recognized this crucial distinction. Where the City of Philadelphia held hearings before a newly created traffic bureau to enforce traffic tickets against the individual plaintiffs, the Court found that plaintiffs' claims were not properly adjudicated in federal court and abstention under *Younger* appropriate, because the hearings were a form of "*coercive* administrative proceeding . . . initiated by the State in a state forum . . . ." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 788, 791 (3d Cir. 1994) (emphasis added). The Court noted that "[t]he critical distinction . . . is that *Patsy* involved a *remedial* action brought by the plaintiff to vindicate a wrong which had been inflicted by the State . . . . *Dayton Christian* . . . involved an

4

administrative proceeding initiated by the State." *Id*. at 791 n. 13 (emphasis in original). The enforcement action in *Dayton Christian*, though, "was *coercive* rather than remedial . . . ." *Id*. (emphasis in original).

Other Third Circuit decisions have reinforced this definition of coercive proceedings, that is, proceedings *"initiated by the State*, before a state forum, to *enforce a violation of state law*." *Wyatt v. Keating*, 130 F. App'x. 51, 515 (3d Cir. 2005) (quoting O'Neill, 32 F.3d at 791 n.13) (emphasis added); *see also Getson v. New Jersey*, 352 F. App'x. 749 (3d Cir. 2009) (abstention proper where state attorney general filed administrative complaint seeking revocation of doctor's medical license); *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002) (abstention proper where state attorney general initiated disciplinary proceedings against doctor). On the other hand, the Third Circuit has made it abundantly clear that the availability of *remedial* State proceedings does not trigger *Younger* abstention or deprive a plaintiff of standing. *See e.g., Wyatt*, 130 F. App'x. at 515 (appeals process initiated by plaintiff to reinstate license to sell insurance was remedial "because it was *initiated by* [plaintiff] *at his own option*" and thus abstention would have been improper had claims been timely); *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 711-12 (D.N.J. Mar. 31, 2004) (administrative appeals by plaintiffs challenging firefighter test results were remedial and abstention not warranted because plaintiffs were "not attempting . . . an end run around state enforcement efforts."); *Dultz v.*

*Velez*, 726 F. Supp. 2d 480, 495 (D.N.J. 2010) (administrative proceedings challenging denials of public benefits were remedial and abstention not warranted).

In the case at bar, Defendants ignore the crucial remedial versus coercive distinction altogether. N.J.S.A. 2C:58-3(d) provides in pertinent part that an individual "aggrieved by the denial of a [FID card] card *may* request a hearing in the Superior Court of the county in which he resides . . . ." (Emphasis added). This hearing can only occur at the applicant's request. Thus, a hearing pursuant to 2C:58-3(d) is not a proceeding initiated by the State to enforce State law, and is therefore plainly remedial and not coercive. Accordingly, Rachlin was free to bypass this optional hearing and has Article III standing to vindicate his constitutional rights in federal court, not subject to any exhaustion requirement.

Strangely, Defendants claim to find support for their specious standing argument in *Durga v. Bryan*, 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011), a case previously cited by Plaintiff. (Def. Br. at 13-14). *Durga*, which is directly on point here, stands for the exact *opposite* proposition than the one Defendants urge in their Brief: that exhaustion of State remedies is *not* required in the context of FID card denials. The Court in *Durga* found that the FID card issuing authority:

> [P]resents no arguments to support that the [FID] application and subsequent appeal constitute a coercive proceeding that requires exhaustion. Plaintiff attempted to file a state court appeal and subsequently filed a complaint in federal court in an attempt to exercise his Second Amendment rights, which more closely resembles the sort of remedial actions that *O'Neill* explained did not require exhaustion. *Durga*, 2011 U.S. Dist. LEXIS at *18

The court concluded that "[f]or purposes of exhaustion, the insurance licensing requirement at issue in *Wyatt* does not differ materially from the firearms licensing requirement in this case, and therefore *O'Neill* does not support abstention in this case." *Id.* (citing *Wyatt*, 130 F. App'x at 514-515) (denying defendants' cross-motion for summary judgment).

