# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVI ALEXANDER RACHLIN,<br><br>Plaintiff,<br><br>-against-<br><br>GEORGE K. BAUMANN, in his official capacity as Chief of Police of the FREEHOLD TOWNSHIP POLICE DEPARTMENT and FREEHOLD TOWNSHIP,<br><br>Defendants. | HON. FREDA L. WOLFSON, U.S.D.J.<br><br>HON. TONIANNE J. BONGIOVANNI, U.S.M.J.<br><br>CIVIL ACTION No. 3:21-cv-15343<br><br>**CIVIL ACTION**<br><br>**(ELECTRONICALLY FILED)**<br><br>Motion Date: November 1, 2021 |

## REPLY DECLARATION OF AVI ALEXANDER RACHLIN IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

1. I, Avi Alexander Rachlin, am the Plaintiff in the above-titled action. I am over the age of 18, have personal knowledge of the facts and events referred to in this Declaration, and am competent to testify as to the matters stated below.

2. I am a resident and citizen of the United States, specifically, Freehold Township, located in Monmouth County, New Jersey.

3. I submit this Reply Declaration, together with the accompanying Reply Brief, in order to draw the Court's attention to the deliberately misleading presentation in Defendants' "Brief in Opposition to Plaintiff's Motion for a Preliminary and Permanent Injunction" dated October 18, 2021. ("Def. Br." - ECF

1

#21). Defendants' misdirection includes glaring omissions of material facts and misleading use of irrelevant or out-of-context facts.

4. Defendants' presentation is smoke and mirrors designed to misdirect the Court's attention from the straightforward problem for which I seek relief: I am not disqualified in any respect from engaging in the *unconditional* exercise of my Second Amendment right to keep and bear arms—I have: (i) never been arrested or convicted of a crime, (ii) never been involuntarily confined or committed to any mental or psychiatric institution, (iii) never used illegal drugs or abused alcohol, and (iv) as objectively demonstrated by Defendants' *own* exhibit (their investigative file, which includes my medical records) I am not now and have never been in any way dangerous to myself or others—yet Defendants insist that my ability to exercise my Second Amendment right to keep and bear arms is *conditional*. They will not let me acquire a firearm unless I submit to their baseless and punitive condition that I undergo clinical psychological screening. I refuse to and should not be required to submit to this condition.

5. Further eroding their credibility, Defendants make multiple "handgun" references and appear to structure much of their argument structure around handgun-related issues and carry-related issues, despite the fact that I am not an applicant for a handgun purchase permit or a permit to carry a handgun. (*See* Def. Br. at 9, 17, 28).

    **I.**     **Defendants' Omissions of Material Facts**

6. Defendants' presentation includes redacted excerpts from the Freehold Township Police Department Investigative Record relating to my application for a Firearms Purchase Identification ("FID") card. (Def. Ex. A. - ECF # 21-2).

7. Initially, I note that Defendants' presentation, riddled with contradictions and inconsistencies, also disturbingly contains at least one document of highly questionable authenticity and containing categorically false assertions with no basis in reality. (See Def. Ex. A at 25). This document, which appears to be an undated and redacted request for medical records sent by the Freehold Township Police Department (the "FTPD") to ▮▮▮▮▮▮▮▮▮▮ makes reference to a purported ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮" Due to the redactions, I do not know who authored or created this bizarre document, but I question whether this document even relates to my FID card application, or whether the FTPD maliciously (or at best mistakenly) inserted this reference into my investigative file in an effort to smear me, or whether this information simply came from another applicant's file, because I have never ▮▮▮▮▮▮▮▮▮▮. This reference is categorically false and has no basis in any medical record or any other source. This is merely one of many aspects of Defendants' presentation that suggests they lack credibility.

3

8.      Turning to the merits, Defendants mention in passing, as if meaningless, that the FTPD's investigating officer recommended *issuance* of my FID card on March 2, 2021, subject to Defendant George K. Baumann's ("Baumann") final approval. Def. Br. at 1. Defendants further contend that "Baumann's review found serious concerns . . . if [my] application was approved without assurances from a clinical psychologist." *Id*.

9.      Defendants' contention that Baumann only developed "serious concerns" after March 2, 2021 is contradicted by Baumann's own conduct. As set forth in the Complaint (ECF #1), and unmentioned by Defendants in their Brief, Baumann called me on February 26, 2021. During this call, he told me that my FID card application was "approved" and "good to go," and that I should wait a few days for the FTPD to finish up the paperwork and then I could pick up my FID card. Baumann also revealed that, in sum and substance, "we were thinking about requesting that you be screened but ultimately determined your issues were very minor and so long ago." Notably, despite having every opportunity to submit a Declaration from Baumann, Defendants did not do so and do not contest that this conversation happened, nor do they contest the substance of this conversation. At the time this conversation occurred (February 26), Baumann and his investigating officer had access to all of the mental health and other records that supposedly gave Baumann "serious concerns" one week later. A fax cover sheet ▇▇▇▇▇▇

4

confirms that on February 16, 2021 the FTPD received the records from my ▇▇▇ ▇▇ voluntary admission (Def. Ex. A. at 23).

10. Also unmentioned by Defendants is the unequivocal nature of the investigating officer's recommendation to Baumann in favor of issuance of the FID card:

> While firearms ownership requires compliance with numerous laws in New Jersey, I do not believe Rachlin amounts to a threat of public health, safety and welfare under statute 2C:58-3(5). Despite his defiance, *Rachlin has no criminal history. He has never made threats to harm people or property in any documented law enforcement incident, hospital setting, or in his posts online*. It is my opinion that his defiant actions are to achieve attention or control. In summary, despite the above, I recommend Rachin [sic] be approved for a firearms purchaser identification card pending supervisor and administrative review. (Def. Ex. A at 11-12). (Emphasis added).

