# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVI ALEXANDER RACHLIN, | HON. FREDA L. WOLFSON U.S.D.J. |
| Plaintiff, | |
| | HON. TONIANNE J. BONGIOVANNI, U.S.M.J. |
| -against- | |
| | CIVIL ACTION NO. 3:21-cv 15343 |
| GEORGE K. BAUMANN, Individually and as Chief of Police of the FREEHOLD TOWNSHIP POLICE DEPARTMENT and FREEHOLD TOWNSHIP, | **CIVIL ACTION** |
| | **(ELECTRONICALLY FILED)** |
| Defendants. | Motion Date: December 6, 2021 |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Edward Paltzik
JOSHPE MOONEY PALTZIK LLP
1407 Broadway, Suite 4002
New York, NY 10018
Tel: (212) 344-8211
Fax: (212) 313-9478
epaltzik@jmpllp.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ………………………………………………… 1

BACKGROUND ……………………………………………………………… 3

I.      New Jersey's Statutory and Regulatory Scheme Relating to
        Applications for Firearms Purchase Identification ("FID") Cards…........ 3

II.     Rachlin's Application for a FID Card and The Investigative Record
        Considered by Defendants ……….…………………………………… 6

III.    Defendant Baumann, Contrary to the Findings of Multiple
        Medical and Mental Health Professionals and the
        Recommendation of His Own Investigator, Imposes a
        Policy and Demand Requiring Rachlin to Submit to
        Screening by a Clinical Psychologist In Order to
        Obtain a FID Card ……………………………………………………. 10

ARGUMENT ………..….……..……..……..……..……..……..……..…….…... 15

I.      Rachlin's Complaint States Claims on Which Relief
        Can be Granted …………………………………………………... 15

        A. Rachlin's Complaint States a Claim for Deprivation of His Second
        Amendment Rights on Which Relief Can be Granted ……………….... 15

        B. Rachlin's Complaint States a Claim for Deprivation of His First
        Amendment Rights on Which Relief Can be Granted ……………….... 19

II.     A Hearing in New Jersey Superior Court Reviewing a
        Denial of a Firearms Purchase Identification ("FID") Card
        Application Is Remedial, Not Coercive, and Therefore, as a
        Matter of Law, Rachlin Was Not Required to Exhaust
        Administrative Remedies Prior to Seeking Relief in
        Federal Court …………..……………………………….................... 20

III.    Rachlin's Constitutional Rights Were Clearly Violated ……………… 26

IV.    Defendant Baumann Is Not Entitled to Dismissal Under the Doctrine of Qualified Immunity ………….…………………….. 29

    A. Qualified Immunity Does Not Apply to Rachlin's Claims for Prospective Injunctive and Declaratory Relief ……………………….. 29

    B. Qualified Immunity Does Not Apply to Rachlin's Claims for Civil Damages ……………………………………………………… 30

V.    The Complaint Pleads Facts Sufficient to Establish Municipal Liability ……………………….………………………... 34

VI.    Rachlin Did Not Falsify His FID Card Application……………………. 38

CONCLUSION ……………………………………………………………… 40

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                              <u>Pages</u>

*Almeida v. Conforti*,
    2017 U.S. Dist. LEXIS 21817 (D.N.J. Feb 14, 2017) ……………....….. 37

*Andrews v. Philadelphia*,
    895 F.2d 1469 (3d Cir. 1990) ……………………..…………………... 34

*Antonelli v. New Jersey*,
    310 F. Supp. 2d 700 (D.N.J. Mar. 31, 2004) ……………………...…… 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ………………………………………………… 16

*Bielevicz v. Dubinon*,
    915 F.2d 845  (3d Cir. 1990) ……………………………………… 34, 35

*Black v. Stephens*,
    662 F.2d 181 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982) ……….. 35

*Burton v. Sills*,
    53 N.J. 86 (1968)  ……………………………………………………… 26

*Brennan v. Norton*,
    350 F.3d 399 (3d Cir. 2003) ………………………………………… 35

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985) ………………………………………………… 35

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988)………………………………………………… 35

*DePiano v. Atlantic County*,
    2005 U.S. Dist. LEXIS 20250 (D.N.J. Sept. 2, 2005) ……………….... 20, 21

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ………………………………………….. 3, 27, 31

*Dultz v. Velez*,
    726 F. Supp. 2d 480 (D.N.J. Mar. 30, 2010)…..……………………….. 23

*Durga v. Bryan*,
    2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011) ……………... 24, 25

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) …………………………...................... 4, 27

*Estate of Bailey v. County of York*,
    768 F.2d 503 (3d Cir. 1985) …………………………........................ 35

*Getson v. New Jersey*,
    352 F. App'x. 749 (3d Cir. 2009) ………………………………………… 22

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ………………………………………………………… 31

*Hill v. Borough of Kutztown*,
    455 F.3d 225 (3d Cir. 2006) ………………………………………………… 30

*In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.*,
    2019 N.J. Super. Unpub. LEXIS 769 (App. Div. Mar. 11, 2019) ………... 32

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ………………………………………… 15, 16

*In re D.P.'s Application for a Firearms Purchaser Identification Card*,
    2021 N.J. Super. Unpub. LEXIS 769 (App. Div. May 3, 2021) ……... 33, 40

*In re J.D.*,
    407 N.J. Super. 317 (Law Div. 2009) ………………………………... 29, 33

*In re Rockefeller Ctr. Props. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) …………………………………………… 16

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989) …………………………………………………… 34

*Losch v. Borough of Parkesburg*,
   736 F.2d 903 (3d Cir. 1984)………………………………………………… 35

*Maio v. Aetna*,
   221 F.3d 472 (3d Cir. 2000) ………………………………………………... 15

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ………………………………………………………… 3

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)………………………………………………………… 34

*Monroe v. Pape*,
   365 U.S. 167 (1961) ………………………………………………………… 21

*O'Neill v. City of Philadelphia*,
   32 F.3d 785 (3d Cir. 1994) ……………………………………….. 20, 22, 24, 25, 26

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
   477 U.S. 619 (1986) ………………………………………………… 20, 21, 22

*Patsy v. Bd. of Regents*,
   457 U.S. 496 (1982) ………………………………………………… 20, 21, 22

*Patsy v. Florida International University*,
   634 F.2d 900 (5th Cir. 1981) ……………………………………………... 21

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ………………………………………………………… 31

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ………………………………………………… 34, 35, 37

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) ...……………………………………………… 15

*Presbyterian Church (U.S.A.) v. United States*,
   870 F.2d 518 (9th Cir.1989) ……………………………………………… 30

*Salerno v. Corzine*,
    449 Fed. Appx. 118 (3d Cir. 2011) …………………………………... 29, 30

*Teixeira v. Cnty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) ………………………………..…......... 3, 27

*United States ex rel. Ricketts v. Lightcap*,
    567 F.2d 1226 (3d Cir. 1977) ………………………………………… 20, 21

*Wyatt v. Keating*,
    130 F. App'x. 51 (3d Cir. 2005) ………………………………… 22, 23, 24

*Younger v. Harris*,
    401 U.S. 37 (1971) ………………………………………… 20, 22, 23, 25

*Zahl v. Harper*,
    282 F.3d 204 (3d Cir. 2002) ………………………………………… 22

## **Constitutions, Statutes and Rules**

<u>United States Constitution</u>

U.S. Const. amend. II …………………………………………….…… 3

<u>United States Code ("U.S.C.")</u>

18 U.S.C. § 922(g) ………………………………………………… 27

<u>Federal Rules of Civil Procedure ("FED. R. CIV. P.")</u>

FED. R. CIV. P. 12(b)(6) ………………………………………… 1, 2, 15, 38

FED. R. CIV. P. 12(b)(7) ………………………………………….... 1

<u>New Jersey Code Annotated ("N.J.S.A.")</u>

§ 2C:58-3(b) . . . ……………………………………….............. 4

§ 2C:58-3(c) . . . ……………………………………….............. 5

§ 2C:58-3(c)(3) . . . ……………………………………………………….......... 28

§ 2C:58-3(c)(5) . . . ……………………………………………………….. 27, 28

§ 2C:58-3(d) . . . ……………………………………………………….. 6, 23, 24, 25, 36

§ 2C:58-4(d) . . . ………………………………………………………................. 37

New Jersey Administrative Code ("N.J.A.C.")

