METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
1(732) 248-2355
mailbox@methwerb.com
Attorneys for George Baumann, Freehold Township Police Department, and Freehold Township
Our File No.  90990 ELH

| | |
|---|---|
| AVI ALEXANDER RACHLIN<br><br>Plaintiff,<br><br>v.<br><br>GEORGE K. BAUMANN, INDIVIDUALLY AND AS CHIEF OF POLICE OF THE FREEHOLD TOWNSHIP POLICE DEPARTMENT, AND FREEHOLD TOWNSHIP<br><br>Defendants | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br>CIVIL ACTION NO.: 3:21-CV-15343<br><br>Civil Action |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT**

Of Counsel and On the Brief
Eric L. Harrison, Esq.
Attorney ID: 033381993

On the Brief
Adam M. Carman, Esq.
Attorney ID: 021362011

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. Extrinsic documents should be considered in this motion to dismiss without converting it into a summary judgment. . . . 6

2. **Plaintiff's right to bear arms is not "unconditional" and** he must meet the requirements of N.J.S.A. 2C:58-1 et. seq. before being issued a FID. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3. **Plaintiff's First and Second Amendment rights were not** violated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4. Qualified Immunity applies because the actions and decisions in question are not beyond dispute. . . . . . . . . . . . 10

5. Municipal Immunity applies because Plaintiff cannot point to an unconstitutional policy. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6. Plaintiff failed to avail himself of underlying state-court remedies and the Court should abstain from hearing this until such remedies are exhausted. . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Cases**

Alleghany Corp. v. Haase,
      896 F.2d 1046 (7th Cir. 1990) .......................... 6

Antonelli v. New Jersey,
      310 F. Supp. 2d 700 (D.N.J. 2004) .................... 6

Ashcroft v. al-Kid,
      563 U.S. 731(2011) ................................... 12

Ashcroft v. Iqbal,
      556 U.S. 662 (2009) ........................... 2, 4, 10

Bell Atl. Corp. v. Twombly,
      550 U.S. 544 (2007) ........................... 2, 4, 10

District of Columbia v. Heller,
      554 U.S. 570 (2008) .................................. 9

Dultz v. Velez,
      726 F. Supp. 2d 480 (D.N.J. 2010) ............ 5, 18, 19

Durga v. Bryan,
      2011 U.S. Dist. LEXIS 112638 (D.N.J. Sep. 30, 2011) 7, 19

Getson v. New Jersey,
      352 F. App'x 749 (3d Cir. 2009) ...................... 6

Huffman v. Pursue, Ltd.,
      420 U.S. 592 (1975) .............................. passim

In re Appeal for the Denial of a Permit to Purchase, D.A.,
      2019 N.J. Super. Unpub. LEXIS 550 ............ 3, 10, 13

In re Burlington Coat Factory Sec. Litig.,

    114 F.3d 1410 (3d Cir. 1997) ....................... 1, 8

In re D.P.'s Application for a FID Card,

    2021 N.J. Super. Unpub. LEXIS 769 ................. passim

In re J.D.,

    407 N.J. Super. 317 (Law Div. 2009) ........ 3, 10, 13, 14

Ohio Civil Rights Commission v. Dayton Christian School,

    477 U.S. 619 (1986) ............................... 15, 16

O'Neill v. Philadelphia,

    32 F.3d 785 (3d Cir. 1994) ........................ passim

Patsy v. Bd. of Regents,

    457 U.S. 496 (1982) ............................... 15, 16

Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.,

    998 F.2d 1192 (3d Cir.1993) ........................... 8

Plumhoff v. Rickard,

    572 U.S. 765 (2014) .................................. 12

W.K. v. New Jersey Division of Developmental Disabilities,

    974 F. Supp. 791 (D.N.J. 1997) ................. 5, 18, 19

Wyatt v. Keating,

    130 F. App'x 511 (3d Cir. 2005) ................ 6, 7, 19

Zahl v. Harper,

    282 F.3d 204, 210 (3d Cir. 2002) ...................... 6

**Statutes**

N.J.S.A. 2C:58-1 ........................................ 11

N.J.S.A. 2C:58-3(c)(3) .................................. 8

N.J.S.A. 2C:58-3(c)(5) ........................... 1, 2, 3, 14

**PRELIMINARY STATEMENT**

Plaintiff's opposition to the motion to dismiss fails to raise any compelling arguments to establish a violation of Second Amendment rights or to demonstrate why the abstention doctrine should not apply. As an initial matter, Plaintiff makes a dubious argument that the extrinsic records should not be considered. Any claim that these extrinsic records were unknown, not referenced in the Complaint, or should not be considered is without merit. These records fall within the Burlington rule and should be considered.