In their attempt to distinguish *Durga* from Rachlin's case, Defendants argue:

> The Court in *Durga* never addressed Article III standing; and [*Durga*] does not support the premise that the underlying state-court remedy can be voluntarily withdrawn; rather, *Durga* provides support that the initial hearing pursuant to N.J.S.A. 2C:58-3(d) must be completed. (Def. Br. at 14).

As to the first point, the Court in *Durga* never addressed standing on a fact pattern quite similar to the case at bar *for the precise reason that standing was not then, as it is not now, an issue.* Moreover, Defendants misstate the application of the law to the facts in *Durga*—the Court explicitly held, as recognized in *O'Neill*, that *Younger* abstention did not warrant dismissal, despite the fact that *Durga* chose to voluntarily withdraw from his Superior Court hearing, because the appeals process that *Durga* initiated pursuant to N.J.S.A. 2C:58-3(d)—the same process at issue here—*is a remedial process*. *Durga*, 2011 U.S. Dist. LEXIS at *17-18.

Finally, related to standing, Defendants argue, without any meaningful analysis, that Rachlin's withdrawal from the optional, *remedial* State appeal "broke the causal chain." (Def. Br. at 15). Since Rachlin was entirely within his rights to

7

forego an appeal altogether or subsequently withdraw his appeal and file the present action, this argument too should be rejected.

### B. Defendants' Erroneous Interpretation of New Jersey Law: The Requirement that an Applicant For a Permit to Carry a Handgun Submit to a Hearing in New Jersey Superior Court, Cited by Defendants, Is Irrelevant to The Issues of Standing or Abstention in This Case Since Rachlin Is an Applicant for a FID Card

The requirements for obtaining a permit to carry a handgun in New Jersey are significantly more stringent than those for obtaining an FID card. Even if an application to carry a handgun is initially approved by the issuing authority, the applicant *must* submit to a hearing in Superior Court. N.J.S.A. § 2C:58-4(d) ("If the application has been approved . . . the applicant *shall* forthwith present it to the Superior Court….") (emphasis added); *see also Almeida v. Conforti*, 2017 U.S. Dist. LEXIS 21817, at *22, 24 n.3 (D.N.J. Feb 14, 2017) ("[T]he administrative action here was not a final determination . . . . As a matter of law . . . [plaintiff] *had* to go to Superior Court to obtain a permit.") (emphasis in original).

Yet, Defendants inexplicably construct a significant portion of their argument around *Almeida*, which involved an application for a permit to carry a handgun. Def. Br. at 11, 13 (citing *Almeida*, 2017 U.S. Dist. LEXIS 21817). There, the plaintiff withdrew from the *mandatory* court review process, and thus "destroyed the possibility that the Superior Court might grant his application and resolve the issue without expenditure of federal judicial resources." *Id.* at *24. Thus, it is clear that

8

the outcome in *Almeida* was informed by the peculiar nature of the carry permit process. This Court should not entertain Defendants' misguided attempt to wrongly patch together an argument based on a fundamentally different regulatory scheme.

**II.** **Rachlin is Likely to Prevail on His Meritorious Second Amendment Claims**

    **A. Defendants' Arguments About the Constitutionality of New Jersey's Comprehensive Firearms Regulations and Restrictions are Irrelevant Because This is Not a Facial Challenge to Those Laws**

Defendants argue that the challenged statute is presumptively valid based on *Heller's* list of presumptively lawful regulatory measures. (Def. Br. at 19-21, 23-24) (citing *District of Columbia v. Heller*, 554 U.S. 570, 626-627 (2008)). This argument is irrelevant because this is not a facial challenge and the *only* issue in this lawsuit is whether N.J.S.A. 2C:58-3(c)(5) is constitutional *as applied*—*i.e.*, whether Baumann has applied this statute in a constitutional manner to Rachlin.