11. Defendants also omit crucial facts about my voluntary mental health admission to ▇▇▇▇▇▇, likely because these facts do not fit their false narrative that I am a danger to myself or others.

12. The records of my ▇▇▇▇▇▇ voluntary admission to ▇▇▇▇▇▇— which I had never seen prior to Defendants' submission of these records as part of Def. Ex. A, but which Baumann and the FTPD had seen when he called me on February 26, 2021—contain multiple notations that completely contradict Defendants' theory of the case. I have now reviewed these records in detail, and indeed, these records—far from supporting Defendants' arguments—show that during my admission, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████

████ ███ ██ █ ██ █ ████ ████████ ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██ ████████████████████████████████████Michael Chieco, M.D.

e██████████████████████████████████████████████████

████████████████████████████ *Id*.

15. The ████████ords also reflect that ████████ by Mental Health Therapist ████████████ during my visit on ████████ *Id*. at 33.

16. █████████████████████████████████████████████

████████████████████████" *Id*.

17. █████████████████████████████████████████████

██████████████████████████:

████████████████████████████████████████

█

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

18.   ███████████████████████████████████

███████████████████████████████████ *Id*.

19.   Under an entry entitled "███████████████████████████,

███████████ ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ *Id*. at 34.

(Capitalization in original).

20.   Perhaps most notably, under an entry entitled ███████████████,

███████████ ██████████████████████ █████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████"

(Def. Br. at 4).

21.   Ultimately, I was discharged that same day with a diagnosis of

████████████████████ *Id*. at 33.

**II.   Defendants' Misleading Use of Irrelevant or Out-of-Context Facts**

---

[1] Chuni Kansagra, M.D. *See Id*. at 39.

7

22. As part of their disingenuous effort to portray me as dangerous, Defendants refer to three "past interactions with police" (Def. Br. at 1) without explaining how these interactions—none of which involved criminal activity, threats, violence, or an arrest—are relevant to my fitness for an FID card. Defendants describe the first such interaction as follows: "When Rachlin was ▮▮▮▮, he contacted Long Branch Police to report his mother slapped him." Id. at 4. Defendants offer no explanation as to how an incident in which I was the alleged *victim* could be a disqualifying factor on a firearms application.

23. The second police interaction described by Defendants occurred on ▮▮▮▮, the same day I was voluntarily admitted to ▮▮▮▮: "Rachlin's mother called 911 to report an altercation between ▮▮▮▮ Rachlin and his father. Rachlin was transported to ▮▮▮▮ for a mental health evaluation." Id.

24. While this is accurate, Defendants fail to explain how *any* of the events ▮▮▮▮ are relevant to my FID application. While Defendants attempt to sensationalize these events by claiming that I had an "altercation" with my father and calling attention to my alleged attempt to "rewire the outlets" in my room (See Def. Br. at 4; Def. Ex. A at 20 ▮▮▮▮]), the FTPD's own police report succinctly reveals this incident for what it really was: a "*verbal domestic btwn parents and ▮▮▮▮ son*" involving "no weapons," after which I

8

was transported ▮▮▮▮▮▮ e "w/o incident for mental health eval." (<u>Def. Ex</u>. A. at 21 [May 20, 2017 FTPD police report]) (emphasis added).

25. The third police interaction referenced by Defendants was a traffic stop by the Englishtown Police Department (<u>Def. Br</u>. at 4; <u>Def. Ex</u>. A. at 10), in which the officer issued me a summons for speeding. Although this was a routine traffic stop that concluded without incident, Defendants attempt to portray it as an example of my supposed opposition to authority, merely because I politely requested that the officer explain why he stopped me, and did not provide identification until he told me that the stop was for alleged speeding. (*See* <u>Def. Br</u>. at 4). Yet Defendants fail to explain why this incident, which did not involve any threats, violence, or an arrest, could be a disqualifying factor on a firearms application. I've posted videos of this traffic stop on *YouTube*: https://www.youtube.com/watch?v=4yU7Q4DQ4D0 and https://www.youtube.com/watch?v=3SPZhKuVyLw.

26. Defendants also highlight two alleged quotes attributed to my mother on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (<u>Def. Br</u>. at 4, 5, 27; <u>Def. Ex</u>. A at 33).

27. Whether or not these quotes attributed to my mother are accurate, they are irrelevant and inflammatory. My mother was quite obviously upset by some of my adolescent behaviors, particularly the content of videos I posted on *YouTube*. (<u>Def. Ex</u>. A at 33). She was exasperated because I "apparently had an answer for everything." *Id*. However, my mother was not then, and is not now, a mental health

9

professional. What *is* relevant, though, is that: ███████████████████

████████████████████████████████████

█████████████, and (b) Jordan Faiman, a licensed professional counselor with whom I had attended weekly sessions during adolescence, conducted a "formal safety assessment" on March 12, 2021 and determined: "[Rachlin] is not currently a danger to himself and/or others. In fact, given his current achievements at secondary school, it seems likely his future is bright." (Pl. Ex. 3 [Letter from Jordan Faiman dated March 19, 2021] – ECF #10; *see also* Def. Ex. A. at 41). Even though Baumann—whom I had publicly criticized—had the ████████████ and Faiman's letter, both of which demonstrated that I presented no danger to myself or others, he nonetheless unconstitutionally conditioned my ability to exercise my Second Amendment right to acquire arms on me submitting to what would be a baseless costly, unnecessary, and punitive clinical psychological evaluation.

    I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States.

_/s/ Avi A. Rachlin_                      October 23, 2021
Avi Alexander Rachlin               DATE