§ 13:54-1.4(a) . . . ……………………………………………………................. 4

## PRELIMINARY STATEMENT

Plaintiff Avi Alexander Rachlin ("Rachlin" or "Plaintiff") respectfully submits this Brief in Opposition to Defendants' Motion to Dismiss, together with his accompanying Declaration ("Rachlin Decl.") and the Declaration of Edward Paltzik, Esq. with attached exhibits ("Paltzik Decl."), all in Opposition to Defendants' Motion to Dismiss. Defendants submitted a "Brief in Support of Motion to Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7)[1]" dated October 12, 2021 ("Def. MTD Br." - ECF # 19-3), which contains glaring omissions of material facts, misleading use of irrelevant or out-of-context facts, and patently erroneous statements of law—the same problems found in Defendants' "Brief in Opposition to Plaintiff's Motion for a Preliminary and Permanent Injunction" dated October 18, 2021 ("Def. MPI Brief" - ECF # 21).

The Court should not be persuaded by Defendants' use of smoke and mirrors designed to misdirect the Court's attention from three simple realities that define this case: (i) Rachlin, by all objective indicia, including the contents of the Freehold Township Police Department's ("FTPD") *own* Investigative Record—which Defendants submitted as part of their opposition to Rachlin's motion for injunctive relief (Def. Ex. A in Opposition to Plaintiff's Motion for a Preliminary and

---

[1] Oddly, Defendants, despite styling their motion as being brought pursuant to Rule 12(b)(6) and 12(b)(7), do not make any arguments in their Brief relating Rule 12(b)(7). Accordingly, this Brief only addresses issues relating to Rule 12(b)(6).

Permanent Injunction – ECF #21-2), now submit in support of their Motion to Dismiss, albeit in partial form with multiple critical documents omitted (Def. Exs. B, C & D in Support of Defendants' Motion to Dismiss – ECF #19-6), and which Rachlin now also submits as an exhibit in its entirety (Paltzik Decl., Ex. 1)—presents no danger to himself or others, (ii) Rachlin therefore has an *unconditional* right to exercise his Second Amendment right to keep and bear arms, and (iii) Defendants have insisted and continue to insist that Rachlin's ability to acquire firearms is *conditional* (Defendants demand that Rachlin submit to a clinical psychological screening), thereby effectuating a complete deprivation of Rachlin's right to keep and bear arms, since Rachlin refuses to and should not be required to submit to this baseless and punitive condition.

This Court should decide Defendants' Motion to Dismiss solely on the contents of the Complaint itself—accepting Rachlin's detailed allegations as true and viewing those allegations in a light most favorable to Rachlin, as is ordinarily the standard on a Rule 12(b)(6) motion. The focus should be only on these detailed allegations, which clearly establish that Rachlin is entitled to relief. However, even if the Court considers extrinsic documentary evidence, as urged by Defendants, the outcome should be the same. Indeed, bizarrely, Defendants have submitted documentary evidence that actually *corroborates* the allegations in the Complaint. This documentary evidence—Defendants' *own* documents—which Rachlin did not

2

have access to prior to his commencement of this action, further undermines
Defendants' already untenable position and instead demonstrates that Rachlin's need
for relief in the face of Defendants' deprivation of his constitutional rights is urgent
and ongoing. Defendants' documents show that Defendants never had any basis in
law or fact to condition Rachlin's right to keep and bear arms on his submission to
screening by a clinical psychologist and to then deny Rachlin a New Jersey Firearms
Purchase Identification ("FID") Card when he refused to submit to this condition.
Rachlin Decl. at ¶ 5; Paltzik Decl., Ex. 1 (Investigation Record) at 002, 006, 007,
008. Accordingly, Defendants' Motion to Dismiss should be denied in its entirety.

## BACKGROUND

### I.     New Jersey's Statutory and Regulatory Scheme Relating to Applications for Firearms Purchase Identification Cards

The Second Amendment to the United States Constitution guarantees "the
right of the people to keep and bear Arms." U.S. Const. amend. II. The Second
Amendment, as incorporated through the Fourteenth Amendment, prohibits a state
or any political subdivision thereof from infringing on this right. *McDonald v. City
of Chicago*, 561 U.S. 742 (2010). This guarantee includes the right to possess
firearms for self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).
Necessary to the exercise of this fundamental right is the ability to acquire firearms
in the first place. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017)
(quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)) (the "Second

Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms.").

In New Jersey, though, the Constitutional right to possess firearms for self-defense is far from guaranteed; law-abiding citizens like Rachlin must possess a FID Card in order to purchase a rifle or shotgun. N.J.S.A. § 2C:58-3(b) ("No person shall . . . receive, purchase or otherwise acquire . . . a rifle or shotgun . . . unless the purchaser, assignee, donee, receiver or holder . . . possesses a valid firearms purchaser identification card . . . ."). "Any person who knowingly has in his possession any rifle or shotgun without having first obtained a firearms purchaser identification card in accordance with [N.J.S.A. § 2C:58-3] is guilty of a crime of the third degree," (N.J.S.A. § 2C:39-5(c)(1)), which carries a prison sentence of three to five years (N.J.S.A. § 2C:43-6(a)(3)), and a fine of up to $15,000 (N.J.S.A. § 2C:43-3(b)(1)).

Among other application requirements, an applicant must complete the S.T.S. 033 form ("Form 033"), obtainable only "from municipal police departments, State Police stations, and licensed retail firearms dealers. N.J.A.C. § 13:54-1.4(a); *see also* Form 033 (Paltzik Decl., Ex. 4).

Form 033 also requires the applicant to disclose sensitive information regarding mental health treatment. Indeed, Item (24) on the Form queries:

> Have you ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a

temporary, interim, or permanent basis? If yes, give the name and location of the institution or hospital and the date(s) of such confinement or commitment." ("Item 24").

Item (26) on the Form queries:

Have you ever been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition? If yes, give the name and location of the doctor, psychiatrist, hospital or institution and the date(s) of such occurrence. ("Item 26").

Both Items have the choice of a "Yes box or a "No" box for the applicant to check.

Notwithstanding Form 033 and other burdensome prerequisites to acquiring a rifle or shotgun, "[n]o person of good character and good repute in the community in which he lives, and *who is not subject to any of the disabilities* set forth in this section . . . shall be denied a . . . firearms purchase identification card . . . ." N.J.S.A. § 2C:58-3(c) (emphasis added). The "disabilities" provision of N.J.S.A. § 2C:58-3(c) provides, in pertinent part:

No . . . firearms purchaser identification card shall be issued: (1) " To any person who has been convicted of a crime, or a disorderly persons offense involving an act of domestic violence . . . .", (2) "To any drug dependent person . . . any person who is *confined* for a mental disorder to a hospital, mental institution, or sanitarium, or to any person who is presently an habitual drunkard;", (3) "To any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms, to any person who has ever been *confined* for a mental disorder, or to any alcoholic . . . to any person who knowingly falsifies any information on the application form for a . . . firearms purchaser identification card ", (4) "To any person under the age of 18 years . . . .", (5) *"[t]o any person where the issuance would not be in the interest of the public health, safety, or welfare*[]," (6) To any person who is subject to a restraining order issued pursuant to the "Prevention of Domestic

5

Violence Act of 1991," . . . prohibiting the person from possessing any firearm;", (7) "To any person who was adjudicated delinquent for an offense which, if committed by an adult, would constitute a crime and the offense involved the unlawful use or possession of a weapon, explosive or destructive device . . . . ", or (8) "To any person whose firearm is seized pursuant to the "Prevention of Domestic Violence Act of 1991," . . . and whose weapon has not been returned. N.J.S.A. § 2C:58-3(c). (Emphases added).