Plaintiff's opposition regarding violation of Second Amendment rights relies solely on his being required to submit to a clinical psychologist examination. N.J.S.A. 2C:58-3(c)(5) was enacted to prevent persons not otherwise prohibited by statute from owning firearms from obtaining the same if they posed a risk to "public health, safety, and welfare." Id. This was done because the legislature had a strong interest in protecting the public but could not envision every application scenario.

Plaintiff admits he does not challenge this law or its purpose. Plaintiff also admits that this law requires issuing authorities to make an in-depth search into an applicant's mental health. Plaintiff only challenges that as applied to him,

1

being require to submit to a clinical psychologist examination is unconstitutional. Relying on such conclusory statements alone is grounds for dismissal pursuant to Iqbal/Twombly.

In addition to Plaintiff falling short of pleading standards, the facts from extrinsic documents establish bona fide concerns over public health, safety, and welfare related to Plaintiff's mental status. In this case it has been shown that ███████ ████████████████████████ ████████ ██ ██████ , has admitted to ████████████████ , has been involved in domestic fights with his own family where the police had to be called, was ██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Pursuant to N.J.S.A. 2C:58-3(c)(5) Plaintiff could have been denied outright. Instead he was offered an opportunity to remedy the legitimate concerns of Chief Bauman by obtaining a clearance letter from a clinical psychologist.

In addition to being offered this remedy in lieu of outright denial, Plaintiff cannot cite to any case law supporting his position. To the contrary, case law exists indicating that demanding a clinical psychologist examine a Firearms Identification Card (FID) applicant is routine. Even when a

2

clinical psychologist clears an applicant as safe, the case law indicates an issuing authority still has the right to deny a FID under N.J.S.A. 2C:58-3(c)(5). See In re Appeal for the Denial of a Permit to Purchase a Handgun of D.A., 2019 N.J. Super. Unpub. LEXIS 550; In re D.P.'s Application for a FID Card, 2021 N.J. Super. Unpub. LEXIS 769; In re J.D., 407 N.J. Super. 317 (Law Div. 2009).

In this case, both qualified immunity for individual Defendant and municipal immunity for the Township Defendant applies. Only when there is established similar precedent placing an official's actions or decisions beyond debate would qualified immunity not apply. Likewise, for municipal liability to attach there must be a violation established by similar precedent. Since there is no precedent establishing Plaintiff's position, both qualified immunity for individual Defendants and municipal immunity for the Township Defendant applies. Conclusory statements that rights were violated without establishing the same by similar precedent is insufficient to prevent dismissal under the Iqbal/Twombly. This is especially so when case law exists contrary Plaintiff's position.

In addition to failing to state a claim, Plaintiff has failed to exhaust state-court remedies and the Court should apply the abstention doctrine from O'Neill. Plaintiff argues that the Defendant has misunderstood the legal distinction between

3

coercive proceedings that require state appeals and remedial proceedings that do not require state appeals. Plaintiff takes the position that only if the state initiates the original action can it be coercive. However the holding in O'Neill does not limit coercive proceedings to only those initiated by the state. The basis for determining if a matter is coercive or not should also turn on whether a state law is being enforced. O'Neill at 791 and 797 citing to Huffman at 609. When there is a law being enforced by an administrative decision that implicates an important state interest it must be appealed through state-court judicial review. Id.

 Enforcement of important state interests of firearm licensing should be considered a coercive action requiring mandatory state appeals for the same. Defendant's acknowledge there is a split in Federal District Court of New Jersey on whether this issue. See Dultz v. Velez, 726 F. Supp. 2d 480 (D.N.J. 2010); W.K. v. New Jersey Division of Developmental Disabilities, 974 F. Supp. 791(D.N.J. 1997). The Court in W.K. found that a denied application for benefits required abstention until state appeals were exhausted because the application was a mandatory process. This was in line with the O'Neill abstention rule. The Court in Dultz reviewed W.K. and O'Neill and came to a contradictory position that the application for benefits was not a coercive process because the state did not initiate the

4

application. This begs the question as to how a state can enforce their own laws on licensing if not through a coercive application. The Court should find that an FID application is a coercive process attempting to enforce state laws, thereby requiring exhaustion of state-court remedies.