    **B. Rachlin's As-Applied Second Amendment Claims are Meritorious**

    *i.*    *Rachlin is Likely to Prevail on the Merits of His Second Amendment Claims Because Defendants' Conduct is Categorically Unconstitutional*

Now that Defendants have revealed the contents of their investigative file (Def. Ex. A), it is even more evident that Defendants' conduct is categorically unconstitutional because they have completely denied Rachlin, who is not prohibited from exercising his Second Amendment rights, from acquiring firearms for self-defense in the home. And thus, as in *Heller*, Defendants' conduct does not even

9

require tiered scrutiny-based analysis because the Second Amendment "elevates" the right of self-defense "above all other interests," and infringements upon this "core protection" must be held unconstitutional categorically, not "subjected to a freestanding 'interest-balancing' approach." *Heller*, 554 U.S. at 634–635; *see also Binderup v. AG of the United States*, 836 F.3d 336, 364 (3d Cir. 2016) (Hardiman, J., concurring).

### ii. To the Extent the Court Applies Tiered Scrutiny Analysis, the Proper Standard for Review is Strict Scrutiny, Under Which Rachlin is Likely to Prevail on the Merits of His Second Amendment Claims

Should tiered scrutiny be found to apply, in order to determine the appropriate standard of review, the Third Circuit inquires "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If it does, the law is evaluated under some form of means-end scrutiny. *Id*. Acquiring firearms clearly falls within the scope of the Second Amendment's guarantee. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)). Strict scrutiny is required whenever a law "impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

Given the sheer volume of investigative and medical evidence *provided by Defendants* (<u>Def. Ex</u>. A) demonstrating that Rachlin is constitutionally entitled to an

FID card, (<u>Def. Ex</u>. A), if this Court applies tiered scrutiny, the proper standard for review is strict scrutiny. As Rachlin's right to acquire firearms falls squarely within the scope of the Second Amendment's guarantee, Defendants cannot show how Baumann conditioning Rachlin's receipt of an FID card upon submission to a clinical psychological evaluation survives strict scrutiny.

### iii.     Even Under Intermediate Scrutiny, Rachlin is Likely to Prevail on the Merits of His Second Amendment Claim

The lack of meaningful tailoring by Baumann also renders his conduct unconstitutional under intermediate scrutiny, which requires at least "a means narrowly tailored to achieve the desired objective." *Bd. of Trs. v. Fox,* 492 U.S. 469, 480 (1989). Even when presented with the totality of the investigative and medical records, Baumann reversed his original approval of February 26, 2021, rejected the letter from Jordan Faiman, and persisted in requiring that Rachlin be screened by a clinical psychologist, all without any indicia of a threat to public safety.

As discussed at length in Rachlin's accompanying Reply Declaration, review of the medical records from Rachlin's voluntary admission to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ shows that Baumann's determination to condition Rachlin's ability to keep and bear arms on Rachlin's submission to a clinical psychological evaluation, and thus denying him his Second Amendment rights, (i) lacks any objective medical or scientific basis, (ii) contradicts the recommendation of Baumann's own investigating officer in FTPD ("I do not believe

that Rachlin amounts to a threat to public health, safety and welfare under statute . . . I recommend Rachlin be approved for a [FID] card….” (*See* <u>Def. Ex.</u> A at 9-11)), and (iii) even contradicts Baumann's previous determination of February 26, 2021 to approve Rachlin's FID card application. Based on Defendants' own investigative file, it is now a matter of indisputable fact that Rachlin, having been voluntarily admitted ███████████ , ██████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ ██████████████ ███ ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████ <u>Def. Ex. A</u> at 31, 33, 34). Just to cite one of multiple such examples from the ████████ records: ███████████████████████████

███████████████████████████████████████████████████████

.” (<u>Def. Ex. A</u> at 34). (Emphasis added).

In another example from ███████████████████████████████████

███████████████████ ██████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ These

findings are consistent with the 2021 finding of licensed professional counselor

Jordan Faiman, who determined that Plaintiff "is not currently a danger to himself

and/or others." (Pl. Ex. 3 [Letter from Jordan Faiman dated March 19, 2021] – ECF

#10; *see also* Def. Ex. A. at 41).