Otherwise, "[t]he chief of police of an organized full-time police department of the municipality where the applicant resides . . . . *shall* upon application, issue to any person qualified under the provisions of subsection c. of this section . . . a firearms purchaser identification card." N.J.S.A. § 2C:58-3(d). (Emphasis added).

## II. Rachlin's Application for a Firearms Purchase Identification Card and The Investigative Record Considered by Defendants

On October 24, 2020, Rachlin, using the New Jersey Firearms Application & Registration System, submitted his completed application for a FID Card, including Form 033, to his issuing authority, Defendant George K. Baumann ("Baumann"), Chief of Police of the FTPD, a municipal subdivision of Defendant Freehold Township (the "Township"). Rachlin Decl. at ¶ 6. Baumann is the highest official in the Township responsible for setting and enforcing policy with respect to FID cards, since, as the Chief of the FTPD, Baumann has final decision-making authority over FID card applications. N.J.S.A. § 2C:58-3(d).

Rachlin has never "been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition . . . ." *See*

6

Paltzik Decl., Ex. 4 (Form 033, Item 24); Rachlin Decl. at ¶ 7. However, Rachlin,

intent on providing full and honest disclosure, checked the "Yes" box for Item 24.

Rachlin Decl. at ¶ 8. Rachlin truthfully disclosed that when he █████████████

███████████ he received a voluntary mental health █████████████

█████████████ at the request of his parents and was

evaluated, cleared, and discharged after three hours. *Id*. He provided the following

supplemental response to Item 24:

> To the best of my memory, it was 1 time, 4 years ago for a period that
> lasted 3 hours. This was at the request of my █████████████
> ███████████ he FTPD transported me in the back of the cruiser. I was
> not handcuffed or restrained. I do not remember the exact date this
> occurred. Paltzik Decl., Ex. 5 (Rachlin's supplemental responses to
> Form 033); Rachlin Decl. at ¶ 8.

The FTPD Investigative Record submitted by Defendants, which includes an FTPD

police report dated █████████████████████████████

███████████████ medical records obtained by the FTPD, confirms the

veracity of Rachlin's supplemental response. Rachlin Decl. at ¶ 9.

The police report indicates that Rachlin was transported to █████████████

FTPD "w/o incident for mental health eval" following a "*verbal* domestic btwn

parents and ███████████ son" involving "no weapons." Paltzik Decl., Ex. 1

(Investigation Record) at 017-021; Rachlin Decl. at ¶ 10. As reflected in the police

report—and consistent with Rachlin's recollection—there is no indication that

Rachlin was subjected to force or restrained in any way when transported to

███████████ *Id*.

The records of ███████████████ voluntary admission to ███████████

contain ████████████████████████████████████████████

██. Paltzik Decl., Ex. 1 (Investigation Record) at 022-039; Rachlin Decl. at ¶ 11.

First, under an entry by ██████████████████████     ██████████████████

██████████████", there are the following notations:

(a) "███████████████████████████████████████████████"

Paltzik Decl., Ex. 1 (Investigation Record) at 028 (capitalization in



The ████████ records also reflect that Rachlin was evaluated by ████████

████████████████████████████ during his visit on ████████████

Paltzik Decl., Ex. 1 (Investigation Record) at 032; Rachlin Decl. at ¶ 14.████████

wrote: ████████████████████████████████████████████

█████████ ” Paltzik Decl., Ex. 1 (Investigation Record) at 032 (emphasis added);

Rachlin Decl. at ¶ 14. ██████ also recorded ██████████████████████

█████████████████████████████:



Paltzik Decl., Ex. 1
(Investigation Record) at 032 (emphasis added); Rachlin Decl. at ¶ 14.

████ ████████████████████████, wrote ███████████████

████████████████████” Paltzik Decl., Ex. 1 (Investigation Record) at

032 (emphasis added); Rachlin Decl. at ¶ 15. Under an entry entitled "██████

████████████████, ████ wrote:

(a) ██████████████████████████████

██████████████████████████.” Paltzik Decl., Ex. 1 (Investigation Record) at 033
(capitalization in original); Rachlin Decl. at ¶ 15.

Perhaps most notably, under an entry entitled "████████████████",

████ noted: "T██████████████████ ████████████████

███████████████████████████████

██████████████████" Paltzik Decl., Ex. 1 (Investigation Record) at 033

---

[2] Chuni Kansagra, M.D. *See Id.* at 038.

9

(capitalization in original, emphasis added); <u>Rachlin Decl</u>. at ¶ 16. Even Defendants

concede that "███████████████████████████████████████████

██████████" <u>Def. MPI Brief</u> at 4. ███████████████████████████████

██████████████████████████████████████" <u>Paltzik Decl</u>., <u>Ex</u>. 1

(Investigation Record) at 033; <u>Rachlin Decl</u>. at ¶ 17.

Additionally, Rachlin, intent on providing full and honest disclosure, also

checked the "Yes" box for Item 26 and provided the following supplemental

response:

> To the best of my memory, it was 1 time, 4 years ago, ████████
> ██████████ took the drug for less than 3 months. Looking back now I don't think I
> was actually ██████████████ I have not dealt with any medical
> professional related to my mental health in over 4 years. I do not
> remember the exact date this occurred or who the Dr. was. <u>Paltzik</u>
> <u>Decl</u>., <u>Ex</u>. 5 (Rachlin's supplemental responses to Form 033); <u>Rachlin</u>
> <u>Decl</u>. at ¶ 18.

### III. Defendant Baumann, Contrary to the Findings of Multiple Medical and/or Mental Health Professionals and the Recommendation of His Own Investigator, Imposes a Policy and Demand Requiring Rachlin to Submit to Screening by a Clinical Psychologist In Order to Obtain a FID Card

The FTPD received Rachlin's medical records from ██████████ on February

16, 2021 (<u>Paltzik Decl</u>., <u>Ex</u>. 1 (Investigation Record) at 022) and then completed its

background investigation of Rachlin on February 26, 2021, including his "██████

██████████." <u>Def. Ex. B</u> & <u>Paltzik Decl</u>., <u>Ex</u>. 2 (Application Overview); <u>Rachlin</u>

<u>Decl</u>. at ¶ 19. That same day, Baumann called Rachlin. <u>Rachlin Decl</u>. at ¶ 20. During

this call, Baumann told Rachlin that the FID Card application was "approved" and "good to go," and that Rachlin should wait a few days and he could then pick up his card. *Id.* Baumann also revealed that, in sum and substance, "we were thinking about requesting that you be screened but ultimately determined your issues were very minor and so long ago." *Id.*

On March 2, 2021, FTPD investigating officer Joe Winowski recommended that Baumann approve Rachlin's application for a FID card. Def. Ex. B; Paltzik Decl., Ex. 1 (Investigation Record) at 001, 009-011; Paltzik Decl., Ex. 2 (Application Overview); Rachlin Decl. at ¶ 21. In a memorandum to Baumann entitled "Administrative Submission," Winowski wrote, *inter alia*:

> While firearms ownership requires compliance with numerous law in New Jersey, *I do not believe Rachlin amounts to a threat to public health, safety and welfare* under statute 2C:58-3(5). Despite his defiance, Rachlin has no criminal history. *He has never made threats to harm people or property* in any documented law enforcement incident, hospital setting, or in his posts online, it is my opinion that his defiant actions are to achieve attention or control. In summary, despite the above, *I recommend Rachin [sic] be approved for a firearms purchaser identification card* pending supervisor and administrative review. Paltzik Decl., Ex. 1 (Investigation Record) at 010-011. (emphasis added); Rachlin Decl. at ¶ 21.