None of the citations Plaintiff points to overrule O'Neill. Some cases confirm a proceeding is coercive when a state brings an action, but none state that is the only way a matter can be coercive. Zahl v. Harper, 282 F.3d 204, 210 (3d Cir. 2002); Getson v. New Jersey, 352 F. App'x 749 (3d Cir. 2009); Wyatt v. Keating, 130 F. App'x 511, 514-15 (3d Cir. 2005). Another case relies upon a decision that pre-dates O'Neill and is based upon a 7th Circuit non-binding opinion. Antonelli v. New Jersey, 310 F. Supp. 2d 700 (D.N.J. 2004) citing to Alleghany Corp. v. Haase, 896 F.2d 1046, 1053 (7th Cir. 1990). Significantly, while other cases disagree with applying abstention, the courts still remanded back for all state court remedies to be exhausted. See Wyatt; see also Durga v. Bryan, Civil Action No. 3:10-cv-1989 (PGS), 2011 U.S. Dist. LEXIS 112638, at *9 and *17 (D.N.J. Sep. 30, 2011). Whether O'Neill is followed correctly and state-court remedies must be exhausted, or whether the Court does not follow O'Neill and remands for a dismissal/stay until state-court remedies are exhausted, the end is the same.

5

Lastly, if Plaintiff appealed through state court it would have been revealed that he had years of treatment with Jordan Faiman, licensed professional counselor, for mental health concerns. Unpublished decisions indicate that failure to reveal treatment from a childhood medical provider during the FID application process is grounds for absolute denial. In re D.P.'s Application for a FID Card, 2021 N.J. Super. Unpub. LEXIS 769; see also N.J.S.A. 2C:58-3(c)(3). Plaintiff's claims that failure to reveal medical history should not be considered on dismissal because it was not the basis of the denial is another dubious argument. These facts were hidden by Plaintiff at the time of the denial and only revealed in this Complaint. This would have been grounds to confirm the denial of Plaintiff's application during a state-court appeal.

1. **Extrinsic documents should be considered in this motion to dismiss without converting it into a summary judgment.**

Plaintiff's argument that the extrinsic documents should be excluded is without merit. Plaintiff's opposition brief bizarrely opposes, and also "welcomes" the extrinsic evidence. Regardless of Plaintiff's unclear position, the case law is clear that it should be allowed. "The critical [issue] is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited." In re Burlington Coat Factory, 114 F.3d 1410,

6

1426 (3d Cir. 1997). Consideration of extrinsic documents would only require the conversion of a motion to dismiss if the plaintiff was previously unaware of them. <u>Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc</u>., 998 F.2d 1192, 1196 (3d Cir.1993). It is an incredible position to claim that Plaintiff was unaware of these records or that the Complaint does not rely upon them at least indirectly. They should be considered as part of the motion to dismiss.

2. **Plaintiff's right to bear arms is not "unconditional" and he must meet the requirements of N.J.S.A. 2C:58-1 et. seq. before being issued a FID.**

   Plaintiff's opposition repeatedly states that his right to bear arms is unconditional, but this is incorrect. "The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 573 (2008). "Of course the right [to bear arms] was not unlimited." <u>Heller</u> at 595 (2008). Plaintiff's opposition also concedes that the New Jersey law itself is not being challenged, the same law which forms the conditions of the FID application. Plaintiff's opposition also concedes he does not challenge the constitutional requirements of issuing authorities to look into mental health concerns. Plaintiff Opposition Brief Page 26. Plaintiff's claims that he had an unconditional right to bear arms, despite this case law and these admissions/concessions, is without merit.

7

Case 3:21-cv-15434-BRM-TJB Document 51-1 Filed 09/14/22 Page 13 of 20 PageID: 1453

3. **Plaintiff's First and Second Amendment rights were not violated.**

Plaintiff's opposition repeatedly states that his rights were violated, but only does so in conclusory statements. Iqbal/Twombly pleading standards require more than assertions and conclusory statements. Plaintiff argues he has met all pleading standards by stating that being required to submit to a clinical psychologist examination is unconstitutional. This alone is the basis for his Second Amendment rights claim.