    Notwithstanding the complete backfire of their use of the ██████████████,

Defendants' attempt to portray Plaintiff as dangerous by other means, speciously

pointing to three "past interactions with police" (Def. Br. at 1), without ever

explaining how any of these interactions—none of which involved criminal activity,

threats, violence, or an arrest—are relevant to Plaintiff's fitness for an FID card.

These three sensationalized "interactions with police" were in reality: (i) his

voluntary transport to ████████ by FTPD "w/o incident for ████████ eval."

following a "*verbal* domestic btwn parents and ████████ son" involving "no

weapons." (Def. Ex. A. at 21 [May 20, 2017 FTPD police report]). (Emphasis

added), (ii) an incident in which Rachlin was the alleged *victim*, having called 911

after his mother slapped him, and (iii), a routine traffic stop in which an officer issued

Rachlin a summons for speeding. (Def. Br. at 4; Def. Ex. At 10).

    In an attempt to create something out of nothing to justify their

unconstitutional actions, Defendants further urge that Rachlin should not be issued

an FID card because "other risk factors that may be insufficient in isolation may

disqualify an applicant 'in conjunction with' the public safety factor." (Def. Br. at 26) (internal citations omitted). But Defendants cite to cases involving extreme and dangerous behaviors easily distinguishable from Rachlin's case. *State v. Freysinger,* 311 N.J. Super. 509 (App. Div. 1998) (defendant was a habitual drunkard, struck his girlfriend with a car, and was convicted of driving under the influence of alcohol);[1] *State v. Cordoma*, 372 N.J. Super. 524 (App. Div. 2004) (defendant had been the subject of a temporary restraining order);[2] *In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.*, 2019 N.J. Super. Unpub. LEXIS 550 (App. Div. 2019) (appellant diagnosed with Intermittent Explosive Disorder, threatened to kill teachers, principal, and other students, and lunged for police officer's firearm); *In re D.P.'s Application for a Firearms Purchaser Identification Card*, 2021 N.J. Super. Unpub. LEXIS 769 (App. Div. May 3, 2021) (appellant threatened great-grandmother with a butter knife, diagnosed with impulse control disorder, and failed to disclose material information); *In re J.D.*, 407 N.J. Super. 317 (Law Div. 2009) (applicant involuntarily confined to psychiatric hospital and diagnosed with schizophreniform disorder). Defendants' own investigation and the ▓▓▓▓▓ records confirm Rachlin's conduct is far removed from the facts of those cases.

---

[1] Habitual drunkards are disqualified from obtaining an FID card. N.J.S.A. 2C:58-3(c)(2).

[2] Domestic violence is also disqualifying. N.J.S.A. 2C:58-3(c)(6) and (8).

Defendants cannot show how Baumann's actions to deny Rachlin's FID is anything other than unconstitutional under even intermediate scrutiny.

## III. Defendants' Fourteenth Amendment Arguments Are Irrelevant

Defendants also argue that Plaintiff "fails to establish an underlying cause of action for a violation of procedural due process rights under . . . the Fourteenth Amendment because there is an adequate state created process that Rachlin failed to pursue." (Def. Br. at 21). Rachlin's Complaint does not contain any such cause of action; the Fourteenth Amendment is relevant here only for the purposes of incorporation. *McDonald v. City of Chicago,* 561 U.S. at 778, 791. Furthermore, Rachlin was not required to pursue the "state created process."

## IV. Conclusion

The Court should grant Plaintiff's motion in its entirety.

Dated: October 23, 2021        Respectfully submitted,

<u>s/ Edward A. Paltzik</u>
JOSHPE MOONEY PALTZIK LLP
1407 Broadway, Suite 4002
New York, NY 10018
(212) 344-8211
epaltzik@jmpllp.com
*Attorneys for Plaintiffs*