However, the next day, March 3, 2021, Baumann called Rachlin and reversed course. Rachlin Decl. at ¶ 22. Without providing any basis for the about-face, Baumann, who had been the subject of recent public criticism by Rachlin (*Id.* at ¶ 44), informed Rachlin that he was now concerned that Rachlin was a danger to

11

himself, and that the prior verbal approval was rescinded. *Id*. at ¶ 22. Compounding the situation, Baumann imposed a policy and demand upon Rachlin requiring him to obtain "clearance" from a "mental health professional" that Rachlin is not a danger to himself or others. *Id*. at ¶ 23. When Rachlin asked Baumann why he had changed his mind, Baumann responded: "I'm not arguing with you." *Id*. ¶ 24.

The next day, Baumann delivered a letter to Rachlin, writing, *inter alia*:

As per our conversation on March 3, 2021, in order for me to approve you obtaining a NJ Firearms ID card, I am requesting that you get evaluated and screened by a clinical psychologist. I am requiring that you get clearance from that doctor stating that you owning or possessing a firearm will not cause any safety issues to yourself or the general public. Paltzik Decl., Ex. 1 (Investigation Record) at 008; Rachlin Decl. at ¶ 25.

In spite of the unconstitutional and burdensome nature of Baumann's policy and demand, Rachlin nonetheless made a good faith effort to comply and provide Baumann with further evidence that he was not a danger to himself or others. Rachlin Decl. at ¶ 26. Accordingly, on March 12, 2021, Rachlin met with Jordan Faiman ("Faiman"), a licensed professional counselor who had counseled Rachlin from ████ ████████████████████████████████ at the request of Rachlin's mother. *Id*. at ¶ 27; Paltzik Decl., Ex. 1 (Investigation Record) at 040. Faiman was thus uniquely well-positioned to accurately evaluate Rachlin. Rachlin Decl. at ¶ 27.

Having evaluated Rachlin, Faiman drafted a letter dated March 19, 2021 summarizing his evaluation findings. Paltzik Decl., Ex. 1 (Investigation Record) at

040; <u>Rachlin Decl</u>. at ¶ 28. As to Faiman's earlier counseling of Rachlin, Faiman

noted that "safety concerns weren't indicated in the original referral." *Id*. Regarding

the new evaluation, Faiman wrote, *inter alia*:

> Further, during the 03/12/2021 tele-counseling session, *I was able to conduct a formal safety assessment with Mr. Rachlin, to which I was able to determine he is not currently a danger to himself and/or others.* In fact, given his current achievements at his secondary school, it seems likely *his future is bright.* <u>Paltzik Decl</u>., <u>Ex</u>. 1 (Investigation Record) at 040 (emphasis added); <u>Rachlin Decl</u>. at ¶ 28.

On March 19, 2021, Rachlin submitted Faiman's letter to Baumann. <u>Rachlin</u>

<u>Decl</u>. at ¶ 29. That same day, Baumann delivered a letter to Rachlin rejecting

Faiman's letter and insisting that Rachlin submit to the unconstitutional requirement

of obtaining an evaluation by a clinical psychologist. <u>Paltzik Decl</u>., <u>Ex</u>. 1

(Investigation Record) at 007; <u>Rachlin Decl</u>. at ¶ 29. The letter stated:

> On March 4, 2021, I had sent you a letter requesting that you get evaluated and screened by a clinical psychologist in order for me to approve your firearms application. Today, March 19, 2021, I received a letter from Jordan Faiman Licensed Professional Counselor and Approved Clinical Supervisor. Unfortunately, this did not fulfil [sic] my request of being evaluated and screened by a clinical psychologist. In addition to getting evaluated and screened, I requested a letter from the clinical psychologist to clearly indicate that you owning or possessing a firearms [sic] will not cause any harm to yourself or the general public.

> Until I receive these assurances, I will be unable to approve your application for a NJ Firearms ID card. *Id*.

Baumann also left a voicemail for Rachlin on March 19, 2021 stating the following:

> Good morning Avi, this is Chief Baumann, Freehold Township Police Department. Um…the letter I sent you, you have to be evaluated and screened by a clinical psychologist. This guy here is nothing but a professional counseling services [sic], and he don't have the uh…he is not a clinical psychologist. Now, I don't want to just deny your application I want to be fair here and give you an opportunity, but what I sent you is not what you gave back here. I asked you to go get evaluated and screened by a clinical psychologist and I need it specifically to say that you owning a weapon, a firearms [sic], will not cause any safety issues to yourself or the general public. Alright, if you want to give me a call ███████████████. I'm also going to back this up with a letter sent to your house. Take care. Rachlin Decl. at ¶ 30.

On March 25, 2021, despite the lack of any disqualifying disability in Rachlin's background, the recommendation by Baumann's own investigator to approve the application, and the findings of , plus Faiman), Baumann (having faced additional public criticism from Rachlin three days prior—*see id.* at ¶ 44) denied Rachlin's application for a FID Card, as set forth in an email from the New Jersey Firearms Application & Registration System and also set forth in a letter dated March 26, 2021 stating the following:

> Your Firearms application background investigation has revealed potential grounds to deny your application on the basis of **Public Health Safety and Welfare**.
>
> In accordance with NJSA 2C:58-3C, you have the option of requesting a Pre-Decision Conference with the Chief of Police, prior to a final denial of your application. The purpose of this Pre-Decision Conference is to allow you the opportunity to bring forth any additional

information that may change the status of your application from
potentially being denied.

You are not obligated to have a Pre-Decision Conference, and may
choose not to meet with the Chief of Police. If you choose not to have
a conference, your application denial will be finalized. You will then
receive a letter acknowledging the denial. <u>Paltzik Decl</u>., <u>Ex</u>. 1
(Investigation Record) at 006 (emphasis in original); <u>Rachlin Decl</u>. at ¶
31.

## <u>ARGUMENT</u>

## I.  **Rachlin's Complaint States Claims on Which Relief Can be Granted**

### A. **Rachlin's Complaint States a Claim for Deprivation of His Second Amendment Rights on Which Relief Can be Granted**

"A motion to dismiss made pursuant to Rule 12(b)(6) may be granted only if,
accepting all well-pleaded allegations in the complaint as true and viewing them in
the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Maio v.
Aetna*, 221 F.3d 472, 481-482 (3d Cir. 2000) (quoting *In re Burlington Coat Factory
Sec. Litig*., 114 F.3d 1410, 1420 (3d Cir. 1997)]; *see also Pinker v. Roche Holdings
Ltd*., 292 F.3d 361, 374 n. 7 (3d Cir. 2002) (Courts "accept all factual allegations as
true, construe the complaint in the light most favorable to the plaintiff, and determine
whether, under any reasonable reading of the complaint, the plaintiff may be entitled
to relief.'"). "Dismissal under Rule 12(b)(6) is not appropriate unless it appears
*beyond doubt* that plaintiff can prove no set of facts in support of his claim which
would entitle him to relief." *In re Rockefeller Ctr. Props. Sec. Litig*., 311 F.3d 198,
215-216 (3d Cir. 2002) (internal citations omitted) (emphasis added).

Here, Defendants don't even bother to construct anything even remotely resembling a passable legal argument as to why Rachlin purportedly fails to state a claim for deprivation of his Second Amendment rights. Instead, they offer the Court nearly *two full pages* of boilerplate case law without *any* analysis related to such law. Def MTD Br. at 10-11. For example, they cite to language in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) regarding the "facial plausibility" requirement, but make no affirmative assertion that the Complaint was improperly pleaded or is facially implausible under *Iqbal*. Def MTD Br. at 10.