Plaintiff's conclusory argument is not supported by any precedent. To the contrary, numerous cases exist showing that requiring a clinical psychologist to examine an FID applicant is routine whenever there are mental health concerns. In re Appeal of D.A., 2019 N.J. Super. Unpub. LEXIS 550; In re D.P.'s Application, 2021 N.J. Super. Unpub. LEXIS 769, 2021; In re J.D., 407 N.J. Super. 317 (Law Div. 2009). In some cases, the issuing authority or Court has ignored the findings of an expert. See D.A. at 9; D.P. at 5. Plaintiff cannot point to any case where being required to submit to a clinical psychologist for an FID has been found unconstitutional. If a Court found such a requirement to be unconstitutional, the purpose of the law regulating FID applications would be severely undermined.

Plaintiff instead argues that he should not be required to submit to a clinical psychologist because he is not a dangerous

8

applicant. Plaintiff's position ignores the plethora of cases that indicate an issuing authority has extraordinarily wide discretion in approving and denying FID applications in accordance with state policies underpinning New Jersey's firearm regulations and statutory scheme. N.J.S.A. 2C:58-1 et. seq. Plaintiff does not contest these policies, the statutes, or the requirements police must comply with in seeking out mental health concerns in the name of these policies and laws. Plaintiff's only argument is that his history is less serious and should be treated differently.

   Defendants only need establish there was a cause for concern to public health, welfare, and safety relating to the mental health of Plaintiff to require additional screening of a clinical psychologist. In this case it is obvious such a cause for concern was reasonable by any standard. Plaintiff's history

[redacted]

9

These factors would have been enough to sustain an outright denial without further review. By any standard they would also be sufficient to require a clinical psychologist screening.

4. **Qualified Immunity applies because the actions and decisions in question are not beyond dispute.**

Plaintiff argues that qualified immunity does not apply in this situation, but this argument fails because there was no clearly established right with similar precedent placing the actions and/or decisions of the official beyond debate. Plumhoff v. Rickard, 572 U.S. 765, 778-779 (2014) citing Ashcroft v. al-Kid, 563 U.S. 731, 743, (2011). Plaintiff cannot point to any precedent that shows requiring approval from a clinical psychologist before obtaining a FID card is a violation of constitutional rights. To the contrary, case law indicates it is routine to have such a requirement, even in instances where a Court has expunged records and found a person to be no danger. J.D. at 324-25. The issuing authority or Court can also ignore the findings of an expert if there is a perceived danger or deficiency. See D.A. at 9; D.P. at 5. Qualified immunity must apply to the individually named Defendants in this matter because the case law clearly shows that there is no precedent placing their actions beyond debate.

5. **Municipal Immunity applies because Plaintiff cannot point to an unconstitutional policy.**

10

Plaintiff argues that municipal liability applies, but in doing so only makes conclusory statements that being required to submit to a clinical psychologist examination for a FID is unconstitutional. Plaintiff fails to point to how this is unconstitutional policy and does not cite to any case law in support of his position. As noted in the argument on qualified immunity, the precedent on this issue indicates that requiring a clinical psychologist evaluation is routine and constitutional. See D.A. at 9; D.P. at 5; J.D. at 324-25. Pursuant to N.J.S.A. 2C:58-3(c)(5) Plaintiff's application could have been denied outright. Being provided the opportunity to remedy the public health, welfare, and safety concerns by submitting to a clinical psychologist examination when a denial could have been issued is not unconstitutional. If there is no unconstitutional policy then municipal liability cannot attach.

6. **Plaintiff failed to avail himself of underlying state-court remedies and the Court should abstain from hearing this until such remedies are exhausted.**

Plaintiff's opposition to the abstention doctrine is misplaced and confuses the phrases and purpose of coercive versus remedial proceedings. Plaintiff argues that only actions initiated by state are coercive and require mandatory state-court appeals. However, just because all state-initiated proceedings are coercive does not mean all coercive proceedings must be initiated by the state. The FID application process is

11

a required process designed to enforce the state laws. This is a mandatory process the state utilizes to enforce its own laws, and should be considered coercive. If this process is not considered coercive, this Court could face voluminous unwarranted appeals from individuals attempting to circumvent state decisions enforcing state laws.

Plaintiff's argument first relies on an analysis between Patsy v. Bd. of Regents, 457 U.S. 496 (1982) and Ohio Civil Rights Commission v. Dayton Christian School, 477 U.S. 619 (1986). Plaintiff advises that in Patsy the courts found the proceedings to be remedial, and in Dayton they were found to be coercive. Plaintiff concludes that the distinction between remedial and coercive is that coercive proceedings are initiated by the state. This analysis of Patsy and Dayton is flawed.