Defendants attempt to argue that the Complaint should be dismissed on the basis of extrinsic documentary evidence that they claim this "Court should consider … without the need to convert this motion to dismiss into a summary judgment motion." *Id*. at 10. Defendants further assert that "Plaintiffs [sic] cannot reasonably state that they [sic] were unaware of the documents, which are referred to directly and indirectly in the complaint." *Id*. at 11-12. There are three problems with Defendants' argument.

First, ordinarily, a court may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

Second, Plaintiff *was* unaware of the documents utilized by Defendants in their Motion. Two of these documents—the Application Overview (Def. Ex. B), the ████████████████████████████ (Def. Ex. C) are internal FTPD documents that

16

were until now solely in the possession of Defendants and never previously provided to Plaintiff; nor did Rachlin have his ███████ medical records (Def. Ex. D) in his possession prior to commencing this lawsuit (and he was not required to obtain the ████████████ as part of the application process). <u>Rachlin Decl</u>. at ¶ 5.

Third, the extrinsic documentary evidence submitted by Defendants in this action—both in support of their Motion to Dismiss and in opposition to Plaintiff's Motion for a Preliminary and Permanent Injunction—actually corroborates the factual allegations in the Complaint, and thus, to the extent the Court decides to consider this extrinsic documentary evidence on this Motion to Dismiss, Plaintiff welcomes the introduction of this evidence. Indeed, this evidence conclusively establishes that Baumann's decision to condition Rachlin's Second Amendment right to keep and bear arms on Rachlin's submission to a clinical psychological evaluation: (i) lacks any objective medical or scientific basis, and in fact contradicts the findings of *six* medical and mental health professionals who examined Rachlin and determined that he was not dangerous, and (ii) contradicts the recommendation of Baumann's own investigating officer. Thanks to Defendants' evidence, it is now a matter of indisputable fact that Rachlin, having been voluntarily admitted to

███████████████████████████   ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████. Paltzik Decl., Ex. 1

(Investigation Record) at 022-039. Faiman reached the same conclusion following

his March 2021 examination of Rachlin. *Id.* at 040.

Lacking documentation that supports Baumann's determination to deprive

Rachlin of his Second Amendment rights, Defendants attempt to distort and

manipulate the Investigation Record generally and the ████████ medical records

in particular: (i) they gloss over material facts unfavorable to their position (████

█████████████████████████████████████████████████████),

(ii) attempt to mislead the Court by highlighting irrelevant or out-of-context facts

that have no bearing whatsoever on Rachlin's fitness to exercise his Second

Amendment rights, and (iii) deceptively insert into their narrative inflammatory

words that do not actually ███████████████████████████, all in a

desperate effort to attach significance to irrelevant events and misdirect the Court's

attention from Rachlin's well-pleaded claims for relief.

For example, Defendants highlight ████████████████████████

████████████████████████████████████████████████

███████████████████████████. Def. MTD Br. at 8-9.

Whether or not these quotes attributed to Rachlin's mother are accurate, they are

irrelevant red herrings. Rachlin's mother, who was exasperated with her defiant son,

was not then, and is not now, a mental health professional. Rachlin Decl. at ¶ 38.

18

The findings of trained mental health professionals who examined Rachlin, not the opinions of an emotional mother, are the relevant items of information.

In another instance, Defendants highlight the irrelevant fact that ████████
███████████████████████████████████████████████████. <u>Def. MTD Br</u>. at 8. Defendants assert ████████████████████████████████
████████████████ *Id*. (emphasis added). In fact, ████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████. <u>Def. Ex. D</u>. at 4. ████████
████████████████████████. *Id*.



## B. Rachlin's Complaint States a Claim for Deprivation of His First Amendment Rights on Which Relief Can be Granted

Defendants *only* argument in support of dismissal of Rachlin's First Amendment claim—which they note is "predicated upon his Second Amendment rights being violated as a form of retaliation to his speech"—is that the First Amendment claim must fail "since his Second Amendment rights were not violated []." <u>Def. MTD Br</u>. at 18, 21. The Court should reject this argument since, accepting all of the allegations in the Complaint as true, Rachlin has clearly stated a Second Amendment claim upon which relief can be granted, and thus, by Defendants' logic, has also stated a First Amendment claim upon which relief can be granted.

II.     **A Hearing in New Jersey Superior Court Reviewing a
        Denial of a Firearms Purchase Identification Card
        Application Is Remedial, Not Coercive, and Therefore, as a
        Matter of Law, Rachlin Was Not Required to Exhaust
        Administrative Remedies Prior to Seeking Relief in
        Federal Court**

Defendants argue that under *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d

Cir. 1994), *Younger* abstention (*see Younger v. Harris*, 401 U.S. 37 (1971) applies

and the Complaint should be dismissed because Rachlin purportedly failed to

exhaust his administrative remedies. Def. MTD Br. at 13. Yet, Defendants lengthy

analysis framed around *O'Neill* evades the dispositive issue that distinguishes the

case at bar from *O'Neill* and renders *Younger* abstention wholly inapplicable here—

the crucial distinction between remedial and coercive State proceedings.

As recognized in the Third Circuit, the Supreme Court "has stated

categorically that exhaustion is not a prerequisite to an action under 42 U.S.C. §

1983 . . . ." *Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982); *Ohio Civil Rights

Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 n.2 (1986); *see also

United States ex rel. Ricketts v. Lightcap*, 567 F.2d 1226, 1229 (3d Cir. 1977) ("The

general rule in actions under section 1983 is that state remedies need not be

exhausted as a prerequisite to federal jurisdiction."); *DePiano v. Atlantic County*,

2005 U.S. Dist. LEXIS 20250, at *45 (D.N.J. Sept. 2, 2005) (citing *Patsy*, 457 U.S.

596). This rule has been clear since 1961, when the Supreme Court found that

Congress, in enacting the Civil Rights Act, intended that the federal remedy in

section 1983 be "supplementary" to State remedies. *Lightcap*, 567 F.2d at 1229

(citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

The general rule, followed since *Monroe*, holds particularly true when the

State remedy in question is remedial and not coercive in nature. *Patsy* and *Dayton*

*Christian* illustrate the importance of this dichotomy. In *Patsy*, the Court held that

an employee terminated by a Florida university had standing to pursue her gender

discrimination claims despite having bypassed available State remedies. 457 U.S.

501; *see also Patsy v. Florida International University*, 634 F.2d 900, 913 (5th Cir.

1981) (*en banc*) ("Ms. Patsy had access to several administrative grievance

procedures in the State University System."). The Florida State University System

grievance procedures were remedial. *Dayton Christian*, 477 U.S. at 627 n.2. In

*Dayton Christian*, however, the Ohio Civil Rights Commission brought an

administrative proceeding against a Christian school for alleged gender

discrimination under an Ohio statute. The Supreme Court found that the District

Court should have abstained from adjudicating the dispute, in part because "[u]nlike

Patsy, the administrative proceedings here are coercive rather than remedial . . . ."

477 U.S. at 627 n.2.

The Third Circuit has recognized this crucial distinction. Where the City of

Philadelphia held hearings before a newly created traffic bureau to enforce traffic

tickets against the individual plaintiffs, the Court found that plaintiffs' claims were

not properly adjudicated in federal court and abstention under *Younger* appropriate, because the hearings were a form of "*coercive* administrative proceeding . . . initiated by the State in a state forum . . . ." *O'Neill*, 32 F.3d at 788, 791 (emphasis added). The Court noted that "[t]he critical distinction . . . is that *Patsy* involved a *remedial* action brought by the plaintiff to vindicate a wrong which had been inflicted by the State . . . . *Dayton Christian* . . . involved an administrative proceeding initiated by the State." *Id*. at 791 n. 13 (emphasis in original). The enforcement action in *Dayton Christian*, though, "was *coercive* rather than remedial . . . ." *Id*. (emphasis in original).