The distinction the Courts made between Patsy and Dayton in finding the internal appeals in Patsy as remedial and the state judicial proceedings in Dayton as coercive were twofold. First, the Court implied the proceedings for the internal appeal in Patsy were not even judicial in nature, whereas those in Dayton were. Dayton at 627 n.2. Second, the Court indicated that administrative proceedings had not even begun in Patsy, whereas in Dayton substantive judicial review was already in progress. Id. Neither case stands for Plaintiff's position that a state must initiate the process for it to be coercive.

12

The distinction between coercive and remedial proceedings were defined further in O'Neill v. Philadelphia, 32 F.3d 785 (3d Cir. 1994). A matter is coercive if the state proceeding is more akin to enforcing a state law rather than civil right. O'Neill at 797 citing Huffman v. Pursue, Ltd., 420 U.S. 592, 594 (1975). O'Neill held that appeals for traffic and parking tickets must also exhaust state-court judicial review. The Third Circuit found "no inconsistency between our holding and the principle that administrative remedies need not be exhausted prior to bringing a § 1983 action in federal court." O'Neill at 791 n.13 (3d Cir. 1994) citing Patsy. In doing so the O'Neill Court referred back to the Huffman in its ruling. "Federal intervention before a state court has had the opportunity to review an agency's decision is no less an 'aspersion on the capabilities and good-faith of state appellate courts,' and no 'less a disruption of the State's efforts to protect interests which it deems important'" O'Neill at 791 citing Huffman at 608-09. "Second, federal intervention which would annul the results of an agency determination would deprive "the States of a function which quite legitimately is left to them," i.e., the disposition of constitutional issues which arise in litigation over which they have jurisdiction." O'Neill at 791 citing Huffman at 609. No one can circumvent a state's judgment on enforcing its own laws by filing a federal claim without

13

exhausting state-court appeals. O'Neill at 791 n.13. Failure to pursue state-court judicial review of "an unfavorable state administrative determination" is grounds for abstention. Id. While Plaintiff initiated the application for his FID, it should be considered coercive because this is how the state enforces its laws.

The only case Plaintiff cites to where a denial of a state application was not considered coercive was Dultz v. Velez, 726 F. Supp. 2d 480 (D.N.J. 2010). Dultz came to this conclusion in direct contradiction of O'Neill, Huffman, and a comparable case W.K. v. New Jersey Division of Developmental Disabilities, 974 F. Supp. 791, 795 (D.N.J. 1997). In W.K. the plaintiffs were denied benefits from the New Jersey Division of Developmental Disabilities. Plaintiffs in W.K. were offered a meeting to discuss the decision and present facts and arguments, which they rejected and thereafter demanded an administrative hearing. W.K. at 794. When the demand for a hearing was denied the W.K. plaintiffs pursued a federal claim via 1983. The Court in W.K. found that failure to pursue the appeals process of a meeting warranted abstention, citing O'Neill and Huffman. W.K. at 794. This was because the state was enforcing its own laws, rather than the sole issue of plaintiff pursuing a violation of rights. Id. In Dultz, the Court came to the opposition conclusion holding that a denial of benefits cannot be a coercive

14

proceeding because they were not brought by the state. Dultz at 495. Dultz argued this solely on the ground that it believed application to the state for benefits could not be a coercive proceeding because it was not initiated by the state. This is the same error Plaintiff makes in this case, and ignores the holdings in W.K., as well as the precedent from higher Court decisions O'Neill and Huffman.

Other cases cited by Plaintiff hold that while abstention should only apply when a state initiates an action, they also remand for exhaustion of state-court remedies. See Durga v. Bryan, Civil Action No. 3:10-cv-1989 (PGS), 2011 U.S. Dist. LEXIS 112638 (D.N.J. Sep. 30, 2011); see also Wyatt v. Keating, 130 F. App'x 511, 514-15 (3d Cir. 2005). Whether this Court dismisses without prejudice and remands for de novo proceedings, or abstains until Plaintiff has pursued his state-court judicial review, the result is the same. State-court juridical review is mandatory before filing a federal claim.

## CONCLUSION

For the reasons stated above, Defendants request that the Court grant their motion to dismiss.

> Respectfully submitted,
> **METHFESSEL & WERBEL, ESQS.**
> Attorneys for Defendants
>
> By: Eric L. Harrison

15