Other Third Circuit decisions have reinforced this definition of coercive proceedings, that is, proceedings "*initiated by the State*, before a state forum, to *enforce a violation of state law*." *Wyatt v. Keating*, 130 F. App'x. 51, 515 (3d Cir. 2005) (quoting *O'Neill*, 32 F.3d at 791 n.13) (emphasis added); *see also Getson v. New Jersey*, 352 F. App'x. 749 (3d Cir. 2009) (abstention proper where state attorney general filed administrative complaint seeking revocation of doctor's medical license); *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002) (abstention proper where state attorney general initiated disciplinary proceedings against doctor). On the other hand, the Third Circuit has made it clear that the availability of *remedial* State proceedings does not trigger *Younger* abstention or deprive a plaintiff of standing. *See e.g., Wyatt*, 130 F. App'x. at 515 (appeals process initiated

by plaintiff to reinstate license to sell insurance was remedial "because it was *initiated by* [plaintiff] *at his own option*" and thus abstention would have been improper had claims been timely); *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 711-12 (D.N.J. Mar. 31, 2004) (administrative appeals by plaintiffs challenging firefighter test results were remedial and abstention not warranted because plaintiffs were "not attempting . . . an end run around state enforcement efforts."); *Dultz v. Velez*, 726 F. Supp. 2d 480, 495 (D.N.J. 2010) (administrative proceedings challenging denials of public benefits were remedial and abstention not warranted).

In the case at bar, Defendants completely ignore the crucial distinction between remedial and coercive. N.J.S.A. 2C:58-3(d) provides in pertinent part that an individual "aggrieved by the denial of a [FID card] card *may* request a hearing in the Superior Court of the county in which he resides . . . ." (Emphasis added). This hearing can only occur at the applicant's request. Thus, a hearing pursuant to 2C:58-3(d) is not a proceeding initiated by the State to enforce State law, and is therefore plainly remedial and not coercive. Accordingly, Rachlin was free to bypass this optional hearing and vindicate his constitutional rights in federal court, not subject to any exhaustion requirement or *Younger* abstention.

Defendants attempt to salvage their abstention argument by trying to distinguish the case at bar from *Durga v. Bryan*, 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sept. 30, 2011). However, *Durga* is directly on point here and not at all

distinguishable—it stands for the proposition that exhaustion of State remedies is

*not* required in the context of FID card denials. The Court in *Durga* found that the

FID card issuing authority:

> [P]resents no arguments to support that the [FID] application and
> subsequent appeal constitute a coercive proceeding that requires
> exhaustion. Plaintiff attempted to file a state court appeal and
> subsequently filed a complaint in federal court in an attempt to exercise
> his Second Amendment rights, which more closely resembles the sort
> of remedial actions that *O'Neill* explained did not require exhaustion.
> *Durga*, 2011 U.S. Dist. LEXIS at *18

The court in *Durga* concluded that "[f]or purposes of exhaustion, the insurance

licensing requirement at issue in *Wyatt* does not differ materially from the firearms

licensing requirement in this case, and therefore *O'Neill* does not support abstention

in this case." *Id.* (citing *Wyatt*, 130 F. App'x at 514-515) (denying defendants' cross-

motion for summary judgment).

Here, Defendants argue that Rachlin's case "is distinguishable from *Durga*

because [Rachlin] withdrew his request for an initial hearing pursuant to N.J.S.A.

2C:58-3(d)." Def. MTD Br. at 17. This statement represents a gross

misunderstanding of *Durga*—in fact, just like Rachlin, the plaintiff in Durga also

withdrew his request for a hearing pursuant to N.J.S.A. 2C:58-3(d). But the Court

explicitly held, as recognized in *O'Neill*, that *Younger* abstention did not warrant

dismissal, despite the fact that the plaintiff chose to voluntarily withdraw from his

Superior Court hearing, because the appeals process that *Durga* initiated pursuant to

N.J.S.A. 2C:58-3(d)—the same process at issue here—*is a remedial process*. *Durga*, 2011 U.S. Dist. LEXIS at \*17-18.

Finally, even if, *arguendo*, the Court were to apply the three-pronged *O'Neill* analysis[3] to the case at bar, it is clear that the first prong cannot be satisfied because there is no ongoing state proceeding, contrary to Defendants' flawed understanding of *O'Neill*. Although Defendants state that the first prong under *O'Neill* "is automatically met when there is a voluntary withdraw of the state-court remedy" (Def. MTD Br. at 13), they provide no citation for this inaccurate statement of the law. Moreover, Defendants, in disregarding the remedial versus coercive distinction, conveniently cite a misleading shortened version of the holding in *O'Neill*. Def. MTD Br. at 13-14. The full statement of the holding in *O'Neill*, with the portion omitted by Defendants in bold, reads:

> **We therefore hold that state proceedings remain "pending," within the meaning of *Younger* abstention, *in cases such as the one before us, where* a coercive administrative proceeding has been initiated by the State in a state forum**, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action." *O'Neill*, 32 F.3d at 791. (Emphasis added).

_____

[3] In order for *Younger* abstention to apply, (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues. *See* Def. MTD Br. at 13 (citing *O'Neill*, 32 F.3d at 789).

Since the Court in *O'Neill* expressly applied its holding only to coercive administrative proceedings, Defendants cannot extend this holding to cases involving remedial proceedings, such as the matter before this Court, simply because it suits their desired outcome.

## III.    Rachlin's Constitutional Rights Were Clearly Violated

Defendants argue that "Plaintiff's allegation of violation of his Second Amendment rights by being denied his FID unless he submitted to an evaluation by a clinical psychologist is . . . flawed" and therefore that the Complaint must be dismissed for failure to state a claim. Def. MTD Br. at 18-19. In support of this argument, Defendants contend that "[t]he legislative intent behind N.J.S.A. 2C:58-3 and its predecessors has been clearly established by New Jersey State Courts to require the authority responsible for reviewing and issuing FID cards to look into mental health concerns." *Id*. at 19 (citing *Burton v. Sills*, 53 N.J. 86 (1968)). Defendants then point out that "there must even be an investigation into expunged records." *Id*. at 20.

However, here, Rachlin's *as-applied* challenge does not call into question the constitutionality of the requirement that issuing authorities "look into mental health concerns," nor does Rachlin have any expunged records that are at issue. Therefore, Defendants' recitations of these legal points that are not in dispute are irrelevant. Rather, the simple question in this action is whether Baumann's application of

26

N.J.S.A. § 2C:58-3(c)(5) to Rachlin is constitutional. Given that Baumann: (i)

████████████████████████████████████████████████████████

████████s, (ii) ignored his own investigator's recommendation, (iii) ignored

Rachlin's personal characteristics—he has never been arrested or convicted of a

crime, does not use drugs or abuse alcohol, and is a student duly enrolled an

Pennsylvania State University (Rachlin Decl. at ¶ 32), and (iv) even reversed his

own prior determination to approve Rachlin's application, it is clear that Baumann

was presented with, and deliberately disregarded, overwhelming evidence Rachlin

is not disqualified from acquiring firearms under New Jersey or federal law[4]. The

guarantees of the Second Amendment apply to Rachlin *unconditionally*, including

the right to possess firearms for self-defense (*Heller*, 554 U.S. 570, 630 (2008)),

which necessarily includes the ability to acquire firearms in the first place. *Teixeira*,

873 F.3d at 677 (quoting *Ezell*, 651 F.3d at 704). Baumann, then, did indeed deprive

Rachlin of his Second Amendment right to keep and bear arms by reducing this

unconditional right to a *conditional* right that could only be exercised if Rachlin

submitted to a clinical psychological screening.

Moreover, this Court should be aware of Defendants' misleading legal citation

hidden in a parenthetical in their Brief, in which they claim that N.J.S.A. 2C: 58-3(e)

vests issuing authorities with "a *statutory right* to demand a medical doctor or

---

[4] *See* 18 U.S.C. § 922(g).

psychiatrist evaluate an FID applicant." Def. MTD Br. at 20. (Emphasis added).

There is *no* such language in the cited statute, N.J.S.A. 2C: 58-3(e). In fact, the only

reference to a requirement that an applicant must "produce[] a certificate of a

medical doctor or psychiatrist licensed in New Jersey . . . ." is found in N.J.S.A. §

2C:58-3(c)(3), which disqualifies "any person who suffers from a physical defect or

disease which would make it unsafe for him to handle firearms, to any person who

has been confined for a mental disorder, or to any alcoholic" unless the applicant

produces the aforementioned certificate or "other satisfactory proof, that he is no

longer suffering from that particular disability . . . ." *Id*. But Baumann did not deny

Rachlin's application pursuant to N.J.S.A. § 2C:58-3(c)(3); he denied Rachlin's

application pursuant to N.J.S.A. § 2C:58-3(c)(5), which contains no such language

regarding a medical doctor or psychiatrist. Nor could Baumann have denied

Rachlin's application pursuant to N.J.S.A. § 2C:58-3(c)(3)—Rachlin doesn't suffer

from a physical defect or disease, has never been confined for a mental disorder, and

is not an alcoholic. Rachlin Decl. at ¶ 32.

Further struggling to make their argument, Defendants cite to case law that is

entirely irrelevant as to the issue of whether or not Defendants violated Rachlin's

rights. Def. MTD Br. at 20 (citing *In re J.D.*, 407 N.J. Super. 317 (Law Div. 2009)

(in which the Camden County Superior Court held that a court can look into

expunged medical records, including previously expunged psychiatric records of an

applicant that contained a diagnosis of schizophreniform disorder)). There, the applicant had lied about his prior confinement in a psychiatric hospital and diagnosis of schizophreniform disorder. *Id.* Here, Rachlin does not have any expunged mental health records and was never confined for a mental disorder. Defendants' hodgepodge of inapplicable case law and legislative history, and imaginary "statutory rights" do not change the fact that an issuing authority's discretion is not unlimited; Baumann cannot require a non-dangerous person who is not disqualified from keeping and bearing arms to arbitrarily submit to an evaluation by a clinical psychologist in order to exercise his Second Amendment rights.

## IV.  Defendant Baumann Is Not Entitled to Dismissal Under the Doctrine of Qualified Immunity

Defendants once again cite boilerplate case law without connecting the cited law to the facts of this case. (Def. MTD Br. at 22-24). Their arguments about qualified immunity fail for two reasons.

### A. Qualified Immunity Does Not Apply to Rachlin's Claims for Prospective Injunctive and Declaratory Relief

First, "it is well-established that qualified immunity *does not bar actions for prospective relief*, such as an injunction or declaratory relief." *Salerno v. Corzine*, 449 Fed. Appx. 118, 123 (3d Cir. 2011) (emphasis added); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) ("[T]he defense of qualified immunity is available only for damages claims—not for claims requesting prospective

29

injunctive relief."); *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.").

Here, the Complaint plainly seeks prospective declaratory and injunctive relief in relation to both the deprivation of Rachlin's Second Amendment rights (*See* Def. Ex. A. (Complaint – ECF #1) at p. 36, ¶¶ 96, 97; p. 37, ¶¶ 99-101; pp. 42-43, ¶¶ (a) - (e) & (g) (seeking declaratory and injunctive relief)) and the deprivation of his First Amendment rights (*See* Complaint at p. 43, ¶ (f)), and thus, under *Salerno*, *Hill*, *Presbyterian Church* and related applicable case law, the doctrine of qualified immunity indisputably does not apply to any of these claims for prospective relief, irrespective of the fact that Rachlin also seeks monetary relief. *See Salerno,* 449 Fed. Appx. at 121, 123 (where Appellants sought damages and non-monetary relief, qualified immunity did not bar claims for non-monetary relief).

## B. Qualified Immunity Does Not Apply to Rachlin's Claims for Civil Damages

Second, "[t]he doctrine of qualified immunity protects government officials 'from liability for *civil damages* insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). (Emphasis added).

Here, although the Complaint also seeks relief in the form of civil damages (*See* Complaint at p. 43, ¶ (h) – (i)), qualified immunity similarly does not apply to these claims for relief because the Complaint alleges in detail that Defendants "violate[d] [Rachlin's] clearly established . . . constitutional rights." *Harlow,* 457 U.S. at 818; *see also, e.g.,* Complaint at p. 35, ¶ 93 ("Moreover, Baumann, by his actions . . . violated Rachlin's clearly established constitutional rights under the Second Amendment . . . ."). Defendants' denial of Rachlin's FID Card application—untethered to any statutory disability—violates the Second Amendment right to keep and bear arms—a right clearly established by the Supreme Court—because the Court instructed in *Heller* that the standard for gatekeeping Second Amendment rights turns on an individual's firearms eligibility status. 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."). Here, as in *Heller*, because Rachlin is not disqualified from the exercise of his Second Amendment rights, a fact that Defendants do not meaningfully dispute, Defendants were clearly required to "permit him to" acquire a firearm for self-defense in his home and other lawful purposes.

Notwithstanding the black-letter law that renders qualified immunity inapplicable to this case—full stop—Defendants offer more red herrings as part of their futile qualified immunity argument in an effort to justify Baumann's conduct.

They cite three cases in which the issuing authority denied FID Card applicants "irrespective of a current psychological report that there [was] no public health, safety and welfare concerns." Def. MTD Br. at 23. The cited cases, all of which involved applicants who: (i) had committed objectively dangerous and extreme acts, (ii) had threatened others, (iii) had been diagnosed with serious mental disorders, (iv) had falsified their applications, or (v) had some combination of (i) through (iv). Thus, they are wholly inapplicable to and easily distinguished from the case at bar. Moreover, these cases are irrelevant to the issue of qualified immunity and their inclusion in Defendants' Brief is yet another attempt to distract from Baumann's unjustifiable conduct.

The first of these red herring cases involved an appeal of a police chief's refusal to issue the appellant a FID card and a handgun permit. *In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A.,* 2021 N.J. Super. Unpub. LEXIS 769 (App. Div. Mar. 11, 2019). Investigation of the appellant revealed that he had a long history of violent and threatening behavior. *Id.* For example, "when appellant was eight years old, he threatened to kill his teacher, other students, and the school principal." *Id.* at *1. When an officer responded to the school, appellant "lunged for the officer's firearm, and grabbed it by the handle." *Id.* at *1-2. The appellant had also been diagnosed with Intermittent Explosive Disorder *Id.* at *2-3.

In the second red herring case, the appellant also challenged denial of a FID card and handgun permit. *In re D.P.'s Application for a Firearms Purchaser Identification Card*, 2021 N.J. Super. Unpub. LEXIS 769 (App. Div. May 3, 2021). At only age nine, the appellant had threatened his great-grandmother with a butter knife, subsequently underwent multi-year treatment at a regional medical center for depressive disorder and impulse control disorder, and falsified his application by answering "no" to both Items 24 and 26 on Form 033. *Id.* at *2-3.

In the third red herring case, the applicant failed to disclose that he had been involuntary confined to a psychiatric hospital and had been diagnosed with schizophreniform disorder. *In re J.D.*, 407 N.J. Super. 317.

Here, at most, Rachlin was a defiant teenager—certainly not a constitutional or statutory basis for deprivation of his Second Amendment rights. He is a law-abiding citizen with no criminal record, has no history of violence or threats, was never confined or committed, did not falsify his application, and in ███████ ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ by Faiman in 2021. Paltzik Decl., Ex. 1 (Investigation Record) at 030, 032, 033, 040; Rachlin Decl. at ¶¶ 32, 33.

## V.      The Complaint Pleads Facts Sufficient to Establish Municipal Liability

The Supreme Court has determined that municipalities are "persons" subject to liability under the Civil Rights Act. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). There are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell*, 436 U.S. 694). The former—policy—is germane to Rachlin's case. "Policy is made when a 'decisionmaker possess[ing] *final authority* to establish municipal liability with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471 (1986)). A plaintiff "must show that an official who has the power to make policy is responsible for . . . the affirmative proclamation of a policy . . . ." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480). The question is whether the policymaker's "decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur . . . ." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

In order to determine who has policymaking responsibility, "a court must determine which official has *final, unreviewable discretion* to make a decision or take an action." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1481) (emphasis added). "Under § 1983, only the conduct of those officials whose

decisions constrain the discretion of subordinates constitutes the acts of the municipality." *Bielevicz*, 915 F.2d at 850 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

"[A]n unconstitutional policy c[an] be inferred from a *single decision* taken by the highest officials responsible for setting policy in that area of the government's business." *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003) (quoting *Praprotnik*, 485 U.S. at 123). "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480.

A plaintiff also bears the burden of proving that the municipal policy in question was the proximate cause of the constitutional injury. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). To establish causation, a plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the municipality's policy and the deprivation of constitutional rights at issue. *Bielevicz*, 915 F.2d at 850-851 (citing *Estate of Bailey v. County of York*, 768 F.2d 503, 507 (3d Cir. 1985); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). Assuming the causal link is not too tenuous, the issue of causation is typically for a jury to decide. *Black v. Stephens*, 662 F.2d 181, 190-191 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982).

Lastly, the policy choice must be deliberate. The Supreme Court has recognized that municipal liability under § 1983 applies only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

Defendants argue that the Township is immune from liability due to Plaintiff's purported "threadbare assertions" as to municipal liability and Plaintiff's purported failure to establish "why an FID applicant being required to submit to clinical psychologist is unconstitutional or indifferent to the Plaintiff's constitutional rights." Def. MTD Br. at 27. However, Rachlin has made more than "threadbare assertions" of municipal liability; for example, the Complaint explicitly alleges:

> Baumann's policy and demand requiring that Rachlin be screened by a clinical psychologist was, and still is, an official policy of the Township, since Baumann was, and still is, the highest official in the Township responsible for setting policy in the area of issuing FID cards." Def. Ex. A. (Complaint) at p. 24, ¶ 58.

In New Jersey, decisions to deny FID card applications by local chiefs of police are final decisions to which, pursuant to N.J.S.A. § 2C:58-3(d), an applicant "aggrieved by the denial of a permit or identification card *may* request" judicial appeal. This statutory framework, in which a local chief of police like Baumann is the final municipal policymaker, differs from the framework relating to an application for a permit to carry a handgun, which *must* in all cases be approved by

the New Jersey Superior Court, *even if* the issuing authority initially approves the application. N.J.S.A. § 2C:58-4(d) ("If the application has been approved . . . the applicant *shall* forthwith present it to the Superior Court….") (emphasis added); *see also Almeida v. Conforti*, 2017 U.S. Dist. LEXIS 21817, at *22, 24 n.3 (D.N.J. Feb 14, 2017) ("[T]he administrative action here was not a final determination . . . . As a matter of law . . . [plaintiff] *had* to go to Superior Court to obtain a permit.") (emphasis in original). Therefore, Baumann was, and still is, the decisionmaker possessing final authority over FID Card applications in Freehold Township.

Additionally, the other required elements for municipal liability are satisfied here. Baumann's determinations to condition approval of Rachlin's FID Card application on screening by a clinical psychologist, and to deny the application when Rachlin refused to submit to this condition, constitute official proclamations, policies, or edicts of Freehold Township, since Baumann's determination was not subject to mandatory review by any higher municipal authority. As well, this single determination is sufficient to constitute an official policy of the Township. *Pembaur*, 475 U.S. at 480. The causal link between this determination and Rachlin's constitutional injury is also clear—but for Baumann's determination, Rachlin would be able to exercise his Second Amendment right to keep and bear arms. Lastly, Baumann's determination was undoubtedly deliberate, and indifferent to Rachlin's right to keep and bear arms, as Baumann well knew that Rachlin would be unable to

acquire firearms without a FID Card, and also knew that there was overwhelming medical and other evidence that Rachlin was not an individual disqualified from acquiring firearms, and was thus entitled to a FID Card.

## VI.    Rachlin Did Not Falsify His FID Card Application

Defendants argue that Plaintiff's failure to disclose his "mental health treatment and/or therapy with Faiman ███████████████ during his █████████ d", which "was not revealed in [his Form 033] application" requires dismissal of Plaintiff's claims. Def. MTD Br. at 29.

As an initial matter, all of Defendants' arguments on this point are inappropriate on a Rule 12(b)(6) motion, where the facts as pleaded are to be accepted as true, and viewed in a light most favorable to the Plaintiff.

Turning to the facts and documentary evidence before this Court, Defendants' argument is desperate and meritless, if not entirely frivolous, for multiple reasons. First, falsification was *not* the basis for Defendants' denial of Rachlin's FID Card application, Defendants did not make any record of alleged falsification during the application process, and Defendants present no new documents or information to support their revisionist falsification claim—in other words, at the time they denied Rachlin's application, Defendants had access to *the exact same* documents and information presently before the Court on this Motion to Dismiss, and yet never accused Rachlin of dishonesty. Rachlin Decl. at ¶ 40.

Second, Rachlin checked the "*Yes*" boxes for Item 24 and Item 26 on Form 033 *and* provided candid, supplemental responses for each Item containing information about his mental health history to the best of his memory, even though he was not even required to provide a "Yes" response to Item 24, since he has never been confined or committed. Paltzik Decl., Ex. 5 (Rachlin's supplemental responses to Form 033); Rachlin Decl. at ¶ 41. He disclosed his admission to ███████, the fact that the FTPD transported him to ███████ and separately ██████████ ██████████████████████████████, but admitted that he did not remember the exact dates or all of the details, including the name of the ██████. *Id*. Clearly, his responses were sufficient to enable the FTPD to obtain Rachlin's ███████ medical records and contained as much information as Rachlin could have been reasonably expected to recall about events from adolescence . *Id*.

Third, Rachlin was not required to disclose his therapy with Faiman in response to Form 033, Item 26, because Faiman is *not* a doctor. Paltzik Decl., Ex. 3 (Faiman's New Jersey License Information); Rachlin Decl. at ¶ 42. Item 26 asks only whether the applicant has been treated "by any *doctor or psychiatrist*." (emphasis added). Paltzik Decl., Ex. 4 (Form 033); Rachlin Decl. at ¶ 42. In any event, Defendants were well aware of Faiman's treatment of Rachlin prior to their denial of Rachlin's application. Paltzik Decl., Ex. 1 (Investigation Record) at 040; Rachlin Decl. at ¶ 42. It is the height of irony that Defendants *now* conveniently (and

falsely) claim that Faiman is a doctor, yet in March 2021, Baumann rejected Faiman's Letter because, according to Baumann, "[t]his guy here [Faiman] is nothing but a professional counseling services [sic]." Rachlin Decl. at ¶ 42.

For all of these reasons, Defendants' citation to *In re D.P.*, 2021 N.J. Super. Unpub. LEXIS 769 at *10 (Def. MTD Br. at. 29-30), in which the appellant had checked "No" to Item 24 and failed to disclose *any* childhood health information, is unavailing. Defendants simply cannot show that Plaintiff falsified any part of his Form 033 application.

## **CONCLUSION**

The Court should deny Plaintiff's Motion to Dismiss in its entirety.

Dated:        November 18, 2021                    Respectfully submitted,

                                                    s/ Edward A. Paltzik
                                            JOSHPE MOONEY PALTZIK LLP
                                                    1407 Broadway, Suite 4002
                                                        New York, NY 10018
                                                            (212) 344-8211
                                                        epaltzik@jmpllp.com
                                                        *Attorneys for Plaintiffs*